**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **PEKIN INSURANCE COMPANY,** | ) | |
| 2505 Court St., | ) | |
| Pekin, IL 61558 | ) | **CASE NO.:** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE:** |
| | ) | |
| v. | ) | |
| | ) | |
| **G. BROTHERS, INC.,** | ) | **COMPLAINT FOR DECLARATORY** |
| c/o Luis Gonzalez | ) | **JUDGMENT** |
| 3142 Parkwood Ln | ) | |
| Hamilton, OH 43229 | ) | **(28 U.S.C. § 1332(a))** |
| | ) | |
| 12049 Pioneers Way, Apt. 2444 | ) | |
| Orlando, FL 32832 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BRYAN RIVERA,** | ) | |
| Bello Horizone | ) | |
| 1213 Calle Alumbre | ) | |
| Ponce, Puerto Rico 0027 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JAMICO AARON, ON BEHALF OF** | ) | |
| **MELODY AARON, MINOR AND AS** | ) | |
| **AS ADMINISTRATOR OF THE** | ) | |
| **ESTATE OF JAMICO AARON, Jr.,** | ) | |
| 2459 Westwood Northern Blvd., Apt. 9 | ) | |
| Cincinnati, OH 45211 | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MARK E. GODBEY, AS SPECIAL** | ) | |
| **ADMINISTRATOR OF THE ESTATE** | ) | |
| **OF DESTINIE M. L. STEVENS,** | ) | |
| 708 Walnut St. #600 | ) | |
| Cincinnati, OH 45202 | ) | |
| | ) | |
| 8050 Beckett Center Dr. #322 | ) | |
| West Chester, OH 45069 | ) | |
| | ) | |

Defendants.

1.      Plaintiff, Pekin Insurance Company ("Pekin Insurance"), by and through undersigned counsel, and pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201 ("The Declaratory Judgment Act"), and 28 U.S.C. § 1332(a)), and states the following for its complaint for Declaratory Judgment:

**Background and Parties**

2.      This Declaratory Judgment Action stems from a December 6, 2015 motor vehicle accident that occurred on December 6, 2025 ("Underlying Accident") and a subsequent lawsuit filed by Jamico Aaron, Individually and on behalf of minor, Melody Aaron, and Mark E. Godbey, as Special Administrator of the Estate of Destinie M. L. Stevens ("Stevens Estate"), titled *Aaron v. Bryan Rivera, et. al*, currently pending in the Hamilton County Court of Common Pleas, Case No. A200293 (hereinafter referred to as the "Underlying Lawsuit"); (*See* copy attached hereto as Exhibit A).[1] The Underlying Accident resulted in the fatalities of Destinie Stevens and her unborn child, Jamico Aaron, Jr. (Id).

3.      On or about March 26, 2026, the Hamilton County Court of Common Pleas entered an Omnibus Entry in the Underlying Lawsuit granting, *inter alia*, Plaintiffs' Motion to Substitute the Estate of Jamico Aaron, Jr. (a deceased, unborn child) as an additional Plaintiff ("Aaron Estate") as well as Plaintiff's Motion for Sanctions against G. Brothers and Bryant Rivera, entering a Default Judgment against them as to liability only. (*See* Omnibus Entry attached hereto as Exhibit

---

[1] The pending, Underlying Lawsuit was filed on or about January 19, 2024. However, the lawsuit was originally filed in 2017 and was voluntarily dismissed, without prejudice, on or about January 24, 2023.

B).[2] On April 6, 2026, the Hamilton County Court of Common Pleas issued a Judgment Entry pursuant to the Omnibus Entry. (*See* "Judgment Entry" attached hereto as Exhibit C).

4.	Plaintiffs in the Underlying Lawsuit, including the recently substituted party, seek recovery for personal injury, wrongful death, punitive damages and, on behalf of Melody Aaron, loss of consortium against G. Brothers, Bryant Rivera, and others. (*See* Ex. A*, generally).*

5.	Pekin Insurance is an insurer organized and incorporated under the laws of the State of Illinois, and is licensed to issue insurance policies and do business in Ohio.

6.	At the time of the Underlying Accident, Pekin Insurance insured Defendant G. Brothers, Inc. ("G. Brothers"), under Business Auto Insurance Policy No. 00P706040, effective from November 6, 2015 through January 20, 2016 ("Pekin Liability Policy") and Commercial Umbrella Policy No. 00CU30754, effective from September 21, 2015 to January 20, 2016 ("Pekin Umbrella Policy")  (Copies attached hereto as Composite Exhibit D.)[3,4]

7.	At the time of the Underlying Accident, Defendant G. Brothers was an Ohio limited liability company with its principal place of business in Butler County, Ohio.

8.	Sometime following the Underlying Accident, G. Brothers ceased operations and its business charter was cancelled by the Ohio Secretary of State on October 16, 2024. (*See* Cancellation attached hereto as Exhibit E). Accordingly, G. Brothers no longer conducts or transacts business in Ohio.

---

[2] The Court's Omnibus Entry and Judgment Entry also contain Orders denying Defendants' Motion(s) for Partial Summary Judgment which are not germane to this Complaint for Declaratory Judgment.
[3] The Policies were cancelled by Pekin Insurance on January 20, 2016 for noncompliance with underwriting guidelines.
[4] The premiums and private information of non-parties have been redacted.

9. At the time of the Underlying Accident, Defendant Bryan Rivera ("Rivera") was an independent contractor working with/for G. Brothers and residing in Ohio. Upon information and belief, Rivera currently resides in Puerto Rico.

10. Upon information and belief, Plaintiff, Jamico Aaron, is an individual residing in Hamilton County, Ohio.

11. Upon information and belief, the Stevens Estate, and the Aaron Estate, were established under the Laws of the State of Ohio.

12. Plaintiffs in the Underlying Lawsuit (and Defendants herein), Jamico Aaron, Stevens Estate, and Aaron Estate (collectively referred to hereinafter as "the Aarons") are necessary parties to this insurance coverage declaratory judgment action, in order to be bound by its outcome, pursuant to the Ohio Supreme Court's decision in *Estate of Heintzelman v. Air Experts, Inc.,* 2010-Ohio-3264.

### Jurisdiction and Venue

13. The Court has subject matter jurisdiction over this Declaratory Judgment Action pursuant to 28 U.S.C. § 1332(a)), as no Plaintiff resides in the same state as any Defendant, and the amount in controversy exceeds $75,000.00.

14. This Court has personal jurisdiction over the parties, all of whom are persons or entities who transacted business and/or reside(d) in Ohio, or are Estates established under the Laws of the State of Ohio. All parties hereto, except Pekin Insurance, are directly involved as named parties in the Underlying Lawsuit pending in Hamiton County, Ohio.

15. Venue is proper in this Court, per Federal Rule of Civil Procedure 3(C)(1),(2),and/or (3), because the Defendants either operated, resided or have/had their principal place(s) of business in Hamilton County, Ohio and/or this district, and the motor vehicle accident

4

upon which the Underlying Lawsuit and this Declaratory Judgment Action are based, occurred in Hamilton County, Ohio.

### The Underlying Accident and Underlying Lawsuit[5]

16.     In the Underlying Lawsuit, the Aarons allege that, on or about December 6, 2015, ASA Logistics (a non-party hereto)[6] rented a 2013 Freightliner ("the Truck") from Penske (a non-party hereto)[7] and provided the Truck to G. Brothers. Defendant Rivera operated the Truck on behalf of G. Brothers. (Ex. A, ¶¶ 16-17).

17.     On that same day, Jamico Aaron and Destinie Stevens, who was pregnant with Jamico Aaron, Jr., were passengers in a Mazda vehicle ("the Mazda") travelling northbound on Interstate 275. (Ex. A, ¶¶ 18-19).

18.     Ryan Kennedy (a non-party hereto)[8] lost control of the Mazda, causing it to spin out and strike a bridge parapet, before coming to rest in the left lane of Interstate 275. (Ex. A, ¶¶ 20-21).

19.     Thereafter, Rivera, operating the Truck, allegedly struck the Mazda. (*See* factual allegations only, Ex. A, ¶¶ 22-23).

20.     The Aarons allege severe injuries to the occupants of the Mazda, including the fatality of Destinie Stevens and her unborn child, Jamico Aaron, Jr. (Ex. A, ¶¶ 23, 31). However, a significant dispute remains regarding the status and severity of the alleged injuries to Ms. Stevens

---

[5] Cited references to the Underlying Complaint hereinafter are made solely to identify the pleadings, issues, and claims asserted in the Underlying Lawsuit and to provide procedural and contextual background for the declaratory relief requested. Pekin Insurance expressly denies any and all legal conclusions asserted or alleged therein, and/or any inferences drawn therefrom. Pekin Insurance further reserves the right to assert any and all defenses, objections, and privileges available under Ohio law and/or procedural rules.

[6] ASA Logistics, LLC is a named defendant in the Underlying Lawsuit.

[7] Penske Truck Leasing is a named defendant in the Underlying Lawsuit.

[8] Ryan Kennedy is a named defendant in the Underlying Lawsuit.

and her unborn child at the time Kennedy lost control of the Mazda and struck the bridge parapet, prior to the alleged accident involving Rivera.

21.     The Underlying Lawsuit, insofar as Rivera and G. Brothers are concerned, has also been a case of disputed liability throughout, complicated by the potential comparative negligence of Jamico Aaron as well and the fact that Kennedy caused the initial wreck which left his Mazda disabled across a lane of traffic directly in front of the approaching vehicle driven by Rivera.[9]

22.     While Kennedy's negligence in the Underlying Lawsuit has been established by virtue of his guilty plea and criminal convictions for vehicular assault and aggravated vehicular homicide, the issues of whether Rivera and/or G. Brothers breached any duty of care, or whether the Aarons were comparatively negligent or assumed the risk, had remained at issue from the time the original Complaint was filed in the Hamilton County Court of Common Please (Ohio) in 2017 until the Court entered its Order for Sanctions/Default Judgment against Rivera and G. Brothers as to liability on March 26, 2026. (*See* "*Criminal* Judgment Entry" attached hereto as <u>Exhibit F</u>); (*See* also <u>Ex. B and C</u>, *supra*).

<u>**Basis of this Declaratory Judgment Action**</u>

23.     A substantial controversy exists regarding insurance coverage.

24.     After the filing of the original complaint in 2017 (and prior to the voluntary dismissal thereof), Pekin Insurance issued introductory correspondence to both G. Brothers and Rivera, dated August 27, 2018, outlining their duty to cooperate with the defense and highlighting their continued failure to do so. (*See* attached hereto as <u>Exhibit G</u>). The correspondence further provides:

---

[9] Answers denying liability and asserting several affirmative defenses, including comparative negligence, assumption of risk, and intervening/superseding acts of others, were filed on behalf of both Rivera and G. Brothers, respectively, in 2017 and 2024, along with Crossclaims against Ryan Kennedy.

"Your failure to cooperate with the defense of this suit is jeopardizing our ability to defend the matter. We could face sanctions, up to having a default judgment entered against you." (Id.)

25.     After the Underlying Lawsuit was re-filed in 2024, also in the Hamilton County Court of Common Pleas (Ohio), and under a Reservation of Rights issued separately to both G. Brothers and Rivera on March 5, 2024, Pekin Insurance retained the law firm Rendigs, Fry, Kiely & Dennis, LLP ("the Rendigs Firm") to defend G. Brothers and Rivera. (*See* March 5, 2024 Reservation of Rights Letters to G. Brothers and Rivera, respectively, attached hereto as Composite Exhibit H). Attorneys Johnathan P. Saxton and Christine Steele of the Rendigs Firm are counsel of record for G. Brothers and Rivera in the Underlying Lawsuit.

26.     Since that time, both the Rendigs Firm and Pekin Insurance have attempted diligently to secure the appearance and consistent participation of both G. Brothers and Rivera in the Underlying Lawsuit, largely to no avail.

27.     Specifically, Pekin Insurance forwarded another Reservation of Rights Letter to G. Brothers on April 3, 2024, again outlining its duty to cooperate with the defense. (*See* attached hereto as Exhibit. I).

28.     On April 10, 2024, the Rendigs Firm forwarded correspondence to G. Brothers at its [prior] known address in Hamilton, Ohio, and to Rivera at his presumed address in Dayton, Ohio, requesting assistance in the defense from each. (*See* attached as Composite Ex. J).

29.     On June 27, 2024, Rendigs forwarded correspondence to both G. Brothers and Rivera requesting to speak with them concerning the pending claims against them. (*See* attached hereto as Exhibit K).

30.     On August 19, 2024, Rendigs sent another letter to G. Brothers at a newly-discovered address (of its prior owner, Luis Gonzalez), in Orlando Florida, in further effort to establish contact. (*See* attached hereto as <u>Exhibit L</u>).

31.     On April 1, 2025, the Rendigs Firm forwarded another letter to Rivera at a newly-discovered address in Ponce, Puerto Rico, imploring Rivera to contact them concerning the pending claims. (*See* attached hereto as <u>Exhibit. M</u>).

32.     On October 14, 2025, Pekin forwarded another Reservation of Rights Letter to Rivera, via Certified Mail, at his presumed address in Ponce, Puerto Rico. (*See* attached hereto as <u>Exhibit N</u>).

33.     On October 17, 2025, Ms. Steele was able to establish contact with Rivera through his family member(s) and engaged in a telephone conference with him to discuss the case and the Aarons' request to take his deposition. (*See* Aff. Steele, attached hereto as <u>Exhibit O</u>, at ¶ 7).

34.     On October 31, 2025, and, upon information and belief, due to language barriers and/or the perceived mental/psychological disposition of Rivera, the Rendigs Firm/Pekin Insurance engaged an attorney in San Juan, Puerto Rico, Litza J. Melendez-Reyes, to assist in the process of facilitating Rivera's deposition. (Aff. Steele, <u>Ex. O</u>, *supra*, at ¶¶ 7-8); (*See also* engagement letter, attached hereto as <u>Exhibit P</u>).[10]

35.     Attorney Melendez-Reyes was able to meet with Rivera in Puerto Rico in an attempt to discuss the case and to notify him that the Aarons' counsel had requested his deposition. (*See* attached hereto as <u>Exhibit Q</u>). She further stated that he was "...not going to relive the incident which was painful for him..." and opined that Rivera was aggressive and not stable. (<u>Id</u>).

---

[10] The telephone number for the non-party has been redacted.

36.     On October 23, 2025, Pekin Insurance forwarded correspondence via Certified Mail to G. Brothers (via Mr. Gonzalez) at his Orlando, Florida address, to again outline G. Brothers' duty to cooperate with the defense. (*See* attached hereto as Exhibit R).

37.     On December 10, 2025, the Aarons' counsel issued a Notice of Deposition for Rivera to occur via Zoom on December 29, 2025. (*See* Aff. Steele, Ex. O, *supra*, at ¶ 12).

38.     The Notice of Deposition for Rivera, along with the corresponding Zoom link, was forwarded by local counsel in Puerto Rico to Rivera, via Express Mail, on December 11, 2025. (*See* Ex. O, *supra* at ¶ 12).

39.     On or about December 16, 2025, the Aarons' Counsel served an Amended Notice of 30(B)(5) Deposition of G. Brothers, scheduled to occur on December 17, 2025.

40.     Since G. Brothers had ceased operations and its business charter had been cancelled by the State of Ohio, Rendigs (and Pekin Insurance) were unable to secure a G. Brothers corporate representative for deposition.

41.     On December 17, 2025, the Aarons' Counsel proceeded with the 30(B)(5) deposition of G. Brothers, despite no witness appearing on its behalf. (*See* Statement of Counsel, attached hereto as Exhibit S).

42.     Likewise, on December 29, 2025, Rivera failed to appear for his noticed Deposition, despite the aforementioned efforts. (*See* Statement attached as Exhibit T, *supra*).

43.     On March 16, 2026, the Rendigs Firm forwarded correspondence via Federal Express and Regular Mail to Rivera at his address in Ponce, Puerto Rico, advising him of trial and his required attendance. (*See* attached hereto as Exhibit U). Upon information and belief, the correspondence was delivered to Rivera on March 19, 2026, but neither Pekin Insurance nor the

Rendigs Firm, upon information and belief, have received a response from him. (*See* Delivery Confirmation attached hereto as Exhibit V).

44. On March 17, 2026, Pekin issued further correspondence to both G. Brothers and Rivera, respectively, to all known addresses, to advise again of the upcoming trial, their requirement to cooperate with the defense, their duty to do so as a mandatory condition precedent to coverage, and attaching a copy of the Reservation of Rights Letter(s). (*See* attached hereto as Composite Exhibit W)[11]. The letter(s) further state:

> "...should the defense be prejudiced by a failure to cooperate...it will result in a forfeiture of coverage..." Id.

45. To date, and despite these efforts and warnings, Pekin Insurance has not received further communication from Rivera, other than as outlined above, and no response from Luis Gonzalez and/or G. Brothers.

**Sanctions and Default Judgment Entered Against G. Brothers and Rivera.**

46. On or about February 2, 2026, the Aarons filed a Motion for Sanctions in the Underlying Lawsuit against G. Brothers and Rivera, for failing to appear at their respective depositions. (*See* Motion (without exhibits) attached hereto as Exhibit X). The Aarons pursued a Default Judgment against G. Brothers and Rivera as a sanction. (Id).

47. On March 26, 2026, following an oral hearing, the Hamilton County Court of Common Please entered an Omnibus Entry granting Plaintiffs' Motion for Sanctions against G. Brothers and Rivera for noncompliance and failure to appear for a properly noticed deposition(s) per Civ. R. 37(B)(1), and for otherwise failing to participate in the Underlying Lawsuit. (*See* Ex.

---

[11]Upon information and belief, Rivera was served with the correspondence on March 23, 2025; however, the correspondence could not be delivered to either known address for G. Brothers (via Mr. Gonzalez).

B, *supra*). The specific sanction imposed, in the Court's discretion, was Default Judgment against G. Brothers and Rivera as to liability. (Id).

48.     On April 6, 2026, the Court entered a Judgment Entry pursuant to the Omnibus Entry. (*See* Ex. C*, supra*). Therein, the Court ordered:

> "...Default judgment shall be entered against Defendants Bryant Rivera and G. Brothers, Inc. and in favor of Plaintiffs as to all issues, claims, and affirmative defenses as to liability only."
>
> * * *
>
> "This matter will proceed to trial regarding the remaining issue of Plaintiffs' damages." (Ex. C, *supra*, at ¶¶ 2-3).

49.     Trial of the Underlying Lawsuit is set to begin April 27, 2026.

50.     As a direct and proximate result of G. Brothers and Rivera's refusal to participate in the defense of the Underlying Suit and their respective failure to appear for duly noticed depositions, despite the efforts of Pekin Insurance and Rendigs, Pekin Insurance has been materially and irrefutably prejudiced, as it is now unable to dispute liability at trial despite having viable liability defenses. Such defenses [would have] included, *inter alia*, Jamico Aaron's comparative negligence and/or assumption of risk, and the lack of proximate cause for the Aarons' alleged injuries and damages, given Kennedy's guilty pleas to aggravated vehicular homicide and vehicular assault stemming from the accident. (*See Criminal* Judgment Entry, Ex. F, *supra*).

## FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT-FAILURE TO COOPERATE)

51.     Pekin Insurance hereby incorporates, by reference, the preceding paragraphs of this Complaint as if rewritten here.

52.     The Pekin Liability Policy with G. Brothers contains the following pertinent policy conditions:

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

## A.  YOUR DUTIES AFTER ACCIDENT OR LOSS

**1. You must promptly notify us or our agent of any accident or loss. You must tell us how, when and where the accident or loss happened. You must assist in obtaining the names and addresses of any injured persons and witnesses.**

**2. Additionally, you and other involved insureds must:**
   **a. Cooperate with us in the investigation, settlement or defense of any claim or suit.**

   **b. Immediately send us copies of any notices or legal papers received in connection with the accident or loss.** (Exhibit B, *supra*, at p.6).[12]

53.     The above-quoted policy provisions are conditions precedent to coverage under Pekin Insurance's Liability Policy with G. Brothers.

54.     G. Brothers and Rivera have violated the above-quoted policy conditions by failing to cooperate with the defense and investigation of the Underlying Lawsuit, failing to appear for properly noticed deposition(s), and failing to meaningfully appear in the Underlying Lawsuit, resulting in the Court's Sanction of Default Judgment entered against them. (*See* Ex. B-C, *supra*).

55.     Ohio Courts have consistently held that cooperation clauses in insurance policies are conditions precedent to the insurer's obligations to defend and/or indemnify a policyholder. *See Conold v. Stern*, 138 Ohio St. 352, 359. A material and substantial breach of such a clause can relieve the insurer of its obligations under the policy. *Id.*

56.     G. Brothers' and Rivera's repeated, ongoing, and material violation of the "duty to cooperate" provisions of the Pekin Liability Policy, despite repeated notices, requests, and other extraneous efforts made by Pekin Insurance and Rendigs to secure their cooperation and

---

[12] The Pekin Umbrella Policy contains similar language. (*See* Ex. D, *supra*, at § IV, ¶ 6).

participation, evidences G. Brothers' and Rivera's material and substantial breach of the Pekin Liability Policy.

57.     Pekin Insurance's rights to investigate the claim, or otherwise offer or assert liability defenses in the Underlying Lawsuit have been materially and substantially prejudiced as a matter of law, particularly in light of the Court's Order of Sanctions/Default Judgment as to liability.

58.     G. Brothers and Rivera's failure to cooperate, and their breach of material conditions precedent to coverage, constitute a breach of the insurance contract, which has materially and substantially prejudiced Pekin Insurance. Accordingly, any duty of Pekin Insurance to provide coverage to G. Brothers and Rivera that may have been otherwise available for any judgment rendered at trial on the Aarons' claims is voided. Pekin Insurance is entitled to a declaration to that effect.

**SECOND CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT-PUNITIVE DAMAGES EXCLUSION)**

59.     Pekin Insurance hereby incorporates, by reference, the preceding paragraphs of this Complaint as if rewritten here.

60.     In the alternative, the Pekin Liability Policy with G. Brothers specifically excludes, via endorsement, coverage for punitive damages. The applicable Policy Endorsement states:

**EXCLUSION PUNITIVE DAMAGES**

**1.** The following exclusion is added to Paragraph **C., WE WILL NOT COVER - EXCLUSIONS** of **PART IV-LIABILITY INSURANCE:**

This insurance does not apply to:

Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against

13

the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages. (Ex. D, *supra* at p. 1562(05-07))(emphases in original)[13]

61. The Aarons assert claim(s) for punitive damages in the Underlying Lawsuit. (Ex. A, *supra*, at ¶ 4, and Prayer for Relief, ¶ 3).

62. Furthermore, under Ohio statute and controlling Ohio Supreme Court precedent, Insurers in Ohio are prohibited from paying judgments of punitive damages against its insured(s). *See* ORC 3937.182(B) and *State Farm Ins. Co. v Blevins*, 49 Ohio St. 3d 165,168 (1990).

63. Given the above-cited Policy Exclusion(s), statute, and caselaw authority, Pekin Insurance has no duty or obligation to pay, on behalf of G. Brothers and/or Rivera, for costs, interest, or damages attributable to punitive damages, exemplary damages, or statutory multiple damages that the Aarons may recover at the trial of the Underlying Lawsuit.

WHEREFORE, having set forth its claim for declaratory judgment, Pekin Insurance prays that the court enter declaratory judgment, in its favor, declaring:

A. Pekin Insurance owes neither a defense nor indemnity to G. Brothers or Rivera, or indemnity to the Aarons that may be obtained at trial because Pekin Insurance's rights have been materially prejudiced as a matter of law due to G. Brothers and Rivera's material failure to cooperate in the defense of the Underlying Suit and their failure to appear for properly scheduled depositions, resulting in the entry of Default Judgment as to liability.

---

[13] The Pekin Commercial Umbrella Policy provides that "the exclusions applicable to any 'underlying insurance' apply to this insurance unless superseded..." (Ex. D, *supra*, at CU 00 49 03 14 (page 1 of 5 of Commercial Umbrella Policy Form Endorsement).

B.      Alternatively, that Pekin Insurance does not owe, and has no duty or obligation to pay, for costs, interest, or damages attributable to punitive damages, exemplary damages, or statutory multiple damages that the Aarons may recover at trial.

C.      Such other relief as this Honorable Court deems just and equitable.

Respectfully submitted,

**Weston Hurd LLP**

_/s/ Garry T. Davis_
Garry T. Davis (0094015)
John G. Farnan (0038558)
1300 E 9th St., #1400
Cleveland, OH 44114
T: 614-280-1146 / 216-241-3288
JFarnan@westonhurd.com
gdavis@westonhurd.com
_Counsel for Plaintiff,_
_Pekin Insurance Company_

15

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| **JAMICO AARON** | : | Case No. |
| 2459 Westwood Northern Blvd, Apt. 9 | : | |
| Cincinnati, OH 45211 | : | **A2 40029 3** |
| | : | |
| and | : | |
| | : | |
| **JAMICO AARON, ON BEHALF** | : | |
| **OF MELODY AARON, MINOR** | : | |
| 2459 Westwood Northern Blvd, Apt. 9 | : | |
| Cincinnati, OH 45211 | : | |
| | : | |
| and | : | |
| | : | |
| **MARK E. GODBEY** | : | |
| **AS SPECIAL ADMINISTRATOR** | : | |
| **OF THE ESTATE OF** | : | |
| **DESTINIE M. L. STEVENS** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | COMPLAINT AND JURY DEMAND |
| | : | |
| **BRYANT RIVERA** | : | |
| 5416 Lofino Court | : | |
| Dayton, OH 45424 | : | |
| | : | |
| and | : | |
| | : | |
| **ASA LOGISTICS, LLC** | : | |
| SERVE: John Assam | : | |
| 1105 Schrock Road, Suite 200 | : | |
| Columbus, OH 43229 | : | |
| | : | |
| and | : | |
| | : | |
| **G BROTHERS, INC.** | : | |
| | : | |
| SERVE: Luis Gonzalez | : | |
| 3142 Parkwood Ln. | : | |
| Hamilton, OH 45011 | : | |
| | : | |
| and | : | |





D140470779 INI

Exhibit A

**RYAN KENNEDY**     :
2424 Ferguson Rd., #4    :
Cincinnati, OH 45238     :
              :
and           :
              :
**PENSKE TRUCK LEASING**  :
**CO, L.P.**         :
SERVE: Corporation Service Company :
50 West Broad St., Suite 1330  :
Columbus, OH 43215     :
              :
and           :
              :
**DOE I**          :
(Name and Address Unknown)  :
              :
   Defendants.     :

---

\* \* \* \* \* \* \* \* \*

Now come the Plaintiffs, by and through their respective counsel, and for their claims against the Defendants, state as follows:

## I.  PRELIMINARY STATEMENT

1. This action arises out of Defendant Bryant Rivera's ("Rivera") negligent operation of a box truck during the course of his employment at Defendant G Brothers, Inc ("G Brothers").

2. Rivera was driving a truck owned by Penske Truck Leasing Co., L.P. ("Penske") on behalf of ASA Logistics, LLC ("ASA Logistics").

3. This action also arises out of the negligent operation of a motor vehicle by Ryan Kennedy ("Kennedy"), in which Jamico Arron and Destinie Stevens were passengers.

4. Plaintiff Jamico Aaron and Plaintiff Melody Aaron, minor, by and through her father, seek relief for Defendants' acts and/or omissions in the form of compensatory damages for their economic and noneconomic injuries, punitive damages, and payment of

2

their attorney fees and costs in prosecuting this matter.

5. Plaintiff Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens (the "Estate") seeks damages for the wrongful death of Destinie Stevens caused by the acts and omissions of the Defendants.

## II.   PARTIES

6. Plaintiff Jamico Aaron is an individual residing in Hamilton County, Ohio. Mr. Aaron is the parent of his unborn child. Mr. Aaron brings this action for his own injuries and for the wrongful death of his unborn child.

7. Plaintiff Melody Aaron is the daughter of Jamico Aaron and seeks damages for loss of consortium. Because Plaintiff Melody Aaron is a minor, she brings this action through her father, Jamico Aaron.

8. The Estate is a legal entity created by the Hamilton County Probate Court, case number 2017005003, and Mark E. Godbey is the duly appointed special administrator thereof. The Estate brings its claims as the personal representative of the decedent and on behalf of, and for the exclusive benefit of, the decedent's next of kin.

9. Defendant Bryant Rivera is an individual residing in Montgomery County, Ohio.

10. Defendant ASA Logistics, LLC is an Ohio limited liability company with its principal place of business in Franklin County, Ohio. ASA Logistics contracted with Defendant G Brothers to provide trucking services.

11. Defendant G Brothers, Inc. is an Ohio corporation with its principal place of business in Butler County, Ohio. G Brothers employed Defendant Rivera.

12. Defendant Ryan Kennedy is an individual residing in Hamilton County, Ohio.

13. Defendant Penske Truck Leasing Co., L.P. is a Delaware corporation doing business in Hamilton County, Ohio.

3

14. Defendant Doe is any person or entity who is responsible for the injuries suffered by Plaintiffs, who cannot yet be identified.

### III.    JURISDICTION AND VENUE

15. Jurisdiction and venue in this Court are appropriate because the acts and/or omissions complained of herein occurred within Hamilton County, Ohio.

### IV.    STATEMENT OF THE CASE

16. On or about December 6, 2015, ASA Logistics rented a 2013 Freightliner from Penske ("Truck") and provided the Truck to G Brothers.

17. Defendant Rivera drove the Truck on behalf of G Brothers.

18. On that same day, Mr. Aaron was a passenger in a Mazda vehicle owned and operated by Defendant Kennedy that was traveling northbound on Interstate 275.

19. Destinie Stevens, who was pregnant with Mr. Aaron's unborn child, was also a passenger in the Mazda.

20. Defendant Kennedy lost control of the Mazda after striking a parapet on a bridge, which caused the Mazda to spin before coming to a rest in the left lane of Interstate 275.

21. After the Mazda came to rest, it remained disabled in the roadway.

22. Sometime thereafter, Defendant Rivera was driving the Truck in the left-hand lane of Interstate 275 and approached the disabled Mazda.

23. Defendant Rivera failed to maintain assured clear distance and struck the Mazda, causing its occupants severe injuries, and in the case of Ms. Stevens and the unborn child, fatal injuries.

24. The Truck was owned by Defendant Penske and was bearing the DOT number of Penske at the time of the collision.

25. Defendant ASA Logistics rented the Truck from Defendant Penske for the sole

4

purpose of providing the Truck to Defendant G Brothers and Defendant Rivera.

26. Defendant Penske provided the Truck directly to Defendant G Brothers and Defendant Rivera.

27. At the time Penske provided the Truck to Defendant G Brothers and Defendant Rivera, Defendant G Brothers's authority to operate as a motor property contract carrier had been revoked by the Federal Motor Carrier Safety Administration.

28. Defendant Penske and Defendant ASA Logistics knew or should have known that the Federal Motor Carrier Safety Administration had revoked Defendant G Brothers's authority to operate as a motor property contract carrier when they provided Defendant G Brothers and Defendant Rivera with the Truck.

## V. STATEMENT OF THE CLAIMS

### COUNT 1: NEGLIGENCE (AGAINST KENNEDY)

29. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

30. Defendant Kennedy operated the Mazda negligently and in violation of the laws of the State of Ohio.

31. As a result of his negligent operation, Mr. Aaron suffered significant injuries and permanent injuries.

32. Mr. Kennedy's actions and/or omissions constituted a conscious disregard for the rights and safety of Mr. Aaron that had a great probability of causing substantial harm.

### COUNT 2: WRONGFUL DEATH (AGAINST KENNEDY)

33. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

34. Kennedy owed the Plaintiffs a duty.

35. Defendant Kennedy operated the Mazda negligently and in violation of the laws of the State of Ohio.

5

36. Kennedy's negligence caused the automobile collisions on December 6, 2015.

37. As a result of his negligent operation, Destinie Stevens and her unborn child suffered fatal injuries.

38. Destinie Stevens and the unborn child would have been entitled to damages from Kennedy for his wrongful acts if their deaths had not ensued.

39. Kennedy's actions and/or omissions constituted a conscious disregard for the rights and safety of Destinie Stevens and her unborn child that had a great probability of causing substantial harm.

40. The Plaintiffs collectively suffered harm for the loss of the unborn child.

41. As a result of Destinie Stevens's death her next of kin suffered injuries and damages for the loss of support from her earning capacity; the loss of services; the loss of society including the loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; the loss of prospective inheritance; and mental anguish.

42. As a result of the unborn child's death, his or her next of kin suffered injuries and damages for the loss of society, including the loss of companionship, care assistance, attention, and mental anguish.

43. As a result of Destinie Stevens's death her next of kin sustained pecuniary loss including, medical, funeral, burial, interment, and estate expenses.

44. The Estate is entitled to damages from Kennedy, in an amount to be determined at trial, for the wrongful death of Destinie Stevens arising from Kennedy's negligent acts.

45. The next of kin of the unborn child are entitled to damages from Kennedy, in an amount to be determined at trial, for the wrongful death of the unborn child arising from Kennedy's negligent acts.

6

## COUNT 3: NEGLIGENCE (AGAINST RIVERA AND G BROTHERS)

46. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

47. Defendant Rivera operated the Truck negligently and in violation of the laws of the State of Ohio.

48. As a result of his negligent operation, Mr. Aaron suffered significant injuries and permanent injuries.

49. Defendant G Brothers, in its capacity as Defendant Rivera's employer, is responsible for his negligent acts and/or omissions.

50. Defendant Rivera's and Defendant G Brothers's actions and/or omissions constituted a conscious disregard for the rights and safety of Mr. Aaron that had a great probability of causing substantial harm.

## COUNT 4: WRONGFUL DEATH (AGAINST RIVERA)

51. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

52. Rivera owed the Plaintiffs a duty.

53. Defendant Rivera operated the Truck negligently and in violation of the laws of the State of Ohio.

54. Rivera's negligence caused the automobile collision on December 6, 2015.

55. As a result of Rivera's negligent operation, Destinie Stevens and her unborn child suffered fatal injuries.

56. Destinie Stevens and the unborn child would have been entitled to damages from Rivera for his wrongful acts if their deaths had not ensued.

57. Defendant Rivera's actions and/or omissions constituted a conscious disregard for the rights and safety of Destinie Stevens and her unborn child that had a great probability of causing substantial harm.

58. The Plaintiffs collectively suffered harm for the loss of the unborn child.

59. As a result of Destinie Stevens's death her next of kin suffered injuries and damages for the loss of support from her earning capacity; the loss of services; the loss of society including the loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; the loss of prospective inheritance; and mental anguish.

60. As a result of the unborn child's death, his or her next of kin suffered injuries and damages for the loss of society, including the loss of companionship, care assistance, attention, and mental anguish.

61. As a result of Destinie Stevens's death her next of kin sustained pecuniary loss including, medical, funeral, burial, interment, and estate expenses.

62. The Estate is entitled to damages from Rivera, in an amount to be determined at trial, for the wrongful death of Destinie Stevens arising from Rivera's negligent acts.

63. The next of kin of the unborn child are entitled to damages from Rivera, in an amount to be determined at trial, for the wrongful death of the unborn child arising from Rivera's negligent acts.

### COUNT 5: RESPONDEAT SUPERIOR (AGAINST G BROTHERS)

64. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

65. Rivera was an agent and/or employee of G Brothers at all relevant times herein.

66. Rivera was acting within the scope of his agency and/or employment with G Brothers at all relevant times herein.

67. G Brothers had a duty to act reasonably in hiring, instructing, training, supervising, monitoring, and retaining its drivers, including Rivera, and to promulgate and enforce policies, procedures, and rules to ensure that its drivers were reasonably safe.

8

68. Rivera was in possession of the Truck that caused the fatal accident through his agency or employment with G Brothers.

69. G Brothers, in its capacity as Rivera's employer, is responsible for his negligent acts and/or omissions performed within the scope of his agency and/or employment.

70. 56. Destinie Stevens and the unborn child would have been entitled to damages from G Brothers for vicarious liability if their deaths had not ensued.

71. The Plaintiffs collectively suffered harm for the loss of the unborn child.

72. As a result of Destinie Stevens's death her next of kin suffered injuries and damages for the loss of support from her earning capacity; the loss of services; the loss of society including the loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; the loss of prospective inheritance; and mental anguish.

73. As a result of the unborn child's death, his or her next of kin suffered injuries and damages for the loss of society, including the loss of companionship, care assistance, attention, and mental anguish.

74. As a result of Destinie Stevens's death her next of kin sustained pecuniary loss including, medical, funeral, burial, interment, and estate expenses.

75. The Estate is entitled to damages from G Brothers, in an amount to be determined at trial, for the wrongful death of Destinie Stevens arising from the negligent acts of G Brother's agent and/or employee.

76. The next of kin of the unborn child are entitled to damages from G Brothers, in an amount to be determined at trial, for the wrongful death of the unborn child arising from the negligent acts of G Brothers's agent and/or employee.

9

## COUNT 6: NEGLIGENCE (AGAINST ASA LOGISTICS)

77. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

78. Defendant ASA Logistics rented the Truck and provided it to Defendant G Brothers and Defendant Rivera.

79. Defendant ASA Logistics knew or should have known that Defendant G Brothers and Defendant Rivera would negligently operate the Truck, and the G Brothers had its authority to operate as a motor carrier under federal law revoked.

80. Defendant ASA Logistics was acting as a motor carrier with respect to the load Defendant Rivera was hauling at the time he negligently collided with the Mazda. ASA Logistics is vicariously liable for Defendant Rivera's negligence.

81. As a result of ASA Logistics' negligence, Mr. Aaron suffered severe and permanent injuries.

82. Defendant ASA Logistics' actions and/or omissions constituted a conscious disregard for the rights and safety of Mr. Aaron that had a great probability of causing substantial harm.

## COUNT 7: WRONGFUL DEATH (AGAINST ASA LOGISTICS)

83. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

84. Defendant ASA Logistics rented the Truck from Penske and instructed Penske to provide the Truck to Defendant G Brothers and Defendant Rivera.

85. Defendant ASA Logistics knew or should have known that G Brothers had its authority to operate as a motor carrier under federal law revoked.

86. ASA Logistics knew or should have known that G Brothers' agents, including Rivera, were not competent to operate the Truck.

87. Defendant ASA Logistics was acting as a motor carrier with respect to the load

Rivera was hauling at the time Rivera negligently collided with the Mazda.

88. ASA Logistics is vicariously liable for Rivera's negligence.

89. As a result of the 's negligence with the Truck that ASA Logistics leased, Destinie Stevens and her unborn child suffered fatal injuries.

90. Destinie Stevens and the unborn child would have been entitled to damages from ASA Logistics for vicarious liability if their deaths had not ensued.

91. The Plaintiffs collectively suffered harm for the loss of the unborn child.

92. As a result of Destinie Stevens's death her next of kin suffered injuries and damages for the loss of support from her earning capacity; the loss of services; the loss of society including the loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; the loss of prospective inheritance; and mental anguish.

93. As a result of the unborn child's death, his or her next of kin suffered injuries and damages for the loss of society, including the loss of companionship, care assistance, attention, and mental anguish.

94. As a result of Destinie Stevens's death her next of kin sustained pecuniary loss including, medical, funeral, burial, interment, and estate expenses.

95. The Estate is entitled to damages from ASA Logistics, in an amount to be determined at trial, for the wrongful death of Destinie Stevens arising from its procurement of a commercial vehicle for a company that had its authority to operate as a motor carrier revoked.

96. The next of kin of the unborn child are entitled to damages from ASA Logistics, in an amount to be determined at trial, for the wrongful death of the unborn child arising from ASA Logistics' negligent acts.

11

## COUNT 8: NEGLIGENCE (AGAINST PENSKE)

97. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

98. Defendant Penske provided the Truck to Defendant G Brothers and Defendant Rivera.

99. Defendant Penske knew or should have known that Defendant G Brothers and Defendant Rivera would negligently operate the Truck, and that G Brothers had its authority to operate as a motor carrier under federal law revoked.

100. As a result of Defendant Penske's negligence, Mr. Aaron suffered severe and permanent injuries.

101. Because the Truck beared the DOT number of Defendant Penske, Defendant Penske is primarily liable for the injuries caused by the operation of the vehicle for commercial purposes.

102. Defendant Penske's actions and/or omissions constituted a conscious disregard for the rights and safety of Mr. Aaron that had a great probability of causing substantial harm.

## COUNT 9: WRONGFUL DEATH (AGAINST PENSKE)

103. Plaintiffs incorporate the foregoing paragraphs as if fully rewritten herein.

104. Penske is the registered owner of the USDOT number 327574 displayed on the Truck.

105. Penske provided the Truck to G Brothers and Rivera.

106. Penske knew or should have known that G Brothers had its authority to operate as a motor carrier under federal law revoked.

107. Penske knew or should have known that G Brothers' agents, including Rivera, were not competent to operate the Truck.

12

108. As a result of the negligence with the Truck owned by, and registered to, Penske, Destinie Stevens and her unborn child suffered fatal injuries.

109. Destinie Stevens and the unborn child would have been entitled to damages from Penske for vicarious liability if their deaths had not ensued.

110. The Plaintiffs collectively suffered harm for the loss of the unborn child.

111. As a result of Destinie Stevens's death her next of kin suffered injuries and damages for the loss of support from her earning capacity; the loss of services; the loss of society including the loss of companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education; the loss of prospective inheritance; and mental anguish.

112. As a result of the unborn child's death, his or her next of kin suffered injuries and damages for the loss of society, including the loss of companionship, care assistance, attention, and mental anguish.

113. As a result of Destinie Stevens's death her next of kin sustained pecuniary loss including, medical, funeral, burial, interment, and estate expenses.

114. The Estate is entitled to damages from Penske, in an amount to be determined at trial, for the wrongful death of Destinie Stevens arising from Penske being primarily liable for negligence committed with the commercial vehicle registered to it, as well as its own negligence in tendering the Truck to a company that had its authority to operate as a motor carrier revoked.

115. The next of kin of the unborn child are entitled to damages from Penske, in an amount to be determined at trial, for the wrongful death of the unborn child arising from Penske being primarily liable for negligence committed with the commercial vehicle registered to it, as well as its own negligence in tendering the Truck to a company that had

13

its authority to operate as a motor carrier revoked.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants Bryant Rivera, G Brothers, Inc., ASA Logistics LLC, Penske Truck Leasing Co, L.P., and Ryan Kennedy as follows:

1. For an award of compensatory damages for all economic damages suffered by Plaintiffs in an amount to be determined at trial but in no event less than $25,000;

2. For an award of compensatory damages for all non-economic damages suffered by Plaintiffs in an amount to be determined at trial but in no event less than $25,000;

3. For an award of punitive damages in an amount to be determined at trial;

4. For an award of Plaintiffs' reasonable attorney fees and costs;

5. For an award of any other relief in law or equity to which Plaintiffs are entitled under the premises.

Respectfully submitted,

/s/Brian J. Butler
Brian J. Butler (OH No. 0082675)
MEZIBOV BUTLER
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Phone: 513.621.8800
Fax: 513.621.8833
bbutler@mezibov.com
*Attorneys for Plaintiffs*
*Jamico Aaron and Melody Aaron*

Of Counsel:
Robert Block, Esq.
Schwartz Manes & Ruby
441 Vine Street, 2900 Carew Tower
Cincinnati, Ohio 45202
Direct Phone: 513.477.8522
Direct Fax: 513.579.1418
rblock@smrslaw.com

14

/s/Grant Wenstrup
Grant Wenstrup (0092551)
GODBEY LAW LLC
708 Walnut Street, Suite 600
Cincinnati, OH 45202
Phone: (513) 241-6650
Fax: (513) 241-6649
gwenstrup@godbeylaw.com
*Attorney for Plaintiff, Mark E. Godbey*
*As Special Administrator of the Estate*
*of Destinie M. L. Stevens*

## JURY DEMAND

Plaintiffs demand that all issues of fact in the foregoing complaint be tried to a jury.

/s/Brian J. Butler
Brian J. Butler (OH No. 0082675)

/s/Grant Wenstrup
Grant Wenstrup (0092551)

15

ENTERED
MAR 26 2026

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

JAMICO AARON, et al.        :    Case No. A 2400293

            *Plaintiffs,*    :    JUDGE WENDE C. CROSS

v.                       :

                           :    **OMNIBUS ENTRY ON PENDING**
BRYANT RIVERA, et al.,    :    **PRETRIAL MOTIONS**

                     :

           *Defendants.*    :

This matter is before the Court for resolution of several pretrial motions. Plaintiff filed a Motion for Substitution of a Party, and Motion for Sanctions on February 2, 2026. Defendants filed a Motion for Partial Summary Judgment on January 29, 2026. Defendants filed a Motion for Partial Summary Judgment as to Plaintiff's Claim for Punitive Damages on February 9, 2026. The Court conducted a hearing on these motions on March 25, 2026.

Upon consideration of the motions, memoranda in opposition, applicable law, and the parties' arguments, the Court finds as follows:

1. Plaintiff's Motion for Substitution of a Party is **GRANTED** pursuant to the precedent set forth in *Ramsey v. Neiman*, 69 Ohio St.3d 508 (1994) as decedent's estate was appointed before settlement or judgment entered in this case;

2. Defendants' Motion for Partial Summary Judgment regarding the wrongful death of the in-utero fetus is **DENIED**. Ohio's Wrongful Death Statute allows a person to bring a wrongful death action "[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued..." *See* R.C. § 2125.01. However, in *Werling v. Sandy*, the Ohio Supreme Court held that a wrongful death claim may only be brought on behalf of a fetus if the fetus is considered viable. 17 Ohio St.3d 45 (1985). The Court finds there exists a question of fact as to the viability of the fetus at the time of the accident in this case;

# Exhibit B



D147771375

1

3. Defendants' Motion for Partial Summary Judgment as to Plaintiff's Claim for Punitive Damages is **DENIED**. In order to be awarded punitive damages, there must be evidence of actual malice, which involves a showing: "1) that state of mind under which a person's conduct is characterized by hatred, ill will or spirit of revenge, or 2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987). Accordingly, the Court finds there exists a question of fact on this issue of actual malice; and

4. Plaintiff's Motion for Sanctions is **GRANTED**. Trial judges have discretion to impose sanctions for discovery violations. *Lyons v. Kindell*, 2015-Ohio-1709, ¶ 23 (1st Dist). Civ.R. 37(D) authorizes the Court, in its discretion, to impose sanctions when a party fails to appear for a properly noticed deposition. Civ.R. 37(B)(1) grants the court authority to enter default judgment against the non-complying party. Here, despite proper notice, Defendant Bryant Rivera failed to appear for his scheduled deposition on December 29, 2025, and has otherwise failed to participate in this proceeding. Additionally, Defendant G Brothers, Inc., although no longer in existence, failed to produce a corporate representative for deposition. In considering these circumstances, the Court finds that default judgment is warranted against Defendants Bryant Rivera and G Brothers, Inc. as to liability only.

Pursuant to Hamilton County Local Rule 17, Counsel shall submit a proposed entry consistent with the Court's ruling by April 6, 2026.

**IT IS SO ORDERED.**

Date: _3/26/2026_

_[signature]_

**JUDGE WENDE C. CROSS**

2

ENTERED

APR - 6 2026

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| JAMICO AARON, et al. | : | **Case No. A2400293** |
| | : | |
| | : | **Judge Wende C. Cross** |
| **Plaintiffs,** | : | |
| v. | : | |
| | : | |
| **BRYANT RIVERA, et al.** | : | |
| | : | |
| **Defendants.** | : | |

---

## JUDGMENT ENTRY

---

This matter came the Court for resolution of several pretrial motions. Plaintiffs filed a Motion for Substitution of a Party, and Motion for Sanctions on February 2, 2026. Defendants filed a Motion for Partial Summary Judgment on January 29, 2026. Defendants filed a Motion for Partial Summary Judgment as to Plaintiff's Claim for Punitive Damages on February 9, 2026. The Court conducted a hearing on these motions on March 25, 2026.

Upon consideration of the motions, memoranda in opposition, applicable law, and the parties' arguments, and for the reasons stated in its *Omnibus Entry on Pending Pretrial Motions,* entered March 26, 2026, the Court **GRANTED** Plaintiff's Motion for Substitution of a Party; **DENIED** Defendant's Motion for Partial Summary Judgment regarding the wrongful death of the in-utero fetus; **DENIED** Defendant's Motion for Partial Summary Judgment as Plaintiff's Claim for Punitive Damages; and, **GRANTED** Plaintiff's Motion for Sanctions. (*Omnibus Entry on Pending Pretrial Motions,* March 26, 2026).

Accordingly, it is hereby ordered and declared as follows:



1

Exhibit C

1. Jamico Aaron, Administrator of the Estate of Jamico Aaron Jr., shall be substituted as Plaintiff with respect to the wrongful death claim asserted on behalf of the in-utero fetus.

2. Default judgment shall be entered against Defendants Bryant Rivera and G Brothers, Inc. and in favor of Plaintiffs as to all issues, claims, and affirmative defenses as to liability only.

3. This matter will proceed to trial regarding the remaining issue of Plaintiffs' damages.

**IT IS SO ORDERED.**

Date: _____4-6-2026_____

**JUDGE WENDE C. CROSS**



# PEKIN INSURANCE COMPANY

## 2505 COURT STREET, PEKIN, IL 61558-0001

# BUSINESS AUTO INSURANCE POLICY

PREPARED EXCLUSIVELY FOR

PRESENTED TO YOU BY THIS OFFICE
AND

PEKIN INSURANCE
YOUR SYMBOL OF SERVICE SINCE 1921
AN A.M. BEST RATED A+ (SUPERIOR) COMPANY

Exhibit D

**PEKIN**
INSURANCE ™

*Beyond the expected.*

# PEKIN INSURANCE COMPANY

### 2505 COURT STREET, PEKIN, IL 61558-0001

## BUSINESS AUTO INSURANCE POLICY

### YOUR AUTO POLICY QUICK REFERENCE

| | | Beginning On Page |
|---|---|---|
| PART I — | WORDS AND PHRASES WITH SPECIAL MEANING | 1 |
| PART II — | WHICH AUTOS ARE COVERED AUTOS | 1 |
| PART III — | WHERE AND WHEN THIS POLICY COVERS | 1 |
| PART IV — | LIABILITY INSURANCE | 1-2 |
| A. | We Will Pay | |
| B. | We Will Also Pay | |
| C. | We Will Not Cover — Exclusions | |
| D. | Who is Insured | |
| E. | Our Limit Of Liability | |
| F. | Out of State Extensions of Coverage | |
| PART V — | MEDICAL PAYMENTS INSURANCE | 3 |
| A. | Words and Phrases With Special Meaning | |
| B. | We Will Pay | |
| C. | We Will Not Cover — Exclusions | |
| D. | Who is Insured | |
| E. | Our Limit Of Liability | |
| F. | Changes In Conditions | |
| PART VI — | UNINSURED MOTORISTS INSURANCE | 3-4 |
| A. | Words and Phrases With Special Meaning | |
| B. | We Will Pay | |
| C. | We Will Not Cover — Exclusions | |
| D. | Who is Insured | |
| E. | Our Limit Of Liability | |
| F. | Changes In Conditions | |

| | | Beginning On Page |
|---|---|---|
| PART VII — | PHYSICAL DAMAGE INSURANCE | 4-5 |
| A. | We Will Pay | |
| B. | We Will Also Pay | |
| C. | We Will Not Cover — Exclusions | |
| D. | How We Will Pay — The Most We Will Pay | |
| E. | Glass Breakage — Hitting A Bird Or Animal Falling Objects Or Missiles | |
| PART VIII — | CONDITIONS | 5-6 |
| A. | Your Duties After Accident Or Loss | |
| B. | Other Insurance | |
| C. | Our Right To Recover From Others | |
| D. | Canceling This Policy | |
| E. | Automatic Termination | |
| F. | Legal Action Against Us | |
| G. | Inspection | |
| H. | Changes | |
| I. | Transfer Of Your Interest In This Policy | |
| J. | No Benefit To Bailee — Physical Damage Only | |
| K. | Bankruptcy | |
| L. | Appraisal For Physical Damage Losses | |
| M. | Two Or More Policies Issued By Us | |
| N. | Extended Renewal Premium Payment Period | |
| O. | Reciprocal Policy Conditions — The Farmers Automobile Insurance Association | |

1500

In return for payment of the premium and subject to all the terms of this policy, **we** agree with **you** as follows:

## PART I - WORDS AND PHRASES WITH SPECIAL MEANING

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

A. "**You**" and "**your**" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

B. "**We**", "**us**" and "**our**" mean the company providing the insurance.

C. "**Accident**" includes continuous or repaired exposure to the same conditions resulting in **bodily injury** or **property damage** the **insured** neither expected nor intended.

D. "**Auto**" means a land motor vehicle, trailer or semi trailer designed for travel on public roads but does not include **mobile equipment**.

E. "**Bodily injury**" means bodily injury, sickness or disease, including death resulting from any of these.

F. "**Insured**" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made or suit is brought.

G. "**Loss**" means direct and accidental damage or loss.

H. "**Mobile equipment**" means any of the following type of land vehicles:

1. Specialized equipment such as: Bulldozers; Power shovels; Rollers, graders or scrapers; Farm machinery; Cranes; Street sweepers or other cleaners; Diggers; Forklifts; Pumps; Generators; Air compressors; Drills; Other similar equipment.

2. Vehicles designed for use principally off public roads.

3. Vehicles maintained solely to provide mobility for such specialized equipment when permanently attached.

4. Vehicles not required to be licensed.

5. Autos maintained for use solely on **your** premises or that part of roads or other accesses that adjoin **your** premises.

I. "**Property damage**" means damage to or loss of use of tangible property.

J. "**Trailer**" includes semi trailer.

K. "**Family member**" means a person related to you by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

L. "**Occupying**" means in, upon, getting in, on, out or off.

## PART II - WHICH AUTOS ARE COVERED AUTOS

A. ITEM TWO of the declarations shows the **autos** that are covered **autos** for each of **your** coverages.

B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS.

1. An **auto you** acquire will be a covered **auto** for that coverage only if:

a. **We** already insure all **autos** that **you** own for that coverage or it replaces an **auto you** previously owned that had that coverage; and

b. **You** tell **us** within 30 days after **you** acquire it that **you** want **us** to insure it for that coverage.

C. CERTAIN TRAILERS AND MOBILE EQUIPMENT.

If the policy provides liability insurance, the following types of vehicles are covered **autos** for liability insurance.

1. **Trailers** with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. **Mobile equipment** while being carried or towed by a covered **auto**.

## PART III - WHERE AND WHEN THIS POLICY COVERS

**We** cover **accidents** or **losses** which occur during the policy period:

A. In the United States of America, its territories or possessions, Puerto Rico or Canada; or

B. While the covered **auto** is being transported between any of these places.

## PART IV - LIABILITY INSURANCE

### A. WE WILL PAY

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. Our payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

### B. WE WILL ALSO PAY

In addition to **our** limit of liability, **we** will pay for the **insured**:

1. Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an **accident** **we** cover. **We** do not have to furnish these bonds.

2. Premiums on appeal bonds in any suit **we** defend.

3. Premiums on bonds to release attachments in a suit **we** defend but only for bonds up to **our** limit of liability.

4. All costs taxed to the **insured** in a suit **we** defend.

5. All interest accruing after the entry of the judgment in a suit **we** defend. **Our** duty to pay interest ends when **we** pay or tender our limit of liability.

6. Up to $50 a day for loss of earnings (but not other income) because of attendance at hearings or trials at **our** request.

7. Other reasonable expenses incurred at **our** request.

### C. WE WILL NOT COVER - EXCLUSIONS

This insurance does not apply to:

1. Liability assumed under any contract or agreement.

2. Any obligation for which the **insured** or his or her insurer may be held liable under any workers' compensation or disability benefits law or under any similar law.

3. Any obligation of the **insured** to indemnify another for damages resulting from **bodily injury** to the **insured's** employee.

4. **Bodily injury** to any fellow employee of the **insured** arising out of and in the course of his or her employment.

5. **Bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured**. However, this exclusion does not apply to **bodily injury** to domestic employees not entitled to workers' compensation benefits.

6. **Property damage** to property owned or transported by the **insured** or in the **insured's** care, custody or control.

7. **Bodily Injury** or **property damage** resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the **insured** for movement into or onto the covered **auto**, or

   b. After it is moved from the covered auto to the place where it is finally delivered by the **insured**.

8. **Bodily injury** or **property damage** resulting from the movement of property by a mechanical device (other than a hand truck) not attached to the covered **auto**.

9. **Bodily injury** or **property damage** caused by the dumping, discharge or escape of irritants, pollutants or contaminants. This exclusion does not apply if the discharge is sudden and accidental.

10. **Bodily injury** to a **family member**.

### D. WHO IS AN INSURED

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

1500 (07-92)                                        2

a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours**.

c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving proper to or from a covered **auto**.

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

### E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the accident, our limit of liability is as follows:

   a. The most **we** will pay for all damages resulting from **bodily injury** to any one person caused by any one **accident** is the limit of **Bodily Injury** Liability shown in the Declarations for "each person".

   b. Subject to the limit for "each person", the most **we** will pay for all damages resulting from **bodily injury** caused by any one **accident** is the limit of **Bodily injury** Liability shown in the Declarations for "each **accident**".

   c. The most **we** will pay for all damages resulting from **property damage** caused by any one **accident** is the limit of **Property Damage** Liability shown in this endorsement.

2. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident**.

### F. OUT OF STATE EXTENSIONS OF COVERAGE

1. While a covered **auto** is away from the state where it is licensed **we** will:

   a. Increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered **auto** is being used.

   b. Provide the minimum amounts and types of other coverages, such as "No-Fault", required out of state vehicles by the jurisdiction where the covered **auto** is being used.

2. **We** will not pay more than once for these same elements of loss because of these extensions.

---

## PART V - MEDICAL PAYMENTS INSURANCE

### A. WE WILL PAY

**We** will pay reasonable expenses incurred for necessary medical and funeral services to or for an **insured** who sustains **bodily injury** caused by **accident**. **We** will pay only those expenses incurred within three years from the date of the **accident**.

### B. WE WILL NOT COVER - EXCLUSIONS

This insurance does not apply to:

1. **Bodily injury** sustained by an **insured** while **occupying** a vehicle located for use as a premises.

2. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by **you** or furnished or available for **your** regular use.

3. **Bodily injury** sustained by any **family member** while **occupying** or struck by any vehicle (other than a covered **auto**) owned by or furnished or available for the regular use of any **family member**.

4. **Bodily injury** to **your** employee arising out of and in the course of employment by **you**. However, **we** will cover **bodily injury** to **your** domestic employees if not entitled to workers' compensation benefits.

5. **Bodily injury** to an **insured** while working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours**.

6. **Bodily injury** caused by declared or undeclared war or insurrection of any of their consequences.

7. **Bodily injury** to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### C. WHO IS INSURED

1. **You** or any **family member** while **occupying** or while a pedestrian, when struck by any **auto**.

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, **loss** or destruction.

### D. OUR LIMIT OF LIABILITY

Regardless of the number of covered **autos, insureds,** claims made or vehicles involved in the **accident**, the most **we** will pay for **bodily injury** for each **insured** injured in any one **accident** is the limit of AUTO MEDICAL PAYMENTS shown in the declarations.

### E. CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for AUTO MEDICAL PAYMENTS INSURANCE as follows:

The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible auto medical payments insurance.

1500 (07-92)                                                  3

## PART VI - UNINSURED MOTORISTS INSURANCE (INCLUDING UNDERINSURED MOTORIST)

### A. WORDS AND PHRASES WITH SPECIAL MEANING

In addition to the WORDS AND PHRASES WITH SPECIAL MEANING in PART I the following words and phrases have special meaning for UNINSURED MOTORISTS INSURANCE:

1. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an accident provides at least the amounts required by the applicable law where a covered **auto** is principally garaged, or

   b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered **auto** is principally garaged but their limits are less than the limit of this insurance, or

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an **insured,** a covered **auto** or a vehicle an **insured** is occupying.

   However, **"uninsured motor vehicle"** does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency.

   c. Designed for use mainly off public roads while not on public roads.

### B. WE WILL PAY

1. **We** will pay all sums the **insured** is legally entitled to recover as damages from the owner or driver of an **uninsured motor vehicle.** The damages must result from **bodily injury** sustained by the insured caused by an **accident.** The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the **uninsured motor vehicle.**

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered **auto** is principally garaged, **we** will pay only after all liability bonds or policies have been exhausted by judgments or payments.

3. Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us.**

### C. WE WILL NOT COVER - EXCLUSIONS

This insurance does not apply to:

1. Any claim settled without **our** consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. **Bodily injury** sustained by **you** or any **family member** while **occupying** or struck by any vehicle owned by **you** or any **family member** which is not a covered **auto**.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

### D. WHO IS INSURED

1. **You** or any **family member.**

2. Anyone else **occupying** a covered **auto** or a temporary substitute for a covered **auto.** The covered **auto** must be out of service because of its breakdown, repair, servicing, **loss** or destruction.

3. Anyone for damages he is entitled to recover because of **bodily injury** sustained by another **insured.**

### E. OUR LIMIT OF LIABILITY

The limit of liability shown in the Declarations for "each person" for **Uninsured Motorists Insurance** is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for **Uninsured Motorists Insurance** is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

This is the most we will pay regardless of the number of **covered persons,** claims made, vehicles or premiums shown in the declarations, or vehicles involved in the accident. However the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under the Liability Coverage of this policy.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid or payable for the bodily injury under any workers' or workmen's compensation law, disability benefits law or any similar law.

Any payment under this coverage to or for a **covered person** will reduce any amount that person is entitled to recover under the Liability Coverage of this policy.

1500 (07-92)                    4

## F.  CHANGES IN CONDITIONS

The CONDITIONS of the policy are changed for UNINSURED MOTORISTS INSURANCE as follows:

1.  The reference in OTHER INSURANCE to "other collectible insurance" applies only to other collectible uninsured motorists insurance.

2.  YOUR DUTIES AFTER ACCIDENT OR LOSS is changed by adding the following:

    a.  Promptly notify the policy if a hit-and-run driver is involved, and

    b.  Promptly send **us** copies of the legal papers if a suit is brought.

3.  OUR RIGHT TO RECOVER FROM OTHERS is changed by adding the following:

    If **we** make any payment and the **insured** recovers from another party, the **insured** shall hold the proceeds in trust for **us** and pay **us** back the amount **we** have paid.

4.  The following Condition is added:

    **ARBITRATION**

    a.  If **we** and an **insured** disagree whether the **insured** is legally entitled to recover damages from the owner or driver of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

    b.  Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

---

## PART VII - PHYSICAL DAMAGE INSURANCE

### A.  WE WILL PAY

1.  **We** will pay for **loss** to a covered **auto** or its equipment under:

    a.  **Comprehensive Coverage.** From any cause except the covered **auto's** collision with another object or its overturn.

    b.  **Collision Coverage.** Caused by the covered **auto's** collision with another object or its overturn.

2.  **Towing**

    **We** will pay up to $25 for towing and labor costs incurred each time a covered **auto** is disabled. However, the labor must be performed at the place of disablement.

### B.  WE WILL ALSO PAY

**We** will also pay up to $10 per day to a maximum of $300 for transportation expense incurred by **you** because of the total theft of a covered **auto**. **We** will pay only for those covered **autos** for which **you** carry Comprehensive Coverage. **We** will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered **auto** is returned to use or **we** pay for its **loss.**

### C.  WE WILL NOT COVER - EXCLUSIONS

This insurance does not apply to:

1.  Wear and tear, freezing, mechanical or electrical breakdown unless caused by other **loss** covered by this policy.

2.  Blowouts, punctures or other road damage to tires unless caused by other **loss** covered by this policy.

3.  **Loss** caused by declared or undeclared war or insurrection or any of their consequences.

4.  **Loss** caused by the explosion of a nuclear weapon or its consequences.

5.  **Loss** caused by radioactive contamination.

6.  **Loss** to tape decks or other sound reproducing equipment not permanently installed in a **covered auto**.

7.  **Loss** to tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

8.  **Loss** to any sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **auto** manufacturer for the installation of a radio.

### D.  HOW WE WILL PAY FOR LOSSES - THE MOST WE WILL PAY

1.  At **our** option **we** may:

    a.  Pay for, repair or replace damaged or stolen property; or

    b.  Return the stolen property, at **our** expense. **We** will pay for any damage that results to the **auto** from the theft.

2. The most **we** will pay for **loss** is the smaller of the following amounts:

a. The actual cash value of the damaged or stolen property at the time of **loss**.

b. The cost of repairing or replacing the damaged or stolen property with other of like kind or quality.

3. For each covered auto, our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the declarations.

**E. GLASS BREAKAGE - HITTING A BIRD OR ANIMAL - FALLING OBJECTS OR MISSILES**

**We** will pay for glass breakage, **loss** caused by hitting a bird or animal or by falling objects or missiles under Comprehensive Coverage if you carry Comprehensive Coverage for the damaged covered **auto**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

---

## PART VIII - CONDITIONS

The insurance provided by this policy is subject to the following conditions:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS**

1. **You** must promptly notify **us** or **our** agent of any **accident** or **loss**. **You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of **any** injured persons and witnesses.

2. Additionally, **you** and other involved **insureds** must:

a. Cooperate with **us** in the investigation, settlement or defense of any claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense.

b. Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**.

c. Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

d. Authorize **us** to obtain medical reports and other pertinent medical information.

3. Additionally, to recover for **loss** to a covered **auto** or its equipment **you** must do the following:

a. Permit **us** to inspect and appraise the damaged property before its repair or disposition.

b. Do what is reasonably necessary after **loss** at **our** expense to protect the covered **auto** from further **loss**.

c. Submit a proof of **loss** when required by **us**.

d. Promptly notify the policy if the covered **auto** or any of its equipment is stolen.

**B. OTHER INSURANCE**

1. For any covered **auto you** own this policy provides primary insurance. For any covered **auto you** don't own, the insurance provided by this policy is excess over any other collectible insurance. However, while a covered **auto** which is a **trailer** is connected to another vehicle the liability coverage this policy provides for the **trailer**:

a. Is excess while it is connected to a motor vehicle **you** don't own.

b. Is primary while it is connected to a covered **auto you** own.

2. When two or more policies cover on the same basis, either excess or primary, **we** will pay only **our** share. **Our** share is the proportion that the limit of **our** policy bears to the total of the limits of all the policies covering on the same basis.

**C. OUR RIGHT TO RECOVER FROM OTHERS**

If **we** make any payment, **we** are entitled to recover what **we** paid from other parties. Any person to or for whom **we** make payment must transfer to **us** his or her rights of recovery against any other party. This person must do everything necessary to secure these rights and must do nothing that would jeopardize them.

**D. CANCELING THIS POLICY DURING THE POLICY PERIOD**

1. **You** may cancel the policy by returning it to **us** or by giving **us** advance notice of the date cancellation is to take effect.

2. **We** may cancel the policy by mailing **you** at least 10 days notice at **your** last address known by **us**. **We** may deliver any notice instead of mailing it. Proof of mailing of any notice will be sufficient proof of notice.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

4. If this policy is cancelled, **you** may be entitled to a premium refund. If so, **we** will send **you** the refund. However, making or offering to make the refund is not a condition of cancellation. If **you** or **we** cancel, the refund, if any, will be computed pro rata.

### E. AUTOMATIC TERMINATION

If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have to accepted **our** offer.

### F. LEGAL ACTION AGAINST US

No legal action may be brought against **us** until there has been full compliance with all the terms of this policy. In addition, under LIABILITY INSURANCE, no legal action may be brought against **us** until **we** agree in writing that the **insured** has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trail. No person or organization has any right under this policy to bring us into any action to determine the liability of the **insured.**

### G. INSPECTION

At **our** option **we** may inspect **your** property and operations at any time. These inspections are for **our** benefit only. By **our** right to inspect or by **our** making any inspection **we** make no representation that **your** property or operations are safe, not harmful to health or comply with any law, rule or regulation.

### H. CHANGES

This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**. If a change requires a premium adjustment, **we** will adjust the premium as of the effective date of change. If **we** revise this policy form to provide more coverage without additional premium charge **your** policy will automatically provide the additional coverage as of the day the revision is effective in **your** state.

### I. TRANSFER OF YOUR INTEREST IN THIS POLICY

**Your** rights and duties under this policy may not be assigned without **our** written consent.

### J. NO BENEFIT TO BAILEE - PHYSICAL DAMAGE INSURANCE ONLY

**We** will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

### K. BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

### L. APPRAISAL FOR PHYSICAL DAMAGE LOSSES

1. If **you** and **we** fail to agree as to the amount of **loss** either may demand an appraisal of the **loss.** In such event, **you** and **we** shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall state separately the actual cash value and the amount of **loss,** and, failing to agree, shall submit their differences to the umpire. An award in writing of any two shall determine the amount of **loss. You** and **we** shall each pay the chosen appraiser and shall bear equally the other expenses of the appraisal and umpire.

2. **We** shall not be held to have waived any of **our** rights by any act relating to appraisal.

### M. TWO OR MORE POLICIES ISSUED BY US

If this policy and any other policy issued to **you** by **us** or any company affiliated with **us** apply to the same **accident,** the aggregate maximum limit of liability under all the policies shall not exceed the highest applicable limit of liability under any one policy. This condition does not apply to any policy issued by **us** or an affiliated company specifically to apply as excess insurance over this policy.

### N. EXTENDED RENEWAL PREMIUM PAYMENT PERIOD

If we elect to continue this insurance, we will renew this policy if you pay the required renewal premium for each successive policy period, subject to our premiums, rules and forms then in effect. All renewal premiums are due and payable on or before 12:01 A.M. (Standard Time) on the first day of each policy period. If the premium is received at the Home Office in Pekin, Illinois, or by an authorized representative of the Company on or before the 20th day following the first day of each policy period, the policy shall remain in full force. If the premium is not paid when due or within the 20 day extended period, then coverage under the policy shall cease at 12:01 A.M. (Standard Time) on the 1st day of each policy period.

### O. RECIPROCAL POLICY CONDITIONS - THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION

This policy is made and accepted in consideration of the payment of Premium Deposit herein provided and the execution of a power of attorney to The Farmers Automobile Management Corporation, authorizing it to execute inter-insurance policies between the holder of this policy, herein called the **"named insured"** and other subscribers to The Farmers Automobile Insurance Association.

1500 (07-92)

7

No term or condition of the policy is intended to create, creates, or shall be construed to create a partnership or mutual insurance association, or to give rise to or create any joint liability.

To enforce any claims arising under this policy, The Farmers Automobile Insurance Association shall be sued or sue in its own name as in the case of an individual. Service of process in any such suit against The Farmers Automobile Insurance Association shall be upon The Farmers Automobile Management Corporation, Attorney-in-Fact.

The annual meeting of the members of The Farmers Automobile Insurance Association shall be held at the Home Office at Pekin, Illinois, on the second Tuesday of each February unless said day shall be a legal holiday, in which event said meeting shall be held on the day following. The Advisory Committee shall be chosen by the subscribers from among themselves, at the annual meeting, or any special meeting held for that purpose, and shall have full power and authority to establish rules and regulations for the management of The Farmers Automobile Insurance Association not inconsistent with subscribers' agreements.

This policy is non-assessable.

All other items and conditions of this policy remain unchanged.

---

IN WITNESS WHEREOF, THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION has caused this policy to be signed by the Farmers Automobile Management Corporation, Pekin, Illinois, and countersigned on the declarations page by a duly authorized agent of the company.

FARMERS AUTOMOBILE MANAGEMENT CORPORATION
ATTORNEY-IN-FACT

Secretary

IN WITNESS WHEREOF, THE PEKIN INSURANCE COMPANY has caused this policy to be signed by its president and secretary at Pekin, Illinois, and countersigned on the declarations page by a duly authorized agent of the company.

PEKIN INSURANCE COMPANY

President

1500 (07-92)                                        8

**ENDORSEMENTS FORMING A PART OF THE POLICY**

## INDIVIDUAL NAMED INSURED

If you are an individual, the policy is changed as follows:

### A. WORDS AND PHRASES WITH SPECIAL MEANING

1. The following phrase is added and appears in **bold face type** when used:

   **"Family member"** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household, including a ward or foster child.

2. The words **"you"** and **"your"** include **your** spouse if a resident of the same household except for notice of cancellation.

3. When the phrase "private passenger type" appears in **bold face type** it includes any covered **auto you** own of the pickup or van type not used for business purposes.

### B. CHANGES IN LIABILITY INSURANCE

1. The exclusion relating to **bodily injury** to fellow employees of the **insured** does not apply to **bodily injury** to **your** or any **family member's** fellow employees.

2. **PERSONAL AUTO COVERAGE**

   While any **auto you** own of the **private passenger type** is a covered **auto** under the LIABILITY INSURANCE:

   a. The following is added to WHO IS INSURED: **Family members** are **insureds** for any covered **auto you** own of the **private passenger type** and any other **auto** described in paragraph 2b of this endorsement.

   b. Any **auto you** don't own is a covered **auto** while being used by **you** or by any **family member** except:

      (1) Any **auto** owned by any **family members.**

      (2) Any **auto** furnished or available for **your** or any **family member's** regular use.

      (3) Any **auto** used by **you** or by any of **your family members** while working in a business of selling, servicing, repairing, or parking **autos.**

      (4) Any **auto** other than an **auto** of the private passenger type used by **you** or by any of **your family members** while working in any other business occupation.

c. The exclusion relating to pollutants, irritants and contaminants and, if forming a part of the policy, the NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM), does not apply to any **auto** of the **private passenger type**.

d. The following exclusion is added and applies only to **private passenger type** covered **autos**:

   **This insurance does not apply to:**

   **Bodily injury** or **property damage** for which an **insured** under the policy is also an **insured** under a nuclear energy liability policy or would be an **insured** but for its termination upon its exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or any of their successors. This exclusion does not apply to **autos** registered or principally garaged in New York.

3. The exclusion relating to property in the **insured's** care, custody or control does not apply to **property damage** to any **private passenger type** covered **auto you** don't own while being used by **you** or by any family member except:

   (1) Any **auto** owned by any **family member.**

   (2) Any **auto** furnished or available for **your** or any **family member's** regular use.

   (3) Any **auto** which **you** or any **family members** uses while working in a business of selling, servicing, repairing, or parking **autos.**

### B. CONDITIONS

The following Condition is added:

**DEATH OF THE INDIVIDUAL NAMED INSURED**

If **you** die:

(1) **Your** surviving spouse if a resident of the same household at the time of **your** death will continue as the named insured until the end of the policy.

(2) **Your** legal representative will be the named insured but only while acting within the scope of his or her duties as such.

(3) Until **your** legal representative has been appointed, the person having proper temporary custody of **your** property will be the named insured with respect to such property.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

It is agreed that:

A. The policy does not apply:

1. Under any Liability Coverage, to **bodily injury** or **property damage**

   a. with respect to which an **insured** under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

   b. resulting from the **hazardous properties** of **nuclear material** and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

2. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

   a. the **nuclear material** (1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured** or (2) has been discharged or dispersed therefrom;

   b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

   c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **property damage** to such **nuclear facility** and any property threat.

B. As used in this endorsement:

**"hazardous properties"** include radioactive, toxic or explosive properties;

**"nuclear material"** means **source material**, **special nuclear material** or **byproduct material**;

**"source material"**, **"special nuclear material"**, and **"byproduct materials"** have the meanings given then in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**"waste"** means any waste material

   (a) containing **by-product material** other than the tailings or **wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content, and

   (b) resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**;

**"nuclear facility"** means

1. any **nuclear reactor**,

2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing **spent fuel**, or (c) handling, processing or packaging **waste**,

3. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4. any structure, basin excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self−supporting chain reaction or to contain a critical mass of fissionable material;

**"property damage"** includes all forms of radioactive contamination of property.

I HEREBY CERTIFY THAT THIS IS
A TRUE COPY OF THE POLICY AS
OF *Cheryl Byrne 1/12/18*

**PEKIN** *Beyond the expected®*
INSURANCE

**PEKIN INSURANCE COMPANY**

2505 COURT STREET, PEKIN, IL 61558-0001
**BUSINESS AUTO POLICY AMENDING DECLARATIONS**

PAGE 001 OF 002

| INSURED INFORMATION | AGENT INFORMATION | POLICY INFORMATION |
|---|---|---|
| G BROTHERS INC<br>3142 PARKWOOD LN<br>HAMILTON, OH 45011-0910 | MINOR INSURANCE AGENCY, LLC<br>33 TALSMAN DR.<br>CANFIELD, OH 44406<br><br>AGENCY NUMBER: 00-08651-000<br>PHONE: (330) 533-2006 | POLICY NUMBER: 00P706040   C3<br>POLICY PERIOD: 11/06/15 TO 09/21/16<br>12:01 A.M. STANDARD TIME<br><br>TERM: ANNUAL<br>ACCT NUMBER: 00MLM555 |

### VEHICLE INFORMATION / RATING

| UNIT | YEAR AND MAKE | SERIAL NO. | | | | | | | COST NEW | SYMBOL | CLASS | RATE TABLE | TERR | COMM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 15 INTL 4000 | 1HTMMMML5FH652966 | | | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 002 | 14 INTL 4000 | 3HAMMAAL0ELA89042 | | | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 003 | 14 INTL 4000 | 1HTMMAAL0EH029269 | | | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 004 | 12 INTL 4000 | 3HAMMAALACL538224 | | | | | | | | 12 | 33521 | 0 | 20 | 20 |

### COVERAGES

The coverages listed below apply separately for each vehicle and are provided only where a premium or INCL (abbreviation for included) is shown. The Limit of Liability applies separately for each vehicle. Where there are multiple vehicles on the policy, stacking of any Limits of Liability among the vehicles is not allowed.

| UNIT | BODILY INJURY LIABILITY<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | PROPERTY DAMAGE LIABILITY<br>EACH ACCIDENT | MEDICAL PAYMENTS<br>EACH PERSON | UNINSURED MOTORIST<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | UNDERINSURED MOTORIST<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | COMPREHENSIVE<br>ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN (INCLUDES TOWING & LABOR) | COLLISION<br>ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN | UNIT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|---|---|---|---|
| POLICY LIMITS | 1000/1000 | 1,000,000 | 5,000 | 1000/1000 | 1000/1000 | | | | |
| 001 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 373.00 | 1000 DED 809.00 | ■ | |
| 002 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 337.00 | 1000 DED 728.00 | | |
| 003 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 337.00 | 1000 DED 728.00 | | |
| 004 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 300.00 | 1000 DED 647.00 | | |

### ENDORSEMENTS APPLICABLE TO UNITS INDICATED BELOW

| UNITS | FORM OR ENDORSEMENT NUMBER | | NAME | ENDORSEMENT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|
| 001 002 003 004 | 1500 | 07-92 | BUSINESS AUTO INSURANCE POLICY | | |
| 001 002 003 004 | 1913 | 06-06 | AMENDMENT OF POLICY PROVISIONS - OHIO CHANGES | | |
| 001 | 15290H | 06-06 | COMPREHENSIVE AUTO COVERAGE | ■ | |
| 001 002 003 004 | 15070H | 06-06 | MOTOR TRANSIT CARGO | | |
| 001 002 003 004 | 1562 | 05-07 | EXCLUSION PUNITIVE DAMAGES | | |
| 001 002 003 004 | 4104 | 03-13 | COMMERCIAL AUTO POLLUTION LIABILITY EXCLUSION | | |
| 001 002 003 004 | 1624 | 03-13 | EXCLUSION - LEAD LIABILITY | | |
| 001 002 003 004 | 1625 | 03-13 | EXCLUSION - ASBESTOS | | |
| 001 002 003 004 | 1675 | 10-08 | TOWING AND LABOR COVERAGE | | |
| 001 002 003 004 | 1672 | 10-08 | TRANSPORTATION EXPENSE COVERAGE | | |

*** SEE REVERSE SIDE FOR ADDITIONAL FORMS ***

| | TOTAL PREMIUM | ADJUSTED PREMIUM |
|---|---|---|
| | ■ | |

1501AH (11-06)

SEE REVERSE SIDE       HOME OFFICE



11/09/15

**PEKIN INSURANCE COMPANY**

2505 COURT STREET, PEKIN, IL 61558-0001
**BUSINESS AUTO POLICY AMENDING DECLARATIONS**

PAGE 001 OF 002

| INSURED INFORMATION | AGENT INFORMATION | POLICY INFORMATION |
|---|---|---|
| G BROTHERS INC<br>3142 PARKWOOD LN<br>HAMILTON, OH 45011-0910 | MINOR INSURANCE AGENCY, LLC<br>33 TALSMAN DR.<br>CANFIELD, OH 44406<br><br>AGENCY NUMBER: 00-08651-000<br>PHONE: (330) 533-2006 | POLICY NUMBER: 00P706040 C3<br>POLICY PERIOD: 11/06/15 TO 09/21/16<br>12:01 A.M. STANDARD TIME<br>TERM: ANNUAL<br>ACCT NUMBER: 00MLM555 |

## VEHICLE INFORMATION / RATING

| UNIT | YEAR AND MAKE | SERIAL NO. | | | | | COST NEW | SYMBOL | CLASS | RATE TABLE | TERR | COMM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 15 INTL 4000 | 1HTMMMML5FH652966 | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 002 | 14 INTL 4000 | 3HAMMAAL0ELA89042 | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 003 | 14 INTL 4000 | 1HTMMAAL0EH029269 | | | | | | 12 | 33521 | 0 | 20 | 20 |
| 004 | 12 INTL 4000 | 3HAMMAALACL538224 | | | | | | 12 | 33521 | 0 | 20 | 20 |

## COVERAGES

The coverages listed below apply separately for each vehicle and are provided only where a premium or INCL (abbreviation for included) is shown. The Limit of Liability applies separately for each vehicle. Where there are multiple vehicles on the policy, stacking of any Limits of Liability among the vehicles is not allowed.

| UNIT | BODILY INJURY LIABILITY<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | PROPERTY DAMAGE LIABILITY<br>EACH ACCIDENT | MEDICAL PAYMENTS<br>EACH PERSON | UNINSURED MOTORIST<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | UNDERINSURED MOTORIST<br>EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | COMPREHENSIVE<br>ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN (INCLUDES TOWING & LABOR) | COLLISION<br>ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN | UNIT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|---|---|---|---|
| POLICY LIMITS | 1000/1000 | 1,000,000 | 5,000 | 1000/1000 | 1000/1000 | | | | |
| 001 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 373.00 | 1000 DED 809.00 | ■ | |
| 002 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 337.00 | 1000 DED 728.00 | ■ | |
| 003 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 337.00 | 1000 DED 728.00 | ■ | |
| 004 PREMIUM | 937.00 | 728.00 | 25.00 | 34.00 | 30.00 | 1000 DED 300.00 | 1000 DED 647.00 | ■ | |

## ENDORSEMENTS APPLICABLE TO UNITS INDICATED BELOW

| UNITS | FORM OR ENDORSEMENT NUMBER | | NAME | ENDORSEMENT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|
| 001 002 003 004 | 1500 | 07-92 | BUSINESS AUTO INSURANCE POLICY | | |
| 001 002 003 004 | 1913 | 06-06 | AMENDMENT OF POLICY PROVISIONS - OHIO CHANGES | | |
| 001 | 15290H | 06-06 | COMPREHENSIVE AUTO COVERAGE | | |
| 001 002 003 004 | 15070H | 06-06 | MOTOR TRANSIT CARGO | ■ | |
| 001 002 003 004 | 1562 | 05-07 | EXCLUSION PUNITIVE DAMAGES | | |
| 001 002 003 004 | 4104 | 03-13 | COMMERCIAL AUTO POLLUTION LIABILITY EXCLUSION | | |
| 001 002 003 004 | 1624 | 03-13 | EXCLUSION - LEAD LIABILITY | | |
| 001 002 003 004 | 1625 | 03-13 | EXCLUSION - ASBESTOS | | |
| 001 002 003 004 | 1675 | 10-08 | TOWING AND LABOR COVERAGE | | |
| 001 002 003 004 | 1672 | 10-08 | TRANSPORTATION EXPENSE COVERAGE | | |

*** SEE REVERSE SIDE FOR ADDITIONAL FORMS ***

| | TOTAL PREMIUM | ADJUSTED PREMIUM |
|---|---|---|
| | ■ | |

1501AH (11-06)          SEE REVERSE SIDE          HOME OFFICE

## ENDORSEMENTS APPLICABLE TO UNITS INDICATED BELOW

| UNITS | FORM OR ENDORSEMENT NUMBER | | NAME | ENDORSEMENT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|
| 001 002 003 004 | 1599 | 01-06 | EXCLUSION OF TERRORISM | | |
| 001 002 003 004 | 4110 | 10-13 | OHIO CHANGES - CANCELLATION AND NONRENEWAL | | |
| 001 002 003 004 | PA0001 | 10-13 | OHIO CHANGES FOR INDIVIDUALS NOT ENGAGED IN GARAGE | | |
| 001 002 003 004 | 1883 | 12-02 | WAR EXCLUSION | | |
| 001 002 003 004 | 1543 | 06-10 | OHIO UNINSURED AND UNDERINSURED MOTORISTS COV - BI | | |
| 001 002 003 004 | 1826 | 10-94 | SPLIT UNDERINSURED MOTORISTS COVERAGE | | |
| 001 002 003 004 | 1827 | 10-94 | SPLIT UNINSURED MOTORISTS COVERAGE | | |
| 001 002 003 004 | 1957 | 09-09 | COMMERCIAL AUTO BROADENED COVERAGE | | |
| 001 002 003 004 | 15100H | 06-06 | MILEAGE RESTRICTION ENDORSEMENT | | |
| 001 002 003 004 | 1521 | 02-11 | MOTOR CARRIER ENDORSEMENT - FORM MCS-90 | | |
| 001 002 003 004 | FORM F | 06-71 | STATE FILING - LIABILITY | | |

## DESCRIPTION OF CHANGE(S)

| UNITS | DESCRIPTION OF CHANGE(S) |
|---|---|
| 001 002 003 004 | NAME ADDRESS OR TERRITORY CHANGE |

## DRIVER INFORMATION

| NAME | DRIVER'S LICENSE NUMBER | DATE OF BIRTH | RESTRICTED |
|---|---|---|---|
| GARRETT, DETRICK S | | | |
| FLOYD, BRENT L | | | |
| MUNOZ, MITCHELL | | | |
| CARTER, GERALD J | | | |

POLICY NUMBER: 00P706040      INSURED: G BROTHERS INC      PAGE 002 OF 002

## VEHICLE INFORMATION / RATING

| UNIT | YEAR AND MAKE | SERIAL NO. | | | | | | COST NEW | SYMBOL | CLASS | RATE TABLE | TERR | COMM |
|------|---------------|-----------|--|--|--|--|--|----------|--------|-------|------------|------|------|
| 005 | 08 INTL 4000 | 1HTMMAAL28H331187 | | | | | | | 11 | 33521 | 0 | 20 | 20 |

## COVERAGES

The coverages listed below apply separately for each vehicle and are provided only where a premium or INCL (abbreviation for included) is shown. The Limit of Liability applies separately for each vehicle. Where there are multiple vehicles on the policy, stacking of any Limits of Liability among the vehicles is not allowed.

| UNIT | BODILY INJURY LIABILITY EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | PROPERTY DAMAGE LIABILITY EACH ACCIDENT | MEDICAL PAYMENTS EACH PERSON | UNINSURED MOTORIST EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | UNDERINSURED MOTORIST EACH PERSON/ EACH ACCIDENT (IN THOUSANDS) | COMPREHENSIVE ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN (INCLUDES TOWING & LABOR) | COLLISION ACTUAL CASH VALUE LESS DEDUCTIBLE SHOWN | UNIT PREMIUM | ADJUSTED PREMIUM |
|------|--|--|--|--|--|--|--|--|--|
| 005 PREMIUM | ■ | ■ | ■ | ■ | ■ | | | ■ | |

## ADDITIONAL INTEREST/LIENHOLDER INFORMATION

| UNIT | TYPE | NAME AND ADDRESS | FINAL DUE DATE |
|------|------|------------------|----------------|
| | | | |

## ENDORSEMENTS APPLICABLE TO UNITS INDICATED BELOW

| UNITS | FORM OR ENDORSEMENT NUMBER | | NAME | ENDORSEMENT PREMIUM | ADJUSTED PREMIUM |
|-------|---------------------------|--|------|---------------------|------------------|
| 005 | 1500 | 07-92 | BUSINESS AUTO INSURANCE POLICY | | |
| 005 | 1913 | 06-06 | AMENDMENT OF POLICY PROVISIONS - OHIO CHANGES | | |
| 005 | 1562 | 05-07 | EXCLUSION PUNITIVE DAMAGES | | |
| 005 | 4104 | 03-13 | COMMERCIAL AUTO POLLUTION LIABILITY EXCLUSION | | |
| 005 | 1624 | 03-13 | EXCLUSION - LEAD LIABILITY | | |
| 005 | 1625 | 03-13 | EXCLUSION - ASBESTOS | | |
| 005 | 1599 | 01-06 | EXCLUSION OF TERRORISM | | |
| 005 | 4110 | 10-13 | OHIO CHANGES - CANCELLATION AND NONRENEWAL | | |
| 005 | PA0001 | 10-13 | OHIO CHANGES FOR INDIVIDUALS NOT ENGAGED IN GARAGE | | |
| 005 | 1883 | 12-02 | WAR EXCLUSION | | |

*** SEE REVERSE SIDE FOR ADDITIONAL FORMS ***

1501AHO (11-06)      SEE REVERSE SIDE      HOME OFFICE

| UNITS | FORM OR ENDORSEMENT NUMBER | | NAME | ENDORSEMENT PREMIUM | ADJUSTED PREMIUM |
|---|---|---|---|---|---|
| **ENDORSEMENTS APPLICABLE TO UNITS INDICATED BELOW** | | | | | |
| 005 | 1543 | 06-10 | OHIO UNINSURED AND UNDERINSURED MOTORISTS COV - BI | | |
| 005 | 1826 | 10-94 | SPLIT UNDERINSURED MOTORISTS COVERAGE | | |
| 005 | 1827 | 10-94 | SPLIT UNINSURED MOTORISTS COVERAGE | | |
| 005 | 1542 | 09-03 | OH UNINSURED MOTORISTS-PROP DAMAGE/UMPD 7,500/250 | ■ | |
| 005 | 1957 | 09-09 | COMMERCIAL AUTO BROADENED COVERAGE | | |
| 005 | FORM F | 06-71 | STATE FILING - LIABILITY | | |
| 005 | 15100H | 06-06 | MILEAGE RESTRICTION ENDORSEMENT | | |
| 005 | 1521 | 02-11 | MOTOR CARRIER ENDORSEMENT - FORM MCS-90 | | |

| UNITS | DESCRIPTION OF CHANGE(S) |
|---|---|
| 005 | NAME ADDRESS OR TERRITORY CHANGE |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF POLICY PROVISIONS - OHIO CHANGES

This endorsement modifies insurance provided under the following:

YOUR BUSINESS AUTO POLICY - FORM 1500

**I.**  PART VIII - CONDITIONS

   **A.**  Part VIII - CONDITIONS is amended as follows;

      **1.**  Paragraphs E., N. and O. are deleted.

**II.**  Corporate Signatures Section

IN WITNESS WHEREOF, THE FARMERS AUTOMOBILE INSURANCE ASSOCIATION has caused this policy to be signed by the Farmers Automobile Management Corporation, Pekin, Illinois, and countersigned on the declarations page by a duly authorized agent of the company.

IN WITNESS WHEREOF, THE PEKIN INSURANCE COMPANY has caused this policy to be signed by its president and secretary at Pekin, Illinois, and countersigned on the declarations page by a duly authorized agent of the company.

FARMERS AUTOMOBILE MANAGEMENT CORPORATION
ATTORNEY-IN-FACT

Secretary

PEKIN INSURANCE COMPANY

President

Is deleted and replaced with the following;

IN WITNESS WHEREOF, PEKIN INSURANCE COMPANY has caused this policy to be signed by its president and a secretary at Pekin, Illinois

PEKIN INSURANCE COMPANY

Secretary

President

1913 (06-06)

# COMPREHENSIVE AUTO COVERAGE

With respects to Part IV - Liability Insurance, Part V - Medical Payments Insurance and Part VI - Uninsured Motorists Insurance including Underinsured Motorist, the definition shown under part II, sections A and B, which **autos** are **covered autos**, is deleted and replaced by the following:

A.  Description of covered **autos.**

   Any **auto.**

B.  Owned **autos you** acquire after the policy begins.

   1.  **You** have coverage for **autos** that **you** acquire for the remainder of the policy period.  **Autos** acquired during a prior policy period will be **covered autos** only if the **auto** is specifically described in the Declarations.

**PEKIN INSURANCE COMPANY**

1529 OH (06-06)

00P706040

# MOTOR TRANSIT CARGO ENDORSEMENT

We agree to insure and indemnify you for all loss or damage to cargo when in the custody of you or your authorized agent and loaded or in transit on the motor vehicle described as follows:.

| Unit | Year & Model | Serial Number | Amount of Coverage |
|------|--------------|---------------|--------------------|
| 001  | 15 INTL 4000 | 1HTMMMML5FH652966 | 100,000 |
| 002  | 14 INTL 4000 | 3HAMMAAL0ELA89042 | 100,000 |
| 003  | 14 INTL 4000 | 1HTMMAAL0EH029269 | 100,000 |

See Reverse Side

This endorsement covers loss or damage arising from the following perils:

(1)   Fire;

(2)   Flood;

(3)   Cyclone or tornado and windstorm, but excluding loss or damage by rain, sleet, hail, or snow whether driven by wind or not;

(4)   Internal explosion of the conveyance;

(5)   Accidental collision of the motor truck with any animal, vehicle, rolling stock of a public carrier, any immovable object, road bed, ditch, bank or bridge;

(6)   Overturning of the motor vehicle;

(7)   Collapse of bridges;

(8)   Stranding, sinking, fire or collision, including general average or salvage charges, when being transported on or in said trucks while on any regular ferry;

(9)   Theft of the entire cargo when motor truck is also stolen at the same time.

Exclusion:

This endorsement does not cover any loss or damage arising from:

(1)   Injury or damage to livestock cargo, except where such injury or damage shall result in the immediate death of such livestock, or some part thereof, or where such injury or damage shall make it necessary or advisable to immediately kill such injured animal or animals.

(2)   Loss or damage to accounts, bills currency, evidences of debt, securities, money, notes, jewelry or similar valuables under any circumstances.

(3)   Loss or damage caused by neglect of the assured to use all reasonable means to save and preserve the property at and after any disaster insured against.

(4)   For cargo while located (a) in or on the premises of the insured (b) in any garage or other building where the truck and/or trucks herein described are usually kept.

(5)   Loss or damage to cargo caused by poor packing or rough handling by wetness or dampness, or by breakage of liquids, or by contact with oil or grease, through contract or by contact with any other commodity, or by being spotted, discolored, molded, rusted, frosted, rotted, soured, steamed, or changed in flavor, nor for breakage, unless directly caused by one of the perils insured against.

(6)   Loss or damage due to loss of time or delay, whether consequent upon a peril insured against or otherwise.

(7)   Loss or damage caused by strikers, locked-out workmen or persons taking part in labor disturbances, or arising from riot, civil commotion, capture, seizure, or detention, or from any attempt thereat, or the consequences thereof, or the direct or remote consequences of any hostilities, or arising from the acts of any government, people, or persons whatsoever whether on account of any illicit or prohibited trade or any trade in articles contraband of war, nor from loss of damage resulting from measures or operations incident to war, whether before or after the declaration thereof.

## CONDITIONS

(1)   Valuation Clause. All goods and merchandise are, by agreement, valued at amount of invoice or if not under invoice, then at cash market value on date and at place of shipment, but the Company shall not be liable in excess of the amount of coverage shown in the policy or endorsement attached to the policy.

(2)   Trailer Clause. Whenever the term "automobile truck" is used in this endorsement it is deemed to cover an "automobile truck-trailer", but it is specifically understood that this endorsement shall not be extended to cover merchandise on any trailer , this endorsement covers only while the trailer is actually attached to a truck insured under this endorsement and does not cover after the trailer shall have been detached from the truck.

This endorsement shall be subject to all conditions, provisions, and agreements that appear in the policy to which this endorsement is attached.

PEKIN INSURANCE COMPANY

1507 OH (06-06)

| Unit | Year & Model | Serial Number | Amount of Coverage |
|------|--------------|---------------|--------------------|
| 004 | 12 INTL 4000 | 3HAMMAALACL538224 | 100,000 |

1507 OH (06-06) Continued

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

1.  The following exclusion is added to Paragraph **C., WE WILL NOT COVER - EXCLUSIONS** of **PART IV - LIABILITY INSURANCE:**

    This insurance does not apply to:

    Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages.

**1562(05-07)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL AUTO POLLUTION LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO INSURANCE POLICY

**PART IV - LIABILITY INSURANCE, A. WE WILL PAY,** is amended as follows:

The following paragraph is added to **A.1.**:

**We** will also pay all sums an **insured** legally must pay as a **covered pollution cost or expense** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of covered **autos**.  However, **we** will only pay for the **covered pollution cost or expense** if there is either **bodily injury** or **property damage** to which this insurance applies that is caused by the same **accident**.

**A.2.** is replaced by the following:

**A.2. We** have the right and duty to defend any **insured** against a **suit** asking for such damages or a **covered pollution cost or expense**.  However, **we** have no duty to defend any **insured** against a **suit** seeking damages for **bodily injury** or **property damage** or a **covered pollution cost or expense** not covered by this policy.  **We** may investigate and settle any claim or **suit** as **we** consider appropriate.  **Our** payment of the Liability Insurance limit ends **our** duty to defend or settle.

**PART IV - LIABILITY INSURANCE, C. WE WILL NOT COVER - EXCLUSIONS**, is amended as follows:

Exclusion **6.** is replaced by the following:

6. **Property damage** to or c**overed pollution cost or expense** involving property owned or transported by the **insured** or in the **insured's** care, custody or control.

Exclusion **9.** is replaced by the following:

9. **Pollution**

   **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

   a. That are, or that are contained in any property that is:

      (1) Being transported or towed by, handled or handled for movement into, onto or from the covered **auto**;

      (2) Otherwise in the course of transit by or on behalf of the **insured**; or

      (3) Being stored, disposed of, treated or processed in or upon the covered **auto**;

   b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto**; or

   c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

   Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts, if:

      (1) The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

      (2) The **bodily injury, property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in the definition of **mobile equipment**.

   Paragraphs **b.** and **c.** above of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon a covered **auto** if:

      (a) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

      (b) The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

4104 (03-13)                                                                                                                **Page 1 of 3**

**PART IV - LIABILITY INSURANCE, E. OUR LIMIT OF LIABILITY**, is replaced by the following:

**E.  OUR LIMIT OF LIABILITY**

1. Regardless of the number of covered **autos**, **insureds**, claims made or vehicles involved in the **accident**, **our** limit of liability is as follows:

    a. The most **we** will pay for all damages resulting from **bodily injury** to any one person caused by any one **accident** is the limit of **Bodily Injury** Liability shown in the Declarations for "each person".

    b. Subject to the limit for "each person", the most **we** will pay for all damages resulting from **bodily injury** and **covered pollution cost or expense** combined caused by any one **accident** is the limit of **Bodily Injury** Liability shown in the Declarations for "each **accident**". However, **we** will only pay for the **covered pollution cost or expense** if there is **bodily injury** to which this insurance applies that is caused by the same **accident**.

    c. The most **we** will pay for all damages resulting from **property damage** and **covered pollution cost or expense** combined caused by any one **accident** is the limit of **Property Damage** Liability shown in the Declarations for "each **accident**". However, **we** will only pay for the **covered pollution cost or expense** if there is **property damage** to which this insurance applies that is caused by the same **accident**.

2. All **bodily injury, property damage** and **covered pollution cost or expense** resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one **accident**.

As used in this endorsement:

**Covered pollution cost or expense** means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

2. Any claim or **suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    a. That are, or that are contained in any property that is:

        (1) Being transported or towed by, handled or handled for movement into, onto or from the covered **auto**;

        (2) Otherwise in the course of transit by or on behalf of the **insured**; or

        (3) Being stored, disposed of, treated or processed in or upon the covered **auto**;

    b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the covered **auto**; or

    c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **insured**.

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts if:

        (1) The **pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants**; and

        (2) The **bodily injury, property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in the definition of **mobile equipment**.

**4104 (03-13)**

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**Page 2 of 3**

Paragraphs **b.** and **c.** above do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon a covered **auto** if:

(a) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto**; and

(b) The discharge, dispersal, seepage, migration, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Suit** means a civil proceeding in which:

1. Damages because of **bodily injury** or **property damage**; or

2. A **covered pollution cost or expense**;

to which this insurance applies, are alleged.

**Suit** includes:

a. An arbitration proceeding in which such damages or **covered pollution costs or expenses** are claimed and to which the **insured** must submit or does submit with **our** consent; or

b. Any other alternative dispute resolution proceeding in which such damages or **covered pollution costs or expenses** are claimed and to which the **insured** submits with **our** consent.

**4104 (03-13)**

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**Page 3 of 3**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL AUTO**

# EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:

BUSINESS AUTO INSURANCE POLICY

**A.** The following exclusion is added to Paragraph **C., We Will Not Cover - Exclusions** of **Part IV - Liability Insurance**:

**C.  We Will Not Cover - Exclusions**

This insurance does not apply to:

**LEAD**

**a.** Actual or alleged **bodily injury**, **property damage** or any other  loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of, exposure to or failure to disclose or warn the presence of lead in any form, good or product containing lead;

**b.** Any obligation of the **insured** to indemnify any party because of damages arising out of such **bodily injury**, **property damage** or any other loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of, exposure to or failure to disclose or warn the presence of lead in any form, good or product containing lead; or

**c.** Any obligation to defend any suit or claim against the **insured** alleging **bodily injury**, **property damage** or any other loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of, exposure to or failure to disclose or warn the presence of lead in any form, good or product containing lead.

**d.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement, that any insured or others test for, monitor, clean up, remove, abate, contain, treat, detoxify or neutralize, remediate, dispose of, or in any way respond to, or assess the effects of lead, lead paint or lead compounds in any form, good or product containing lead.

**(2)** Claim or suit by or on behalf of  any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, abating, containing, treating, detoxifying or neutralizing, remediating, disposing of, or in any way responding to, or assessing the effects of lead, lead paint or lead compounds in any form, good or product containing lead.

**1624 03-13**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL AUTO**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO INSURANCE POLICY

**A.** The following exclusion is added to Paragraph **C., We Will Not Cover - Exclusions** of **Part IV - Liability Insurance**:

**C.  We Will Not Cover - Exclusions**

This insurance does not apply to:

**ASBESTOS**

**a.** Actual or alleged **bodily injury**, **property damage** or any other  loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of,  exposure to or failure to disclose or warn the presence of asbestos in any form, good or product containing asbestos;

**b.** Any obligation of the **insured** to indemnify any party because of damages arising out of such **bodily injury**, **property damage** or any other loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of, exposure to or failure to disclose or warn the presence of asbestos in any form, good or product containing asbestos; or

**c.** Any obligation to defend any suit or claim against the **insured** alleging **bodily injury**, **property damage** or any other loss, cost or expense arising out of the presence, ingestion, inhalation, absorption, handling of, transportation or towing of, delivery of, storage of, disposal of, exposure to or failure to disclose or warn the presence of asbestos in any form, good or product containing asbestos.

**d.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement, that any **insured** or others test for, monitor, clean up, remove, abate, contain, treat, detoxify or neutralize, remediate, dispose of, or in any way respond to, or assess the effects of asbestos in any form, good or product containing asbestos.

**(2)** Claim or suit by or on behalf of  any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, abating, containing, treating, detoxifying or neutralizing, remediating, disposing of, or in any way responding to, or assessing the effects of asbestos in any form, good or product containing asbestos.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

00P706040

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOWING AND LABOR COVERAGE

This endorsement modifies insurance provided under the following:

### YOUR AUTO POLICY

With respect to coverage provided by this endorsement, the provisions of **Your Auto Policy** apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

Endorsement Effective: 09/21/15

Named Insured: G BROTHERS LLC

## SCHEDULE

| Unit | Year & Make of Covered Auto(s) to which this endorsement applies | Serial Number | Limt of Insurance | Premium |
|------|------|------|------|------|
| 001 | 15 INTL 4000 | 1HTMMMML5FH652966 | $100 | |
| 002 | 14 INTL 4000 | 3HAMMAAL0ELA89042 | $100 | |
| 003 | 14 INTL 4000 | 1HTMMAAL0EH029269 | $100 | |
| 004 | 12 INTL 4000 | 3HAMMAALACL538224 | $100 | |

Part **A. 2. Towing**, of **PART VII - PHYSICAL DAMAGE INSURANCE** is replaced by the following:

**2. Towing**

a. **We** will pay for towing and labor costs incurred each time a covered **auto** is disabled. However, the labor must be performed at the place of disablement.

b. **Our** payment is limited to the lesser of:

1. The actual cost incurred for towing & labor; or

2. The amount shown for a covered **auto** described in the Schedule.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1675 (10-08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TRANSPORTATION EXPENSE COVERAGE
DUE TO THEFT OF A COVERED VEHICLE**

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

With respect to coverage provided by this endorsement, the provisions of **Your Auto Policy** apply unless modified by this endorsement.

1.  Part **B. WE WILL ALSO PAY** of **PART VII - PHYSICAL DAMAGE INSURANCE** is replaced by the following:

    **B.  WE WILL ALSO PAY**

    **We** will also pay up to $30 per day subject to a maximum of $900 for transportation expense incurred by **you** because of the total theft of a covered **auto**. **We** will pay only for those covered **autos** for which **you** carry Comprehensive Coverage. **We** will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered **auto** is returned to use or **we** pay for its **loss**.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1672 (10-08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

COMMERCIAL AUTO

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

YOUR AUTO POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal injury", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. Except with respect to Physical Damage Coverage, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

1599 (01 06)                Copyright, ISO Properties, Inc., 2004                Page 1 of 3

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** or **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**C.** With respect to Physical Damage Coverage, the following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for any "loss", loss of use or rental reimbursement after "loss" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold in Paragraph **C.5.** is exceeded.

Copyright, ISO Properties, Inc., 2004

With respect to this Exclusion, Paragraph **C.5.** describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Policy or any applicable endorsement.

**D.** In the event of any incident of "terrorism" that is not subject to the Exclusion in Paragraphs **B.** or **C.,** coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO INSURANCE POLICY

**A.** If **you** are an individual who is engaged in garage, automobile sales agency, repair shop, service station, or public parking operations, or **you** are a partnership, limited liability company or corporation, then the **Canceling This Policy During The Policy Period** policy condition is replaced by the following:

**Cancellation**

**1.** The Named **Insured** shown in the Declarations may cancel this policy by mailing **us** advance written notice of cancellation.

**2.** If this is a new policy and has been in effect for 90 days or less, **we** may cancel for:

   **a.** Nonpayment of premium; or

   **b.** Any other reason.

**3.** If this is a policy which has been in effect for more than 90 days, or is a renewal of a policy **we** issued, **we** may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **7.** below:

   **a.** Nonpayment of premium;

   **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   **c.** Discovery of a moral hazard or willful or reckless acts or omissions on **your** part which increases any hazard insured against;

   **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

   **f.** Failure of an **insured** to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

   **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**4.** **We** will mail written notice of cancellation to the Named **Insured**, and agent if any, at the last mailing addresses known to **us**. Proof of mailing will be sufficient proof of notice.

**5.** **We** will mail the notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation, if **we** cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation, if **we** cancel for a reason stated in **2.b.** or **3.b.** through **3.g.** above.

**6.** The notice of cancellation will:

   **a.** State the effective date of cancellation. The policy period will end on that date.

   **b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

**7.** Policies written for a term of more than one year or on a continuous basis may be cancelled by **us** for any reason at an anniversary date, upon 30 days' written notice of cancellation.

Includes copyrighted material of ISO Properties, Inc., 2005, with its permission.

8. If this policy is cancelled, **we** will send the Named **Insured** any premium refund due.  If **we** cancel, the refund will be pro rata.  If the Named **Insured** cancels, the refund may be less than pro rata.  The cancellation will be effective even if **we** have not made or offered a refund.

B. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. If **we** elect not to renew this policy, **we** will mail written notice of nonrenewal to the Named **Insured**, and agent if any, at the last mailing addresses known to **us**.  The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

2. **We** will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient period of notice.

Includes copyrighted material of ISO Properties, Inc., 2005, with its permission.

4110  (10-13)                                                                                     Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES FOR INDIVIDUALS NOT ENGAGED IN GARAGE OR AUTOMOBILE SALES OPERATIONS - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS AUTO INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If **you** are an individual and this policy does not insure the motor vehicle hazard of garages, automobile sales agencies, repair shops, service stations or public parking places, then the **Canceling This Policy During The Policy Period** policy condition does not apply. The following condition applies instead:

**Ending This Policy**

**A. Cancellation**

1. **You** may cancel the policy by returning it to **us** or by giving **us** advance notice of the date cancellation is to take effect.

2. When this policy is in effect less than 90 days and is not a renewal or continuation policy, **we** may cancel for any reason by mailing written notice of cancellation. If **we** cancel for nonpayment of premium, **we** will mail **you** at least 10 days' notice. If **we** cancel for any other reason, **we** will mail **you** at least 30 days' notice.

3. When this policy is in effect 90 days or more or is a renewal or continuation policy, **we** may cancel only for one or more of the following reasons:

   a. Nonpayment of premium.

   b. **You** or any **family member** who either lives with **you** or customarily uses a covered **auto** has had his or her driver's license suspended or revoked during the policy period.

      However, **we** may not cancel for this reason if the operator whose license is suspended or revoked is excluded from coverage under this policy.

   c. **You** move to a state where **we** are not licensed to do business.

   d. Fraud, concealment or misrepresentation made by the **insured** to **us** of any material fact in obtaining the policy, continuing the policy, or in presenting a claim under the policy.

   e. **We** replace this policy with another one providing similar coverages and the same limits for the covered **auto**. The replacement policy will become effective when this policy is cancelled and will end on this policy's effective date.

4. If this policy is cancelled, **you** may be entitled to a premium refund. If so, **we** will send **you** the refund. If **you** cancel, the refund, if any, will be computed in accordance with **our** customary short rate procedure. If **we** cancel, the refund, if any, will be computed pro rata.

5. The effective date of cancellation stated in the notice shall become the end of the policy period.

6. If **we** cancel for any reason described in Paragraphs **A.3.a.** through **e.** above, **we** will mail written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if **we** cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if **we** cancel for any other reason.

7. The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

Includes copyrighted material of ISO Properties, Inc., 2013, with its permission.

**B. NONRENEWAL**

1. If **we** decide not to renew or continue this policy **we** will mail **you** written notice of nonrenewal, stating the reason(s) for nonrenewal, at least 30 days before the end of the policy period.  If the policy period is other than one year or is a continuous policy, **we** will have the right not to renew or continue it only at each annual anniversary of its original effective date.  If **we** offer to renew or continue and **you** do not accept, this policy will terminate at the end of the current policy period.  Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

2. If **we** fail to mail proper notice of nonrenewal and **you** obtain other insurance, this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

Any notice of cancellation or nonrenewal will be mailed to **your** last known address.  However, **we** may deliver any notice instead of mailing it.  Proof of mailing of any notice shall be sufficient proof of notice.

**PA 00 01 (10-13)**

Includes copyrighted material of ISO Properties, Inc., 2013, with its permission.

**Page 2 of 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

COMMERCIAL AUTO

# WAR EXCLUSION

This endorsement modifies insurance provided under the following:

> YOUR AUTO POLICY FORM 1500

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Liability Coverage**

1. The following exclusion is added to **Part IV-LIABILITY INSURANCE** under **Paragraph C. WE WILL NOT COVER-EXCLUSIONS:**

   **11. WAR**

   "Bodily injury", "property damage" or "covered pollution cost or expense" arising directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**B. Changes In Auto Medical Payments**

If Auto Medical Payments Coverage applies, then **Part V, Paragraph B. Exclusion 6.** is replaced by the following:

6. "Bodily injury", arising directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**C. Changes In Uninsured/Underinsured Motorists Coverage**

If Uninsured and/or Underinsured Motorists Coverage is attached, then the following exclusion is added:

This insurance does not apply to:

**WAR**

1. "Bodily injury" or "property damage", if applicable, arising directly or indirectly, out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Changes In Single Interest Automobile Physical Damage Insurance Policy**

The War exclusion is replaced by the following:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO UNINSURED AND UNDERINSURED MOTORISTS COVERAGE - BODILY INJURY

For a  covered "auto" licensed or principally garaged in, Ohio, this endorsement modifies insurance provided under the following:

YOUR AUTO POLICY FORM 1500

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

This endorsement replaces PART VI - UNINSURED MOTORISTS INSURANCE (INCLUDING UNDERINSURED MOTORIST).

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

**SCHEDULE**

| LIMIT OF INSURANCE | | |
|---|---|---|
| **UNINSURED MOTORISTS COVERAGE:** | $ | **Each "Accident"** |
| **UNDERINSURED MOTORISTS COVERAGE:** | $ | **Each "Accident"** |

| |
|---|
| Uninsured and Underinsured Motorists Coverage applies unless and "X" is entered in the corresponding box below:<br>☐ If an "X" is entered in this box, this endorsement provides Uninsured Motorists Coverage only, and all references to "underinsured motor vehicle" do not apply.<br>☐ If an "X" is entered in this box, this endorsement provides Underinsured Motorists Coverage only, and all references to "uninsured motor vehicle" do not apply. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

2. With respect to damages resulting from an "accident" with an "underinsured motor vehicle", we will pay under the coverage selected under this endorsement only if Paragraph **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:

      **(1)** Have been given prompt written notice of such settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to

Includes copyrighted material of Insurance Services Office, Inc., 2010, with its permission.

the tentative settlement within 30 days after receipt of notification.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

   a. The Named Insured and any "family members".

   b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.

   c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction. However, no coverage is provided for anyone occupying an "auto" which is not a covered auto for Uninsured Motorists and/or Underinsured Motorists Coverage under this coverage form.

   b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to:

1. Any claim settled without our consent, if the settlement prejudices our right to recover payments. However, this exclusion does not apply to a settlement

made with the insurer of an "underinsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Any "insured" using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily Injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this coverage form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage under this coverage form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage on a primary basis under any other coverage form or policy.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid,

claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage and/or Underinsured Motorists Coverage shown in the Schedule or Declarations.

2. The coverage limit for Uninsured and Underinsured Motorists Coverage applies separately to damages caused by an "accident" with an "uninsured motor vehicle" and an "underinsured motor vehicle".

3. No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage form, any Liability Coverage form or any Medical Payments Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage form for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

4. With respect to coverage provided for damages resulting from an "accident" with an "underinsured motor vehicle", the limit of insurance shall be reduced by all sums paid for "bodily injury" by or on behalf of anyone who is legally responsible.

**E. Changes In Conditions**

The conditions of the policy for Ohio Uninsured and Underinsured Motorists Insurance are changed as follows:

1. **OTHER INSURANCE** in **YOUR AUTO POLICY** is replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

   **b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing

coverage on a primary basis.

**c.** If the coverage under this coverage form is provided:

   **(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   **(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **YOUR DUTIES AFTER ACCIDENT OR LOSS** is changed by adding the following:

   **a.** Promptly notify the police if a hit-and-run driver is involved;

   **b.** Promptly send us copies of the legal papers if a "suit" is brought; and

   **c.** A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of an "underinsured motor vehicle" and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle". However, this Provision **2.c.** does not apply if failure to notify us does not prejudice our rights against the insurer, owner or operator of such "underinsured motor vehicle".

3. **OUR RIGHT TO RECOVER FROM OTHERS** is amended by adding the following:

   If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

**b.** Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4.** The following conditions are added:

**a. Arbitration**

**(1)** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**(2)** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and

evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**b. Statute Of Limitations**

Any claim or suit for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage must be brought within three years after the date of the "accident" causing the "bodily injury" or one year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later, provided that our rights are not prejudiced.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle:

**a.** For which no liability bond or policy applies at the time of an "accident";

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

The facts of the "accident" or intentional act must be proved by independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage, unless such testimony is supported by additional evidence.

However, "uninsured motor vehicle" does

Includes copyrighted material of Insurance Services Office, Inc., 2010, with its permission.

not include any vehicle:

   **a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   **b.** Designed for use mainly off public roads while not on public roads; or

   **c.** Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

      **(1)** An immunity under the Ohio Political Subdivision Tort Liability Law; or

      **(2)** A diplomatic immunity.

**4.** "Underinsured motor vehicle" means a land motor vehicle for which the sum of all liability bonds or policies applicable at the time of an "accident" is either:

   **a.** Less than the limit of liability for this coverage; or

   **b.** Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage.

However, "underinsured motor vehicle" does not include any vehicle:

   **a.** Owned or operated by a self-insurer under any applicable motor vehicle law;

   **b.** Owned by a governmental unit or agency;

   **c.** Designed for use mainly off public roads while not on public roads; or

   **d.** That is insured for Liability Coverage under this policy.

POLICY NUMBER: COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPLIT UNDERINSURED MOTORISTS COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

UNDERINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

## SCHEDULE

| | | |
|---|---|---|
| "Bodily Injury" | $ | Each Person |
| | $ | Each "Accident" |
| "Property Damage" | $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Paragraph **1.** of OUR LIMIT OF INSURANCE is replaced by the following:

**1.** Regardless of the number of covered "autos", "insureds", claims made, premiums paid or vehicles involved in the "accident", the limit of insurance is as follows:

   **a.** The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident", including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "Bodily Injury" shown in the Schedule for each person.

   **b.** Subject to the limit for "each person", the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit shown in the Schedule for each "accident".

   **c.** If coverage for "property damage" is provided by this insurance, the most we will pay for all damages resulting from "property damage" caused by any one "accident" is the limit of "Property Damage" shown in the Schedule for each "accident".

1826 (10-94) ☐

POLICY NUMBER:                                                    COMMERCIAL AUTO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPLIT UNINSURED MOTORISTS COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | |
|---|---|
| Named Insured | Countersigned by |

(Authorized Representative)

## SCHEDULE

| | | |
|---|---|---|
| "Bodily Injury" | $ | Each Person |
| | $ | Each "Accident" |
| "Property Damage" | $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Paragraph **1.** of LIMIT OF INSURANCE is replaced by the following:

1.  Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the limit of insurance is as follows:

    a.  The most we will pay for all damages resulting from "bodily injury" to any one person caused by any one "accident", including all damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury", is the limit of "Bodily Injury" shown in the Schedule for each person.

    b.  Subject to the limit for each person, the most we will pay for all damages resulting from "bodily injury" caused by any one "accident" is the limit of "Bodily Injury" shown in the Schedule for each "accident".

    c.  If coverage for "property damage" is provided by this insurance, the most we will pay for all damages resulting from "property damage" caused by any one "accident" is the limit of "Property Damage" shown in the Schedule for each "accident".

1827 (10-94)                                                                      □

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# SPLIT UNINSURED MOTORISTS
# COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

UNINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

### SCHEDULE

**Bodily Injury**                                  Each Person

                                                   Each **Accident**

**Property Damage**                                Each **Accident**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Paragraph **1.** of LIMIT OF INSURANCE is replaced by the following:

1. Regardless of the number of covered **autos**, **insureds**, premiums paid, claims made, or vehicles involved in the **accident**, the limit of insurance is as follows:

   a. The most **we** will pay for all damages resulting from **bodily injury** to any one person caused by any one **accident**, including all damages claimed by any person or organization for care, loss of services or death resulting from the **bodily injury**, is the limit of **Bodily Injury** shown in the Schedule for each person.

   b. Subject to the limit for each person, the most **we** will pay for all damages resulting from **bodily injury** caused by any one **accident** is the limit of **Bodily Injury** shown in the Schedule for each **accident**.

   c. If coverage for **property damage** is provided by this insurance, the most **we** will pay for all damages resulting from **property damage** caused by any one **accident** is the limit of **Property Damage** shown in the Schedule for each **accident**.

1827 (10-94)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL AUTO BROADENED COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

With respect to coverage provided by this endorsement, the provisions of **YOUR AUTO POLICY** apply unless modified by this endorsement.

**PART I - WORDS AND PHRASES WITH SPECIAL MEANING** is amended by adding the following:

**O.** **"Insured contract"** means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another to pay for **bodily injury** or **property damage** to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**6.** That part of any contract or agreement entered into, as part of **your** business, pertaining to the rental or lease, by **you** or any of **your** employees, of any **auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your** employees to pay for **property damage** to any **auto** rented or leased by **you** or any of **your** employees.

An "**insured contract**" does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing; or

**b.** That pertains to the loan, lease or rental of an **auto** by **you** or any of **your** employees, if the **auto** is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of a covered **auto** over a route or territory that person or organization is authorized to serve by public authority.

**PART IV - LIABILITY INSURANCE, B. WE WILL ALSO PAY, 1.** and **6.** are replaced by the following:

**1.** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an **accident we** cover. **We** do not have to furnish these bonds.

**6.** Up to $250 a day for loss of earnings (but not other income) because of attendance at hearings or trials at **our** request.

**PART IV - LIABILITY INSURANCE, C. WE WILL NOT COVER - EXCLUSIONS**, is amended as follows:

Exclusion **1.** is replaced by:

**1.** Liability assumed under any contract. However, this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

**b.** That the **insured** would have in the absence of the contract or agreement.

Exclusion **5.** is replaced by:

**5.** **Bodily injury** to any employee of the **insured** arising out of and in the course of his or her employment by the **insured**. However, this exclusion does not apply to **bodily injury** to domestic employees not entitled to worker's

**1957 09 09**

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**Page 1 of 2**

compensation benefits or to liability assumed by the **insured** under an **insured contract**.

Exclusion **10.** is deleted.

**PART VII - PHYSICAL DAMAGE INSURANCE, D. HOW MUCH WE PAY FOR LOSSES - THE MOST WE WILL PAY, 3.** is replaced by the following:

3. For each covered **auto, our** obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the declarations. However, any Comprehensive Coverage deductible shown in the declarations does not apply to **loss** caused by fire or lightning. No deductible applies to glass damage if the glass is repaired rather than replaced.

**PART VII - PHYSICAL DAMAGE INSURANCE**, is amended by adding the following:

**F. HIRED AUTO PHYSICAL DAMAGE LOSS OF USE COVERAGE**

If coverage under this **PART** extends to Hired **Autos**, ~~we~~ will also pay up to $20 per day subject to a maximum of $600 for expenses for which **you** become legally responsible to pay for loss of use of an **auto you** leased, hired, rented or borrowed without a driver, under a written contract or agreement which does not extend for more than three months, because of a covered **loss** to that leased, hired, rented or borrowed

**auto**. This coverage does not apply to an **auto you** lease, hire, rent or borrow from any of **your** employees or members of their household. This coverage applies only if the leasing or rental firm from which the **auto** was leased, hired, rented or borrowed by **you** sustains an actual monetary loss resulting from a covered **loss** to that **auto**.

**PART VIII - CONDITIONS, B. OTHER INSURANCE**, is amended by adding the following:

1. For Hired **Auto** Physical Damage Loss of Use Coverage, any covered **auto you** lease, hire, rent or borrow under a written contract or agreement which does not extend for more than three months is deemed to be a covered **auto you** own. However, any **auto** that is leased, hired, rented or borrowed with a driver is not a covered **auto**.

2. Regardless of the provisions in this policy condition, the liability coverage this policy provides is primary for any liability assumed under an **insured contract**.

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

**1957 09 09**

**Page 2 of 2**

# MILEAGE RESTRICTION ENDORSEMENT

It is agreed that such insurance as is afforded by the policy for **Bodily Injury** Liability, for **Property Damage** Liability and for Medical Payments, with respect to the automobiles described below or designated in the policy as subject to this endorsement, does not apply, if regular or frequent trips of the automobile exceed a 200    mile radius of the limits of the city or town where such automobile is principally garaged as stated in the declarations, to any **accident** which occurs during any such trip, or return therefrom, other than to an **accident** which occurs during the use of such automobile for personal, pleasure or family purposes on a trip beyond such 200    mile radius.

**Description of Automobile:**

| | | |
|---|---|---|
| 001 | 15 INTL 4000 | 1HTMMMML5FH652966 |
| 002 | 14 INTL 4000 | 3HAMMAAL0ELA89042 |
| 003 | 14 INTL 4000 | 1HTMMAAL0EH029269 |
| 004 | 12 INTL 4000 | 3HAMMAALACL538224 |
| 005 | 08 INTL 4000 | 1HTMMAAL28H331187 |

**PEKIN INSURANCE COMPANY**

1510 OH (06-06)

*00P706040*

## ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
## UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to G BROTHERS LLC _____ of HAMILTON _____ OH

Dated at Pekin, Illinois _____ this 29TH day of OCTOBER _____, 2015

Amending Policy No 00P706040 _____ Effective Date 09/21/15 _____

Name of Insurance Company Pekin Insurance Company _____

Countersigned by _Michael Sloter_
*Authorized Company Representative*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "[X]", for the limits shown:

[X]   This insurance is primary and the company shall not be liable for amounts in excess of $ 1,000,000.00 _____ for each accident.

[ ]   This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident in excess of the underlying limit of $ _____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: (309)346-1161.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

### DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof,

shall relieve the company from liability or from the payment of any final judgement, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

THE SCHEDULE OF LIMITS SHOWN ON THE REVERSE SIDE DOES NOT PROVIDE COVERAGE. The limits shown in the schedule are for information purposes only.

**Form MCS-90**

1521 (Rev. 02-11)                                                                                                          Page 1 of 2

## SCHEDULE OF LIMITS - *PUBLIC LIABILITY*

| Type of carriage | Commodity transported | Jan. 1, 1985 |
|---|---|---|
| (1) For-hire (In interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $ 750,000 |
| (2) For-hire and Private (In interstate, foreign or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials.   Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| (3) For-hire and Private (In interstate or foreign commerce, in any quantity, or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| (4)  For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

**Form MCS-90**

# FORM F

**UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT**

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated on the reverse side hereof.

3. This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

Attached to and forming part of policy No. __OOP706040__

issued by __PEKIN INSURANCE COMPANY__ , herein called

Company, of __2505 COURT STREET, PEKIN ILLINOIS__

to __G BROTHERS LLC__ of __3142 PARKWOOD LN__

__HAMILTON__ __OH__

Dated at __PEKIN, ILLINOIS__ this __29TH__ day of __OCTOBER__ __2015__

00P706040

| X --INDICATES STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED | | | | | | | |
|---|---|---|---|---|---|---|---|
| ALABAMA | | ILLINOIS | | MONTANA | | RHODE ISLAND | |
| ALASKA | | INDIANA | | NEBRASKA | | SOUTH CAROLINA | |
| ARIZONA | | IOWA | | NEVADA | | SOUTH DAKOTA | |
| ARKANSAS | | KANSAS | | NEW HAMPSHIRE | | TENNESSEE | |
| CALIFORNIA | | KENTUCKY | | NEW JERSEY | | TEXAS | |
| COLORADO | | LOUISIANA | | NEW MEXICO | | UTAH | |
| CONNECTICUT | | MAINE | | NEW YORK | | VERMONT | |
| DELAWARE | | MARYLAND | | NORTH CAROLINA | | VIRGINIA | |
| DISTRICT OF COLUMBIA | | MASSACHUSETTS | | NORTH DAKOTA | | WASHINGTON | |
| FLORIDA | | MICHIGAN | | OHIO | X | WEST VIRGINIA | |
| GEORGIA | | MINNESOTA | | OKLAHOMA | | WISCONSIN | |
| HAWAII | | MISSISSIPPI | | OREGON | | WYOMING | |
| IDAHO | | MISSOURI | | PENNSYLVANIA | | | |

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO UNINSURED MOTORISTS COVERAGE - PROPERTY DAMAGE

For a covered "auto" licensed or principally garaged in Ohio, this endorsement modifies insurance provided under the following:

YOUR AUTO POLICY FORM 1500

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

This endorsement replaces PART VI - UNINSURED MOTORISTS INSURANCE (INCLUDING UNDERINSURED MOTORIST).

| Endorsement Effective: | Countersigned By: |
|---|---|
| Named Insured: | (Authorized Representative) |

## SCHEDULE

| **LIMIT OF INSURANCE** | |
|---|---|
| $ | Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "property damage" to a covered "auto" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. We will pay only after any property damage liability bonds or policies have been exhausted by payment of judgments or settlements.

3. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Exclusions**

This insurance does not apply to:

1. Any claim settled without our consent, if the settlement prejudices our right to recover payments.

2. The first $250 of the amount of "property damage" to a covered "auto" as a result of any one "accident".

3. Any "insured" using a vehicle without a reasonable belief that the person is entitled to do so.

4. Any motor vehicle owned by you for which you have purchased collision coverage under this Coverage Form or any other Coverage Form or policy.

5. If the owner or operator of the "uninsured motor vehicle" cannot be identified.

**1542 09 03** | Copyright, ISO Properties, Inc., 2003 | **Page 1 of 2**

**6.** The direct or indirect benefit of any insurer of the property.

**7.** Punitive or exemplary damages.

**C. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" will be the lesser of $7,500 or the actual cash value of your damaged "auto" at the time of the "accident".

**2.** Any amount payable under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible.

**3.** An adjustment for the depreciation and physical condition will be made in determining actual cash value at the time of "loss".

**D. Changes In Conditions**

The conditions are changed for Uninsured Motorists Coverage as follows:

**1. OTHER INSURANCE** in YOUR AUTO POLICY is replaced by the addition of the following:

The reference to "other collectible insurance" applies only to other collectible uninsured motorists coverage.

If this Coverage Part and any other Coverage Part or policy providing similar insurance applies to the same "accident", the maximum limit of insurance under all the Coverage Parts or policies shall be $7,500.

**2. YOUR DUTIES AFTER ACCIDENT OR LOSS** is changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3.** The following condition is added:

**ARBITRATION**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes con-

cerning coverage under this endorsement may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**E. Additional Definitions**

As used in this endorsement:

**1.** "Property damage" means injury to or destruction of a covered "auto". However, "property damage" does not include:

**a.** Loss of use of a covered "auto"; or

**b.** Damage to property owned by the "insured" while contained in a covered "auto".

**2.** "Occupying" means in, upon getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle:

**a.** For which no liability bond or policy affording coverage for "property damage" applies at the time of the accident;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

**b.** Designed for use mainly off public roads while not on public roads.

 Copyright, ISO Properties, Inc., 2003 **1542 09 03**





DATE NOTICE MAILED
12/22/15

**PEKIN INSURANCE**
Underwritten by: **PEKIN INSURANCE COMPANY**
2505 COURT STREET PEKIN, ILLINOIS 61558-0001
**NOTICE OF POLICY TERMINATION**



C

POLICYHOLDER       G BROTHERS LLC
                   3142 PARKWOOD LN
                   HAMILTON OH 45011-0910

TERMINATION EFFECTIVE      01/20/16       12:01 A.M. STANDARD TIME

AUTHORIZED AGENT    MINOR INSURANCE AGENCY, LLC        AGENT NO. 00-08651-000
LIENHOLDER          NOTIFIED IF PRESENT
POLICY NUMBER       00CU30754
ACCOUNT NUMBER      00MLM555 - UNIPLAN

TERMINATION REASON(S)
DOES NOT MEET UNDERWRITING GUIDELINES: THE RISK'S EXPOSURE HAS INCREASED SINCE
THE BEGINNING OF THE POLICY - LEASING OF DRIVERS

405 (04-10)

AGENT'S COPY

THIS POLICY OF INSURANCE WILL TERMINATE ON THE DATE AND HOUR SHOWN ABOVE.

Any return premium will be applied to the amount due on the terminated policy/account and any
balance due will appear on the next invoice. Any refund will be released in the form of a check in
approximately two weeks.



Beyond the expected.®

# PEKIN®

## INSURANCE



COMMERCIAL UMBRELLA POLICY

CU 00 01 05 03

# COMMERCIAL UMBRELLA POLICY

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Various provisions in this policy restrict coverage. Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization quaifying as such under **SECTION II — WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V — DEFINITIONS.**

## SECTION I — COMMERCIAL UMBRELLA LIABILITY COVERAGE

1. **Insuring Agreement**

    We will pay our part of the "ultimate net loss" which the insured legally must pay as damages because of "injury" caused by an "occurrence" to which this insurance applies.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

    a. The "injury" must be caused by an "occurrence" within the "coverage territory." "Bodily injury" and "property damage" must occur during the policy period. "Personal injury" and "advertising injury" must be caused by an "occurrence" during the policy period.

    b. Our part is that part of the "ultimate net loss" that exceeds:

       (1) The limits of the "underlying insurance" and any other insurance collectible by the insured, or

       (2) The "retained limit" shown in the Declarations if no "underlying insurance" applies to the "injury."

       However, the amount we will pay for "ultimate net loss" is limited as described in SECTION III — LIMITS OF INSURANCE.

    c. If the aggregate limit of insurance of any policy of "underlying insurance" is reduced or exhausted solely because of losses paid that would be covered under this policy, then this insurance will:

       (1) In the case of reduction, continue as excess over the reduced underlying insurance.

       (2) In the case of exhaustion, continue as underlying insurance.

If the aggregate limit of any "underlying insurance" is reduced or exhausted due to losses that are not covered under this policy, this insurance will apply as if such payments had not been made.

This extension is subject to this policy's limit of insurance provisions and to the terms and conditions of the "underlying insurance."

The "retained limit" does not apply to this extension.

d. We have the right to participate in the defense of any claim or "suit" seeking damages to which this insurance applies. We have a duty to defend such claims or "suits" when no "underlying insurance" applies, or when the aggregate limit of the "underlying insurance" has been exhausted solely because of losses paid.

If we provide a defense, we may investigate and settle any claim or "suit" at our discretion.

Both our right and our duty to defend any existing or future claims or "suits" end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

2. **Exclusions**

    This insurance does not apply to:

    a. Any obligation of the insured or any of the insured's insurers under any workers compensation, unemployment compensation, or disability benefits law, or any similar law.

    b. "Bodily injury" to:

       (1) An employee of the insured arising out of and in the course of employment by the insured; or

       (2) The spouse, child, parent, brother or sister of that employee as a consequence of (1) above.

       This exclusion applies:

       (1) Whether the insured may be liable as an employer or in any other capacity; and

       (2) To any obligation to share damages with or repay someone else who must pay damages because of the "injury."

       This exclusion does not apply to liability:

       (1) assumed by the insured under an "insured contract;" or

       (2) covered by "underlying insurance."

    c. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    d. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to

CU 00 01 05 03

Page 1 of 9

liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract;" or

(2) That the insured would have in the absence of the contract or agreement;

provided that such liability is covered by "underlying insurance."

e. (1) "Injury" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a) At or from premises you own, rent or occupy;

    (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

    (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

        (i) if the pollutants are brought on or to the site or location in connection with such operations; or

        (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Subparagraphs (a) and (d) (i) of paragraph (1) of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

f. Any alleged or actual discrimination by an insured against any person.

g. Any damages because of "professional liability."

h. "Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in your care, custody or control;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

i. "Bodily injury" or "property damage" resulting from the ownership maintenance, operation, use, "loading or unloading," or entrustment to others of:

(1) Aircraft owned by any insured, or chartered without a crew by or on behalf of any insured, or

(2) Watercraft over 50 feet in length. This insurance will apply to watercraft 50 feet or less in length only if insured under the "underlying insurance." The coverage afforded under this insurance will be no broader than that of the "underlying insurance."

j. "Property damage" to:

(1) "Your product" arising out of the product or any part of it.

(2) "Your work" arising out of the work, or any part of it, except insofar as coverage applies in the "underlying insurance." The coveage afforded under this insurance will be no broader than that of the "underlying insurance."

k. Any liability, including fiduciary liability, resulting from any employee benefit plans or programs, the Employee Retirement Income Security Act of 1974 (ERISA), the Pension Reform Act of 1974 or any amendments to the plans, programs or laws.

l. Any obligation imposed under any first party personal injury, automobile no-fault, uninsured motorists, underinsured motorists law or any similar law.

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work;" or

(3) "Impaired property;"

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. "Personal injury" or "advertising injury:"

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

p. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance; or

(3) The wrong description of the price of goods, products or services.

(4) An "offense" committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

q. Any claim for damages brought by or on behalf of you or any additional Named Insured.

r. "Injury" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

s. Damage by fire to premises rented to you.

t. Any obligation to pay expenses under any medical payments coverage.

u. "Injury" excluded by the Nuclear Energy Liability Exclusion Endorsement attached to this policy.

**3. Supplementary Payments**

In addition to the limit of insurance, we will pay, with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

c. The cost of appeal bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," but not loss of earnings.

e. All costs taxed against the insured in the "suit."

f. Pre-judgment interest awarded against the insured, but only on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

g. All interest on any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the amount available for the judgment under this insurance.

But we will not pay any amount paid or payable under any "underlying insurance."

Where we may be prevented from paying these costs directly, we will reimburse the insured for any expense that is incurred with our written consent.

## SECTION II — WHO IS AN INSURED

Each of the following is an insured under this policy:

1. You are an insured.

2. Your subsidiary company(s) and any other company under your control and active management covered by "underlying insurance" at the inception date of this policy.

3. If you are designated in the Declarations as a partnership or a joint venture, the partnership or joint venture and any partner or member but only with respect to liability as a partner or member. This insurance does not apply to any partnership or joint venture of which the insured is a partner or member which is not named in the Declarations.

4. Any person or organization, trustee or estate for which you are obligated by a written contract to provide this type of insurance. This applies, however, only to operations performed by you or on your behalf or to facilities you own or use.

5. Any of your executive officers, directors, other employees or stockholders while acting within the scope of duties as such.

CU 00 01 05 03

6. Any other person or organization who is an Insured under the "underlying insurance." Except for the limit of insurance the coverage afforded under this insurance will be no broader than that of the "underlying insurance."

7. Any other person or organization added to the "underlying insurance" during the policy period of this policy, provided you tell us within 90 days after the effective date the "underlying insurance" applies to the addition. Except for the limit of insurance, the coverage afforded under this insurance will be no broader than that of the "underlying insurance."

8. If you are an individual, you and your spouse but only with respect to the conduct of the business of which you are the sole owner.

## SECTION III — LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The Each Occurrence Limit is the most we will pay for all "ultimate net loss" arising from any one "occurrence."

3. The General Aggregate Limit is the most we will pay for all "ultimate net loss" arising from all "occurrences," except "ultimate net loss" arising from the "auto hazard" or the "products — completed operations hazard."

4. The Products — Completed Operations Aggregate Limit is the most we will pay for all "ultimate net loss" arising from the "products — completed operations hazard."

Each of the Aggregate Limits applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for any additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Aggregate Limit.

## SECTION IV — CONDITIONS

### 1. Appeals

If you or any insurer who provides the applicable "underlying insurance" decide not to appeal a judgment which exceeds the "underlying insurance" limits or the "retained limit," we may decide to do so at our own expense. In addition to our limit of liability, we will pay all expenses, costs and incidental interest of the appeal.

### 2. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate or of any underlying insurer will not relieve us of our obligations under this insurance.

But in the event of bankruptcy or insolvency of any "underlying insurer," the insurance afforded by this policy shall not replace such "underlying insurance," but shall apply as if the "underlying insurance" were valid and collectible.

### 3. Premiums

a. We will compute all premiums for this policy in accordance with our rules and rates.

b. If the premium shown in the Declarations is checked ☒ Flat Annual, the premium is not subject to adjustment.

c. If the premium shown in the Declarations is checked ☒ Minimum and Deposit Based on Adjustable Rate:

   (1) The minimum premium is the least amount we will charge per year for this policy, regardless of any changes in the exposures insured.

   (2) The deposit premium is an advance premium which will be credited to the amount of earned premium due at the end of each annual policy period.

   At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured. We will, however, retain not less than the minimum premium.

d. The first Named Insured:

   (1) Must keep records of the information we need for premium computation, and send us copies at such times as we may request;

   (2) Is responsible for the payment of all premiums; and

   (3) Will be the payee for any return premiums we pay.

### 4. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### 5. Inspections and Surveys

We have the right but are not obligated to:

   (a) Make inspections and surveys at any time;

   (b) Give you reports on the conditions we find; and

   (c) Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   (a) Are safe or healthful; or

Page 4 of 9                                                    CU 00 01 05 03

(b) Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**6. Duties in the Event of Injury, Claim or Suit**

a. You must see to it that we or our agent are notified as soon as practicable of any "occurrence" which may result in a claim under this policy. To the extent possible, notice should include:

(1) How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and,

(3) The nature and location of any "injury" or damage arising out of the "occurrence."

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;"

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

(5) Notify us immediately of any judgment or settlement of any claim or "suit" brought against any insured.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**7. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**8. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

The amounts which may be recovered shall be apportioned as follows:

a. If you or any interest have paid any amount over and above any payment under this policy, you or such interests will first be reimbursed up to the amount you or such interests paid.

b. We are then to be reimbursed out of any remaining balance up to the amount paid under this policy.

c. You and any interests are entitled to claim the residue, if any.

Expenses incurred to recover any such amounts will be apportioned between you and any other interests in the ratio of their respective settled recoveries. If there is no recovery, we will pay all such expenses.

**9. Other Insurance**

The insurance provided by this policy is excess over:

a. The "underlying insurance;" and

b. Any other collectible insurance.

This does not apply to insurance written specifically to be excess to this policy.

**10. Maintenance of Underlying Insurance**

While this policy is in effect, you must maintain each policy of "underlying insurance." You must maintain these underlying policies in full effect and at the limits of liability shown, except for any reduction or exhaustion of an aggregate limit solely because of payment of claims.

If you fail or neglect to maintain the required "underlying insurance," this policy will not be invalidated; but this policy will apply as though the required "underlying insurance" were in force and collectible at the time of the "occurrence."

You must notify us if the Aggregate Limit of any "underlying insurance" is reduced or exhausted; but such reduction or exhaustion will not be a failure to maintain "underlying insurance" in full force and effect.

**11. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be

CU 00 01 05 03

amended or waived only by endorsement issued by us and made a part of this policy.

## 12. Transfer of Your Rights and Duties under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.

## 13. Cancellation

a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) 10 days before the effective date of cancellation if we cancel for:

(a) nonpayment of premium; or

(b) any bankruptcy or debtor relief proceeding brought by or against you; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

e. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund would be calculated on a short rate basis. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

## 14. When We Do Not Renew

If we decide not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## 15. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

## 16. Representations

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

## SECTION V — DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following "offenses:"

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan;

Committed in the course of advertising your goods, products or services.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Auto hazard" means liability arising out of the ownership, operation, maintenance, use, loading or unloading or entrustment to others of an "auto."

4. "Bodily injury" means bodily injury, sickness or disease or disability sustained by a person, including death resulting from any of these at any time. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting from the "bodily injury."

5. "Coverage Territory" means anywhere in the world if the insured's responsibility to pay damages is determined in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to.

6. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work;" or

b. Your fulfilling the terms of the contract or agreement.

CU 00 01 05 03

7. "Injury" means "bodily injury," "property damage," "advertising injury" or "personal injury;" or shock, mental injury or mental anguish arising from "bodily injury," "advertising injury," or "personal injury."

8. "Insured contract" means:

   a. A lease of premises;

   b. A sidetrack agreement;

   c. An easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade;

   d. Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   e. An indemnification of a municipality as required by ordinance, except in connection with work for a municipality;

   f. An elevator maintenance agreement; or

   g. That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   An "insured contract" does not include that part of any contract or agreement:

   a. That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (1) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs, or specifications; or

      (2) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

   b. Under which the insured, if an architect, engineer or surveyor, assumes liability for "injury" or damage arising out of the insured's rendering or failing to render professional services, including those listed in a. above and supervisory, inspection or engineering services; or

   c. That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

9. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto;"

   b. While it is in or on an aircraft, watercraft or "auto;" or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

10. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation or persons or cargo.

       However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

       (1) Equipment designed primarily for:

          (a) Snow removal;

          (b) Road maintenance, but not construction or resurfacing;

          (c) Street cleaning;

       (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

       (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

11. "Occurrence" means:

    a. With respect to "bodily injury" to your employees arising out of and in the course of their employment by you, the accident or disease which causes the "bodily injury;"

    b. With respect to "bodily injury" other than that described in a. above, and to "property damage," an accident, including continuous or repeated exposure to substantially the same

CU 00 01 05 03

general harmful conditions;

c. With respect to "personal injury" and "advertising injury," commission of any of the offenses included within those definitions. All such "personal injury" or "advertising injury" sustained by any one person or organization will be considered one "occurrence".

12. "Offense" means any of the "offenses" included in the definition of "advertising injury" or "personal injury."

13. "Personal injury" means "injury," other than "bodily injury," arising out of one or more of the following "offenses":

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy;

Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the "injury" or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. "Professional liability" means legal liability for damages due to the rendering of or failure to render any professional service, in the practice of the insured's profession, by the insured or any person acting under the insured's direction, control or supervision.

This includes but is not limited to professions such as:

a. The practice of medicine, i.e., physician, surgeon, osteopath, chiropractor, anesthetist, dentist, psychiatrist, psychologist, nurse, paramedic, EMT, pharmacist, and similar professions.

b. The practice of law

c. The practice of accounting

d. Insurance sales or consulting

e. Real estate sales or management

f. Architects, engineers, surveyors, or draftsmen

g. Stockbrokers

h. Public Officials

16. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured provided such loss of use is caused by an "occurrence."

17. "Retained Limit" means the amount shown in the Declarations which, when no "underlying insurance" applies to the "injury", the Insured will retain as self insurance. This amount applies to each "occurrence."

18. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

19. "Ultimate Net Loss" means the amount actually paid or to be paid to settle or satisfy the Insured's legal obligation for damages by (1) final adjudication or (2) compromise with our consent. However, the "ultimate net loss" will not include the Insured's employees' salaries, or expenses the Insured incurs in investigation, adjustment or litigation.

20. "Underlying insurance" means:

a. The liability insurance coverages provided by the policies shown in the Schedule of Underlying Insurance in the Declarations, for the limits and periods indicated.

b. Any policies issued to replace those policies during the term of this policy that provide:

(1) at least the same policy limits; and

(2) the same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

CU 00 01 05 03

21. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Container (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. and b. above.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President



**PEKIN INSURANCE COMPANY**
(A STOCK COMPANY)
Home Office • 2505 Court Street • Pekin, Illinois 61558
**COMMERCIAL UMBRELLA DECLARATIONS**

UNIPLAN
8651
THIS IS TO CERTIFY THAT THIS
IS A TRUE COPY OF THE
POLICY AS OF

*~illegible signature~* 1/4/17

POLICY NO. CU30754-0

| NAME AND ADDRESS OF INSURED: | AGENT: |
|---|---|
| G BROTHERS LLC<br>3142 PARKWOOD LN<br>HAMILTON   OH 45011-0910 | MINOR INSURANCE AGENCY, LLC<br>8651 |

POLICY PERIOD:          FROM  09/21/15   TO   09/21/16
AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

FORM OF BUSINESS:    ☐ Individual    ☐ Partnership    ☐ Corporation    ☒ LLC    ☐ Other

## LIMITS OF INSURANCE

| EACH OCCURRENCE LIMIT | GENERAL AGGREGATE LIMIT | PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | SELF-INSURED RETENTION LIMIT |
|---|---|---|---|
| $4,000,000 | $4,000,000 | $4,000,000 | $10,000 |

## SCHEDULE OF UNDERLYING INSURANCE

| UNDERLYING INSURER POLICY PERIOD | COVERAGES UNDERLYING INSURANCE | LIMITS OF INSURANCE | | |
|---|---|---|---|---|
| PEKIN INSURANCE<br>09-24-15/16 | GENERAL LIABILITY | EACH OCCURRENCE LIMIT | GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT |
| | Commercial General Liability | $ 1,000,000 | $ 2,000,000 | $ 2,000,000 |
| | | Personal & Advertising Injury Limit | | |
| | | $ 1,000,000 | | |
| | BUSINESSOWNERS LIABILITY | EACH OCCURRENCE LIMIT INCLUDING PERSONAL INJURY & ADVERTISING INJURY | GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | PRODUCTS/COMPLETED OPERATIONSAGGREGATE LIMIT |
| | | $ | $ | $ |
| PEKIN INSURANCE<br>09-24-15/16 | AUTOMOBILE LIABILITY | EACH PERSON | EACH ACCIDENT | |
| | Bodily Injury Liability<br>Property Damage Liability | $ 1,000,000 | $ 1,000,000 | |
| | | | $ 1,000,000 | |
| | Bodily Injury and Property Damage Liability Combined | | $ | |
| | EMPLOYER'S LIABILITY | EACH ACCIDENT | DISEASE — EACH EMPLOYEE | DISEASE — POLICY LIMIT |
| | | $ | $ | $ |
| | GARAGE LIABILITY | EACH OCCURRENCE - AUTO | EACH ACCIDENT — OTHER THAN AUTO | AGGREGATE LIMIT — OTHER THAN AUTO |
| | | $ | $ | $ |

Underlying Insurance Includes the Following Coverages unless X'd as Excluded:

| | | | |
|---|---|---|---|
| AUTO LIABILITY - | EXCLUDED | | EXCLUDED |
| Business Auto Policy or Garage Policy - | ☐ | Hired Autos | ☐ |
| "Any Auto" Coverages Apply | | Non-Owned Autos | ☐ |

FLAT ANNUAL PREMIUM  $ ▮▮▮▮          TERRORISM RISK INSURANCE PREMIUM  ▮▮▮▮

Forms and Endorsements made part of this policy at time of issue:

CU00010503  CU00020108  IL00171198  IL09850108  CU00490314  IL10021013

PREMIUM PAYMENT PLAN: UNIPLAN
CU 00 02 01 08



# PEKIN INSURANCE COMPANY
## (A STOCK COMPANY)
### Home Office • 2505 Court Street • Pekin, Illinois 61558
## COMMERCIAL UMBRELLA DECLARATIONS

UNIPLAN
8651
THIS IS TO CERTIFY THAT THIS IS A TRUE COPY OF THE POLICY AS OF

POLICY NO.  CU30754-0

| NAME AND ADDRESS OF INSURED: | AGENT: |
|---|---|
| G BROTHERS LLC<br>3142 PARKWOOD LN<br>HAMILTON   OH 45011-0910 | MINOR INSURANCE AGENCY, LLC<br>8651 |

POLICY PERIOD:          FROM  09/21/15    TO    09/21/16
AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

FORM OF BUSINESS:     ☐ Individual      ☐ Partnership      ☐ Corporation     ☒ LLC      ☐ Other

## LIMITS OF INSURANCE

| EACH OCCURRENCE LIMIT | GENERAL AGGREGATE LIMIT | PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | SELF-INSURED RETENTION LIMIT |
|---|---|---|---|
| $4,000,000 | $4,000,000 | $4,000,000 | $10,000 |

## SCHEDULE OF UNDERLYING INSURANCE

| UNDERLYING INSURER POLICY PERIOD | COVERAGES UNDERLYING INSURANCE | LIMITS OF INSURANCE | | |
|---|---|---|---|---|
| PEKIN INSURANCE<br>09-24-15/16 | GENERAL LIABILITY | EACH OCCURRENCE LIMIT | GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT |
| | Commercial General Liability | $ 1,000,000 | $ 2,000,000 | $ 2,000,000 |
| | | Personal & Advertising Injury Limit | | |
| | | $ 1,000,000 | | |
| | BUSINESSOWNERS LIABILITY | EACH OCCURRENCE LIMIT INCLUDING PERSONAL INJURY & ADVERTISING INJURY | GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations) | PRODUCTS/COMPLETED OPERATIONSAGGREGATE LIMIT |
| | | $ | $ | $ |
| PEKIN INSURANCE<br>09-24-15/16 | AUTOMOBILE LIABILITY | EACH PERSON | EACH ACCIDENT | |
| | Bodily Injury Liability<br>Property Damage Liability | $ 1,000,000 | $ 1,000,000<br><br>$ 1,000,000 | |
| | Bodily Injury and Property Damage Liability Combined | | $ | |
| | EMPLOYER'S LIABILITY | EACH ACCIDENT | DISEASE — EACH EMPLOYEE | DISEASE — POLICY LIMIT |
| | | $ | $ | $ |
| | GARAGE LIABILITY | EACH OCCURRENCE - AUTO | EACH ACCIDENT — OTHER THAN AUTO | AGGREGATE LIMIT — OTHER THAN AUTO |
| | | $ | $ | $ |

Underlying Insurance Includes the Following Coverages unless X'd as Excluded:

| AUTO LIABILITY - | EXCLUDED | | EXCLUDED |
|---|---|---|---|
| Business Auto Policy or Garage Policy -<br>"Any Auto" Coverages Apply | ☐ | Hired Autos<br>Non-Owned Autos | ☐<br>☐ |

FLAT ANNUAL PREMIUM  $▮▮▮▮▮▮          TERRORISM RISK INSURANCE PREMIUM  $▮▮▮▮▮

Forms and Endorsements made part of this policy at time of issue:

CU00010503  CU00020108  IL00171198  IL09850108  CU00490314  IL10021013

PREMIUM PAYMENT PLAN: UNIPLAN
CU 00 02 01 08

**POLICY NUMBER:**  CU30754-0                                    **IL 09 85 01 08**

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN
RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK
INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR
CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

**Terrorism Premium (Certified Acts)  $  6.00**

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

Commercial Umbrella

Effective January 1, 2006, Terrorism Risk Insurance Program has terminated with respect to (therefore no longer applies to) Commercial Auto and Garage Coverages. No premium is charged for these coverages.

In accordance with the Terrorism Risk Insurance Act, we have offered you coverage for losses resulting from an act of terrorism, as defined in the act. You may accept or reject this offer.

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the        Declarations.

### A.    Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

### B.   Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a

Program Year (January 1 through December 31), The Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### C.  Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

IL 09 85 01 08                    Copyright, ISO Properties, Inc., 2007                    **Page 1 of 1**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98                    Copyright, Insurance Services Office, Inc., 1998                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMERCIAL UMBRELLA POLICY**

# FOLLOWING FORM ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA POLICY**

A. Paragraph **1., Insuring Agreement of Section I –Commercial Umbrella Liability Coverage**, is replaced by the following:

1. **Insuring Agreement**

    a. This insurance applies only to "injury" not excluded by "underlying insurance". The definitions, terms, conditions, limitations, exclusions and warranties of the "underlying insurance" in effect at the inception of this policy apply to this coverage unless they:

        (1) Conflict with the provisions of this insurance; or

        (2) Relate to any of the following: premium; our right to recover payment; "other insurance"; any duty to investigate or defend; the amount or limits of insurance; the payment of expenses; cancellation; or any renewal agreement.

    b. We will pay our part of the "ultimate net loss" which the insured legally must pay as damages because of "injury" caused by an "occurrence" to which this insurance applies.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments.**

(1) The "injury" must be caused by an "occurrence" within the "coverage territory". "Bodily injury" and "property damage" must occur during the policy period. "Personal injury" and "advertising injury" must be caused by an "occurrence" during the policy period.

(2) Our part is that part of the "ultimate net loss" that exceeds:

    (a) The limits of the "underlying insurance" and any "other insurance" collectible by the insured; or

    (b) The "retained limit" shown in the Declarations if no "underlying insurance" applies to the "injury".

However, the amount we will pay for "ultimate net loss" is limited as described in **Section III – Limits Of Insurance**.

c. If the aggregate limit of insurance of any policy of "underlying insurance" is reduced or exhausted solely because of losses paid that would be covered under this policy, then this insurance will:

(1) In the case of reduction, continue as excess over the reduced underlying insurance.

**(2)** In the case of exhaustion, continue as "underlying insurance".

If the aggregate limit of any "underlying insurance" is reduced or exhausted due to losses that are not covered under this policy, this insurance will apply as if such payments had not been made.

This extension is subject to this policy's limit of insurance provisions and to the terms, exclusions and conditions of the "underlying insurance".

The "retained limit" does not apply to this extension.

**d.** We have the right to participate in the defense of any claim or "suit" seeking damages to which this insurance applies. We have a duty to defend such claims or "suits" when no "underlying insurance" applies, or when the aggregate limit of the "underlying insurance" has been exhausted solely because of losses paid.

If we provide a defense, we may investigate and settle any claim or "suit" at our discretion.

Both our right and our duty to defend any existing or future claims or "suits" end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

**B.** Paragraph **2. Exclusions** of **Section I – Commercial Umbrella Liability Coverage**, is replaced by the following:

**2. Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this policy. In addition, the exclusions applicable to any "underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this policy.

This insurance does not apply to:

**a.** Any obligation of the insured or any of the insured's insurers under any workers compensation, unemployment compensation, or disability benefits law, or any similar law.

**b.** Any obligation imposed under any first party personal injury, automobile no-fault, uninsured motorists, underinsured motorists law or any similar law.

**c.** "Bodily injury" to:

**(1)** An employee of the insured arising out of and in the course of employment by the insured; or

**(2)** The spouse, child, parent, brother or sister of that employee as a consequence of **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

This exclusion does not apply to liability:

**(1)** Assumed by the insured under an "insured contract"; or

**(2)** Covered by "underlying insurance".

**d.** Any alleged or actual discrimination by an insured against any person.

**e.** **(1)** "Injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, you;

**(b)** At or from any premises, site or location which is or was at any time used by you or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

**(i)** if the pollutants are brought on or to the premises, site or location in connection with such operations; or

**(ii)** if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

**(2)** Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Subparagraphs **(a)** and **(d)(i)** of Paragraph **(1)** of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**f.** Any damages because of "professional liability".

**g.** "Bodily injury" or "property damage" resulting from the ownership, maintenance, operation, use, "loading or unloading", or entrustment to others of:

**(1)** Aircraft owned by any insured, or chartered without a crew by or on behalf of any insured; or

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Watercraft over 50 feet in length. This insurance will apply to watercraft 50 feet or less in length only if insured under the "underlying insurance". The coverage afforded by this insurance will be no broader than that of the "underlying insurance".

**h.** "Property damage" to:

**(1)** "Your product" arising out of the product or any part of it.

**(2)** "Your work" arising out of the work, or any part of it, except insofar as coverage applies in the "underlying insurance". The coverage afforded under this insurance will be no broader than that of the "underlying insurance".

**i.** Any liability, including fiduciary liability, resulting from any employee benefit plans or programs, the Employee Retirement Income Security Act of 1974 (ERISA), the Pension Reform Act of 1974 or any amendments to the plans, programs or laws.

**j.** "Bodily injury", "personal injury" or "advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or emissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury", "personal injury" or "advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)**, or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**k.** Any claim for damages brought by or on behalf of you or any additional Named Insured.

**l.** Damage by fire to premises rented to you.

**m.** Any obligation to pay expenses under any medical payments coverage.

**D. Section V – Definitions**, is revised by the following:

**1.** Definition **15.** "Professional liability" is replaced by the following:

15. "Professional liability" means legal liability for damages due to the rendering of or failure to render any professional service, in the practice of the insured's profession, by the insured or any person acting under the insured's direction, control or supervision. This includes but is not limited to:

a. Legal, accounting or advertising services;

b. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings or specifications;

c. Inspection, supervision, quality control, architectural or engineering activities done by you or for you on a project on which you serve as construction manager;

d. Engineering services, including related supervisory or inspection services;

e. Medical, surgical, dental, X-ray or nursing services treatment, advice or instruction;

f. Any health or therapeutic service treatment, advice or instruction;

g. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;

h. Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardiovascular fitness, bodybuilding or physical training programs;

i. Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

j. Body piercing services;

k. Services in the practice of pharmacy;

l. Law enforcement or firefighting services; and

m. Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

2. The following definitions are added:

"Other insurance" means insurance which is available to any insured and covers "injury" or damage to which this insurance applies, other than:

a. "Underlying insurance"; or

b. Insurance written specifically to be excess over this policy.

"Underlying insurer" means any insurer who provides any policy of liability insurance shown in the Schedule of Underlying Insurance in the Declarations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

GARAGE COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL UMBRELLA POLICY
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
EMPLOYEE BENEFITS ADMINISTRATION LIABILITY ERRORS AND OMISSIONS COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY INSURANCE COVERAGE PART

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

    **1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    **2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

        **a.** Nonpayment of premium;

        **b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

        **c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

        **d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

        **e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

        **f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

        **g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

    **3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

    **4.** We will mail the notice of cancellation at least:

        **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

        **b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

**5.** The notice of cancellation will:

  **a.** State the effective date of cancellation. The policy period will end on that date.

  **b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

**6.** Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

**7.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

**2.** We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

**3.** Proof of mailing will be sufficient period of notice.

**C.  Common Policy Conditions**

**1.** Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  **a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

  **b.** 30 days before the effective date, if we cancel for any other reason.

Includes copyrighted material of ISO Properties, Inc., 2005, with its permission.



**Frank LaRose**
*Ohio Secretary of State*

10/16/2024

G BROTHERS, INC
3142 PARKWOOD LN.
HAMILTON OH, 45011

Re: G BROTHERS, INC
Entity Number: 2128968

Dear Business Owner or Representative:

The business entity referenced above was registered to do business in Ohio. A letter was sent explaining the process to file a "Statutory Agent Update" within 30 days of receipt of the letter, however, this filing was not submitted. Failure to file this form has resulted in the cancellation of the business entity and this entity may no longer transact business in Ohio.

To reinstate this entity, please go to https://OhioBusinessCentral.gov and select "Submit a Business Filing" then "Update an Existing Business Entity." Enter the business name or entity number listed above and confirm you have selected the correct entity. Then select "Reinstatement" (Form 525A) from the options listed below the business entity details section. The filing fee is $25.00 and you may use a credit or debit card to pay online. If you cannot submit online, you may obtain a paper form at https://OhioBusinessCentral.gov and mail the form and a check to the PO Box address listed on the top of the form.

If you have already submitted this filing, please disregard this notice. If you have questions regarding this notice, please contact our customer service department at 877-SOS-FILE (877-767-3453) or email us at business@OhioSoS.gov.

Yours in service,

Frank LaRose
Ohio Secretary of State

# Exhibit E



# Cancellation

Due to failure to maintain a statutory agent, it is hereby certified by the Secretary of State of Ohio that the business shall be cancelled.

**Entity Number:** 2128968

**Entity Name:** G BROTHERS, INC



**IN WITNESS HEREOF,** I have hereunto subscribed my name and caused the seal of the Secretary of State of Ohio to be hereto affixed at Columbus, Ohio, this 16th day of October , in the year of our Lord, A.D. 2024.

By the Secretary of State:

Frank LaRose
51st Ohio Secretary of State

ENTERED
DEC 03 2021
D133570782

date; **12/01/2021**
code: **GJCC**
judge: **141**

**THE STATE OF OHIO, HAMILTON COUNTY**
**COURT OF COMMON PLEAS**

*Judge Robert P. Ruehlman*

*12/2/2021*

Judge: **ROBERT P RUEHLMAN**

NO: **B 1601526**

**STATE OF OHIO**
**VS.**
**RYAN KENNEDY**

**JUDGMENT ENTRY: SENTENCE: TO**
**COMMUNITY CONTROL**

Defendant was present in open Court with Counsel **KORY A JACKSON** on the **1st day of December 2021** for sentence.

Tire court informed the defendant that, as the defendant well knew, the defendant had pleaded guilty, and had been found guilty of the offense(s) of:

**count 2: AGGRAVATED VEHICULAR HOMICIDE, 2903-06A2A/ORCN, F2**

**count 4: AGGRAVATED VEHICULAR HOMICIDE, 2903-06A2A/ORCN, F2**

**count 6: VEHICULAR ASSAULT, 2903-08A2B/ORCN, F4**

**count 1: AGGRAVATED VEHICULAR HOMICIDE, 2903-06A1A/ORCN, F2, DISMISSAL**

**count 3: AGGRAVATED VEHICULAR HOMICIDE, 2903-06A1A/ORCN, F2, DISMISSAL**

**count 5: AGGRAVATED VEHICULAR ASSAULT, 2903-08A1A/ORCN, F3, DISMISSAL**

The Court held a sentencing hearing during which the Court afforded defendant's counsel an opportunity to speak on behalf of the defendant. The Court addressed the defendant personally and asked if the defendant wished to make a statement in the defendant's behalf, or present any information in mitigation of sentence. The State's representative also had the opportunity to address the Court.

After considering the risk that defendant will commit another offense, the need for protecting the public therefrom, the nature of circumstances of the offense(s), and the defendant's history, character and condition, the Court hereby orders the defendant placed on Community Control on condition that defendant comply with the general conditions of Community Control established by this Court, and further:

**count 2: COMMUNITY CONTROL: 3 Yrs**
**DRIVER'S LICENSE SUSPENSION: 3 Yrs COMMENCING DECEMBER 1, 2021**

**count 4: COMMUNITY7 CONTROL: 3 Yrs**

Defendant was notified of the right to appeal as required by Crim. R 32(B) and R.C. 2953.08 and the penalties for failure to comply with Community Control requirements.

*WPODR026*                                      *WF146948*                        Exhibit F

**ENTERED**
**DEC 03 2021**

D133570782

**THE STATE OF OHIO, HAMILTON COUNTY**
**COURT OF COMMON PLEAS**

date: **12/01/2021**
code: **GJCC**
judge: **141**

*Judge Robert P. Ruehlman*

*12/2/2021*

Judge: **ROBERT P RUEHLMAN**

NO: **B 1601526**

**STATE OF OHIO**
**VS.**
**RYAN KENNEDY**

**JUDGMENT ENTRY: SENTENCE: TO COMMUNITY CONTROL**

**count 6: COMMUNITY CONTROL: 3 Yrs**

**THE DEFENDANT IS REFERRED FOR DRUG SCREENINGS.**

**THE DEFENDANT IS TO PERFORM 120 HOURS OF COMMUNITY SERVICE.**

**THE DEFENDANT IS GIVEN A THREE (3) YEARS DRIVING SUSPENSION.**

**DEFENDANT IS TO MAINTAIN FULL TIME EMPLOYMENT**

**THE DEFENDANT IS TO PAY COURT COSTS AND PROBATION FEES.**

**REMIT FINES AND PUBLIC DEFENDER ATTORNEY FEES.**

**THE COURT ALSO ADVISED THE DEFENDANT THAT IF HE / SHE VIOLATES THE TERMS AND CONDITIONS OF COMMUNITY CONTROL, THE COURT WOULD IMPOSE A TERM OF EIGHTEEN (18) MONTHS AS TO COUNT #6 AND EIGHT (8) YEARS AS TO COUNTS #2 AND #4 TO BE SERVED CONCURRENTLY WITH EACH OTHER FOR A TOTAL OF EIGHT (8) YEARS IN THE DEPARTMENT OF CORRECTIONS.**

**FURTHER, IN ACCORDANCE WITH RC 2901.07, THE DEFENDANT IS REQUIRED TO SUBMIT A DNA SPECIMEN WHICH WILL BE COLLECTED AT THE PRISON, JAIL, CORRECTIONAL OR DETENTION FACILITY TO WHICH THE DEFENDANT HAS BEEN SENTENCED. IF THE SENTENCE INCLUDES ANY PERIOD OF PROBATION OR COMMUNITY CONTROL, OR IF AT ANY TIME THE DEFENDANT IS ON PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, THE DEFENDANT WILL BE REQUIRED, AS A CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL, TO SUBMIT A DNA SPECIMEN TO THE PROBATION DEPARTMENT, ADULT PAROLE AUTHORITY, OR OTHER AUTHORITY AS DESIGNATED BY LAW. IF THE DEFENDANT FAILS OR REFUSES TO SUBMIT TO THE REQUIRED DNA SPECIMEN COLLECTION PROCEDURE, THE DEFENDANT WILL BE**

Defendant was notified of the right to appeal as required by Crim. R 32(B) and R.C. 2953.08 and the penalties for failure to comply with Community Control requirements.

*WPODR026*                    *WF146948*                    *Page 2 of 3*

ENTERED
DEC 03 2021

D133570782

**THE STATE OF OHIO, HAMILTON COUNTY**
**COURT OF COMMON PLEAS**

date: **12/01/2021**
code: **GJCC**
judge: **141**

*Judge Robert P. Ruehlman*

_12/2/2021_

Judge: **ROBERT P RUEHLMAN**

NO: **B 1601526**

**STATE OF OHIO**
**VS.**
**RYAN KENNEDY**

**JUDGMENT ENTRY: SENTENCE: TO**
**COMMUNITY CONTROL**

**SUBJECT TO ARREST AND PUNISHMENT FOR VIOLATING THIS CONDITION OF PROBATION, COMMUNITY CONTROL, PAROLE, TRANSITIONAL CONTROL OR POST-RELEASE CONTROL.**

Defendant was notified of the right to appeal as required by Crim. R 32(B) and R.C. 2953.08 and the penalties for failure to comply with Community Control requirements.

*WPODR026*         *WF146948*         *Page 3 of 3*



Beyond the expected.™

August 27, 2018

G BROTHERS INC
ATTENTION: LUIS GONZALEZ
3142 PARKWOOD LANE
HAMILTON, OH 45011

LUIS GONZALEZ
4612 WYNDTREE DRIVE
APARTMENT 18
WEST CHESTER, OH 45069

BRYANT RIVERA
5416 LOFINA COURT
DAYTON, OH 45424

Pursuant to Ohio Code 3999.21, we are required to advise you:

***"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."***

BRYANT RIVERA
7626 SHAWNEE LANE
APARTMENT 102
WEST CHESTER, OH 45069

BRYANT RIVERA
1707 EAST 26TH AVE
UNITA
TAMPA, FL 33605

***SENT CERTIFIED – RETURN RECEIPT & US MAIL***

*Sent Certified Mail*
*CA09226 08/27/2018*

Claim Number: Z69-542 – G Brother Inc.
Date of Loss: December 6, 2015
Policy No.: 00P706040

Mr. Gonzalez and Mr. Rivera:

As you should be aware, Pekin Insurance Company (Pekin) is providing G. Brothers Inc. and Bryant Rivera a defense in the lawsuits filed by the Estate of Destinie Stevens, Jamico Aaron and Melody Aaron. These involve a fatality and serious injury allegations resulting from the December 6, 2015 accident involving a G Brothers truck driven by Mr. Rivera.

Currently your defense is being handled by Attorney Josh L. Schoenberger and the law firm of Williams & Schoenberger Co., L.L.C. Pekin is paying for that defense. With your cooperation, if there were to be an award of damage against you, to the extent there is coverage otherwise, Pekin would also be responsible to pay that award.

However, defense counsel has advised, as they work to comply with discovery and otherwise prepare for your defense, that you have not been cooperating with him or his firm by failing to accept or return phone calls, failing to accept correspondence and/or refusing to speak in person.

Your failure to cooperate with the defense of this suit is jeopardizing our ability to defend the matter. We could face sanctions, up to having a default judgment entered against you.

Exhibit G

August 27, 2018
Page 2

Please note the following in your policy of insurance:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS**

**\* \* \***

**2. Additionally, you and the other involved insureds must:**

**a. Cooperate with us in the investigation or settlement or defense of any claim or suit...**

Your failure to cooperate in this matter could be considered a violation of the insurance contract and if the contract is violated, Pekin Insurance Company may be put in a position of withdrawing defense and coverage from G Brothers, Inc. and/Bryant Rivera. If that occurs, you would be personally responsible for defending yourself in the litigation, and also for payment of any damage award entered against you.

Accordingly, we would strongly suggest it is in your interest to cooperate with us in your defense.  Please call Mr. Schoenberger immediately at (614) 224-0531.

*Nancy S. Scott*

NANCY S. SCOTT, J.D.
Senior Litigation Specialist
CLAIM DEPARTMENT
Phone:  800-447-0122, extension 3227
Cell:  309-370-7852
Fax:  309-346-9466 *always reference the claim number*
Nscott@pekininsurance.com
ca
cc: Josh L. Schoenberger (by email)



Beyond the expected.™

2505 Court Street • Pekin, Illinois 61558
(309)346-1161 • www.pekininsurance.com

March 5, 2024

G BROTHERS INC
3142 PARKWOOD LN
HAMILTON OH 45011

Pursuant to Ohio Code 3999.21, we are required to advise you:

*"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."*

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe ▌

## RESERVATION OF RIGHTS

Pekin Insurance Company has reviewed your claim related to the above captioned Complaint filed in Hamilton County, Ohio, case number A2400293. The Complaint alleges Bryant Rivera was operating a box truck owned by Penski and leased by ASA Logistics during the course of his employment at G Brothers Inc. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

Pekin Insurance insured G Brothers Inc. under Commercial Auto policy, policy number P706040, for the policy period of November 6, 2015, through January 20, 2016. The policy provides Bodily Injury Liability limits of $1,000,000 per person and $1,000,000 per accident.

Pekin Insurance hereby advises you that it accepts the defense of the claim pursuant to a reservation of all rights and defenses available pursuant to the terms and conditions of the policy and specifically reserves the right to deny full or partial indemnification, as stated herein, should judgment be entered against you on a basis

1

Exhibit H



for which the policy does not provide coverage. Pekin further advises that its investigation into this matter is early and ongoing, and that additional reasons for full or partial denial of the claim may arise. Pekin reserves the right to assert such additional grounds for denial should facts supporting the same be developed or become available.

**BUSINESS AUTO POLICY**

The insurance policy at issue provides, in part:[1]

### PART IV – LIABILITY INSURANCE

### A. WE WILL PAY

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. **Our** payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

### D. WHO IS AN INSURED

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

   a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.



   b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

   c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

\*   \*   \*

The insurance policy at issue provides the following relevant words and phrases with special meaning:

## PART I – WORDS AND PHRASES WITH SPECIAL MEANING

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

A. "**You**" and "**your**" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

B. "**We**", "**us**" and "**our**" mean the company providing the insurance.

C. "**Accident**" includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the insured neither expected nor intended.

D. "**Auto**" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment**.

E. "**Bodily injury**" means bodily injury, sickness or disease, including death resulting from any of these.

F. "**Insured**" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable

3



insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made, or suit is brought.

**G.** "Loss" means direct and accidental damage or loss.

\*   \*   \*

**I.** "**Property damage**" means damage to or loss of use of tangible property.

The following exclusion for punitive damages applies pursuant to endorsement 1562 (05-07):

**EXCLUSION PUNITIVE DAMAGES**

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

**1.** The following exclusion is added to Paragraph **C., WE WILL NOT COVER – EXCLUSIONS of PART IV - LIABILITY INSURANCE**:

This insurance does not apply to:

Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages.

Discussion of the allegations against you is not intended as an admission or suggestion that the Plaintiff's allegations are true but is only made for the purpose of analyzing insurance coverage as provided by your policy. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring

4



Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

It is of note that the Complaint alleges punitive damages. The policy specifically excludes punitive damages as indicated in endorsement 1562 (05-07) referenced above. Under no circumstance will Pekin pay a judgment or settlement for punitive damages.

The degree of indemnification available under the policy will ultimately depend on the nature of the damages and theories proven during the case, if any. To the extent a judgment is awarded, or settlement is reached for both covered and non-covered damages, Pekin Insurance Company will only indemnify you to the extent of the covered damages included in the judgment or settlement. Under no circumstances will Pekin Insurance Company provide indemnification for a judgment or settlement or portion thereof consisting of non-covered damages. Pekin Insurance Company will, however, defend all pending claims and allegations so long as any potentially covered claim or allegation remains pending.

For the reasons set forth herein, Pekin Insurance Company must respectfully advise the insured that it reserves all its rights and defenses under the policy. The foregoing reference to specific defenses is not intended to limit or waive any other defenses, which are now or hereinafter may be made available to Pekin Insurance Company, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin Insurance Company policy issued to the insured. Pekin Insurance Company expressly reserves all rights and defenses under its aforesaid policy of insurance. Pekin Insurance Company reserves all rights to enforce the terms of the insurance policy, whether such grounds are currently known or detailed herein. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

Pekin Insurance will provide you with a defense of the above listed lawsuit under Business Auto Insurance Policy P706040 pursuant to a reservation of rights and defenses available pursuant to the terms and conditions of the policy. We have asked Attorney Josh Schoenberger of Williams & Schoenberger, 338 South High Street, 2nd Floor, Columbus, Ohio 43215; phone 614-224-0531 to defend you.

It will not be necessary for you to do anything further until you hear from either the attorneys or our office. However, in order for us to provide you with a proper defense, it is necessary that you cooperate with us, and the attorneys hired to represent you in accordance with the terms of your insurance contract.



We suggest that you do not discuss this lawsuit with anyone other than a representative of our company or an attorney representing your interests. If you receive any additional information or correspondence regarding this lawsuit, please forward it to us or the attorney assigned to represent you.

The damages in the lawsuit may result in an award to the Plaintiff against you that exceeds the policy limit. You may select counsel of your own choosing and at your own expense to participate with the attorneys noted above in your defense. This notice should not be interpreted by you to require that you hire such attorneys, but only that you have a right to do so.

If you expect to be out of town for any extended time, please let us know. In the meantime, if you have any questions, please to contact us.


*Jamie Conard*

JAMIE CONARD, CPCU, AINS- Litigation Specialist
CLAIM DEPARTMENT
Phone: 740-323-3037
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
jc

6



Beyond the expected.™

2505 Court Street • Pekin, Illinois 61558
(309) 346-1161 • www.pekininsurance.com

March 5, 2024

BRYANT RIVERA
5416 LOFINO COURT
DAYTON OH 45424

> Pursuant to Ohio Code 3999.21, we are required to advise you:
>
> **"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."**

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe I

## RESERVATION OF RIGHTS

Pekin Insurance Company has reviewed your claim related to the above captioned Complaint filed in Hamilton County, Ohio, case number A2400293. The Complaint alleges Bryant Rivera was operating a box truck owned by Penski and leased by ASA Logistics during the course of his employment at G Brothers Inc. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

Pekin Insurance insured G Brothers Inc. under Commercial Auto policy, policy number P706040, for the policy period of November 6, 2015, through January 20, 2016. The policy provides Bodily Injury Liability limits of $1,000,000 per person and $1,000,000 per accident.

Pekin Insurance hereby advises you that it accepts the defense of the claim pursuant to a reservation of all rights and defenses available pursuant to the terms and conditions of the policy and specifically reserves the right to deny full or partial indemnification, as stated herein, should judgment be entered against you on a basis for which the policy does not provide coverage. Pekin further advises that its investigation into this matter is early and ongoing, and that additional reasons for

1



full or partial denial of the claim may arise. Pekin reserves the right to assert such additional grounds for denial should facts supporting the same be developed or become available.

## BUSINESS AUTO POLICY

The insurance policy at issue provides, in part:[1]

### PART IV – LIABILITY INSURANCE

### A. WE WILL PAY

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. **Our** payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

### D. WHO IS AN INSURED

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

   a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

2



b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

\*   \*   \*

The insurance policy at issue provides the following relevant words and phrases with special meaning:

## PART I – WORDS AND PHRASES WITH SPECIAL MEANING

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

A. "**You**" and "**your**" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

B. "**We**", "**us**" and "**our**" mean the company providing the insurance.

C. "**Accident**" includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the insured neither expected nor intended.

D. "**Auto**" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment**.

E. "**Bodily injury**" means bodily injury, sickness or disease, including death resulting from any of these.

F. "**Insured**" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable

3



insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made, or suit is brought.

G. "Loss" means direct and accidental damage or loss.

\* \* \*

I. **"Property damage"** means damage to or loss of use of tangible property.

The following exclusion for punitive damages applies pursuant to endorsement 1562 (05-07):

## EXCLUSION PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

### YOUR AUTO POLICY

1. The following exclusion is added to Paragraph **C., WE WILL NOT COVER – EXCLUSIONS of PART IV - LIABILITY INSURANCE**:

   This insurance does not apply to:

   Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages.

Discussion of the allegations against you is not intended as an admission or suggestion that the Plaintiff's allegations are true but is only made for the purpose of analyzing insurance coverage as provided by your policy. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring

4



Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

It is of note that the Complaint alleges punitive damages. The policy specifically excludes punitive damages as indicated in endorsement 1562 (05-07) referenced above. Under no circumstance will Pekin pay a judgment or settlement for punitive damages.

The degree of indemnification available under the policy will ultimately depend on the nature of the damages and theories proven during the case, if any. To the extent a judgment is awarded, or settlement is reached for both covered and non-covered damages, Pekin Insurance Company will only indemnify you to the extent of the covered damages included in the judgment or settlement. Under no circumstances will Pekin Insurance Company provide indemnification for a judgment or settlement or portion thereof consisting of non-covered damages. Pekin Insurance Company will, however, defend all pending claims and allegations so long as any potentially covered claim or allegation remains pending.

For the reasons set forth herein, Pekin Insurance Company must respectfully advise the insured that it reserves all its rights and defenses under the policy. The foregoing reference to specific defenses is not intended to limit or waive any other defenses, which are now or hereinafter may be made available to Pekin Insurance Company, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin Insurance Company policy issued to the insured. Pekin Insurance Company expressly reserves all rights and defenses under its aforesaid policy of insurance. Pekin Insurance Company reserves all rights to enforce the terms of the insurance policy, whether such grounds are currently known or detailed herein. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

Pekin Insurance will provide you with a defense of the above listed lawsuit under Business Auto Insurance Policy P706040 pursuant to a reservation of rights and defenses available pursuant to the terms and conditions of the policy. We have asked Attorney Josh Schoenberger of Williams & Schoenberger, 338 South High Street, 2nd Floor, Columbus, Ohio 43215; phone 614-224-0531 to defend you.

It will not be necessary for you to do anything further until you hear from either the attorneys or our office. However, in order for us to provide you with a proper defense, it is necessary that you cooperate with us, and the attorneys hired to represent you in accordance with the terms of your insurance contract.

5



We suggest that you do not discuss this lawsuit with anyone other than a representative of our company or an attorney representing your interests. If you receive any additional information or correspondence regarding this lawsuit, please forward it to us or the attorney assigned to represent you.

The damages in the lawsuit may result in an award to the Plaintiff against you that exceeds the policy limit. You may select counsel of your own choosing and at your own expense to participate with the attorneys noted above in your defense. This notice should not be interpreted by you to require that you hire such attorneys, but only that you have a right to do so.

If you expect to be out of town for any extended time, please let us know. In the meantime, if you have any questions, please to contact us.


*Jamie Conard*

JAMIE CONARD, CPCU, AINS- Litigation Specialist
CLAIM DEPARTMENT
Phone: 740-323-3037
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
jc

6



CERTIFIED MAIL®

PEORIA IL 616

2024 PM 2 T

9314 8699 0430 0118 1722 56

RETURN RECEIPT (ELECTRONIC)

APR 0 2 2024

BRYANT RIVERA
5416 LOTING CT
DAYTON, OH 45424-4107

NIXIE          430    SE   1319

RETURN TO SEND
NOT DELIVERABLE AS
UNABLE TO FORW

93041205924003            FWD    BC:  61558001        *25
Z 69-542                          45424          61558000001

||ₗₗₗ₁|||||ₗₗₗ|ₗₗₗₗ|ₗₗₗ₁ₗ|ₗₗₗₗ|ₗₗₗ||₁₁|ₗₗ|₁|ₗₗₗₗ||₁ₗₗₗₗₗ|

**G BROTHERS INC**
3142 PARKWOOD LN
HAMILTON, OH 45011-0910

9314 8699 0430 0118 1721 74

4.40

0.00

2.32

0.00

0.64

**PEKIN INSURANCE COMPANY**
2505 COURT ST
PEKIN , IL 61558

7.36

**G BROTHERS INC**
3142 PARKWOOD LN
HAMILTON, OH 45011-0910

**PEKIN INSURANCE COMPANY**
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

**PEKIN INSURANCE COMPANY**
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0118 1721 74
RETURN RECEIPT (ELECTRONIC)

# Please Discard

9314 8699 0430 0118 1722 66

BRYANT RIVERA
5416 LOFINO CT
DAYTON, OH 45424-4107

4.40

0.00

2.32

0.00

0.64

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

7.36

BRYANT RIVERA
5416 LOFINO CT
DAYTON, OH 45424-4107

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0118 1722 66
RETURN RECEIPT (ELECTRONIC)

# Please Discard



**PEKIN**
*IHSURA MCE*
*Beyond the expected.*

2505 Court Street • Pekin, Illinois 61558
(309) 346-1161 • www.pekinin5urance.com

# COPY

April 3, 2024

G BROTHERS INC
3142 PARKWOOD LN
HAMILTON OH 45011

Pursuant to Ohio Code 3999,21, we are required to advise you:

*"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a daim containing a false or deceptive statement is guilty of insurance fraud."*

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe ▋

## RESERVATION OF RIGHTS

Pekin Insurance Company has reviewed your claim related to the above captioned Complaint filed in Hamilton County, Ohio, case number A2400293. The Complaint alleges Bryant Rivera was operating a box truck owned by Penski and leased by ASA Logistics during the course of his employment at G Brothers Inc. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

Pekin Insurance insured G Brothers Inc. under Commercial Auto policy, policy number P706040, for the policy period of November 6, 2015, through January 20, 2016. The policy provides Bodily Injury Liability limits of $1,000,000 per person and $1,000,000 per accident.

Pekin Insurance hereby advises you that it accepts the defense of the claim pursuant to a reservation of all rights and defenses available pursuant to the terms and conditions of the policy and specifically reserves the right to deny full or partial indemnification, as stated herein, should judgment be entered against you on a basis

1

Exhibit I



for which the policy does not provide coverage. Pekin further advises that its investigation into this matter is early and ongoing, and that additional reasons for full or partial denial of the claim may arise. Pekin reserves the right to assert such additional grounds for denial should facts supporting the same be developed or become available.

**BUSINESS AUTO POLICY**

The insurance policy at issue provides, in part:[1]

### PART IV – LIABILITY INSURANCE

### A. WE WILL PAY

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. **Our** payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

### D. WHO IS AN INSURED

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire or borrow except:

   a. The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

2



   b. Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing or parking **autos** unless that business is **yours.**

   c. Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

3. Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

\* \* \*

The insurance policy at issue provides the following relevant words and phrases with special meaning:

## PART I – WORDS AND PHRASES WITH SPECIAL MEANING

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

A. "You" and "**your**" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

B. "We", "**us**" and "**our**" mean the company providing the insurance.

C. "Accident" includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the insured neither expected nor intended.

D. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment**.

E. "Bodily injury" means bodily injury, sickness or disease, including death resulting from any of these.

F. "Insured" means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable

3



insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made, or suit is brought.

**G.** "Loss" means direct and accidental damage or loss.

\* \* \*

**I.** "**Property damage**" means damage to or loss of use of tangible property.

The following exclusion for punitive damages applies pursuant to endorsement 1562 (05-07):

**EXCLUSION PUNITIVE DAMAGES**

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

**1.** The following exclusion is added to Paragraph **C., WE WILL NOT COVER – EXCLUSIONS of PART IV - LIABILITY INSURANCE**:

This insurance does not apply to:

Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages.

Discussion of the allegations against you is not intended as an admission or suggestion that the Plaintiff's allegations are true but is only made for the purpose of analyzing insurance coverage as provided by your policy. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring

4



Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

It is of note that the Complaint alleges punitive damages. The policy specifically excludes punitive damages as indicated in endorsement 1562 (05-07) referenced above. Under no circumstance will Pekin pay a judgment or settlement for punitive damages.

The degree of indemnification available under the policy will ultimately depend on the nature of the damages and theories proven during the case, if any. To the extent a judgment is awarded, or settlement is reached for both covered and non-covered damages, Pekin Insurance Company will only indemnify you to the extent of the covered damages included in the judgment or settlement. Under no circumstances will Pekin Insurance Company provide indemnification for a judgment or settlement or portion thereof consisting of non-covered damages. Pekin Insurance Company will, however, defend all pending claims and allegations so long as any potentially covered claim or allegation remains pending.

For the reasons set forth herein, Pekin Insurance Company must respectfully advise the insured that it reserves all its rights and defenses under the policy. The foregoing reference to specific defenses is not intended to limit or waive any other defenses, which are now or hereinafter may be made available to Pekin Insurance Company, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin Insurance Company policy issued to the insured. Pekin Insurance Company expressly reserves all rights and defenses under its aforesaid policy of insurance. Pekin Insurance Company reserves all rights to enforce the terms of the insurance policy, whether such grounds are currently known or detailed herein. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

Pekin Insurance will provide you with a defense of the above listed lawsuit under Business Auto Insurance Policy P706040 pursuant to a reservation of rights and defenses available pursuant to the terms and conditions of the policy. We have asked Attorney Jon Saxton of Rendigs, Fry, Kiely & Dennis, 600 Vine St #2650, Cincinnati, OH 45202, 513-381-9200 to defend you.

It will not be necessary for you to do anything further until you hear from either the attorneys or our office. However, in order for us to provide you with a proper defense, it is necessary that you cooperate with us, and the attorneys hired to represent you in accordance with the terms of your insurance contract.

5



We suggest that you do not discuss this lawsuit with anyone other than a representative of our company or an attorney representing your interests. If you receive any additional information or correspondence regarding this lawsuit, please forward it to us or the attorney assigned to represent you.

The damages in the lawsuit may result in an award to the Plaintiff against you that exceeds the policy limit. You may select counsel of your own choosing and at your own expense to participate with the attorneys noted above in your defense. This notice should not be interpreted by you to require that you hire such attorneys, but only that you have a right to do so.

If you expect to be out of town for any extended time, please let us know. In the meantime, if you have any questions, please to contact us.


*Jamie Conard*

JAMIE CONARD, CPCU, AINS- Litigation Specialist
CLAIM DEPARTMENT
Phone: 740-323-3037
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
jc

6





9314 8699 0430 0141 7947 25
RETURN RECEIPT (ELECTRONIC)

G BROTHERS INC
LUIS GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO, FL 32832-2818

NIXIE     33913  11/29/

RETURN TO SENDE
NOT DELIVERABLE AS A
UNCLAIMED
SORT IN MANUAL ONLY NO
BC:  5699899995

56998>9999



sg, www.Rendigs.com

Q Rendigs, Fry, Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Jonathan P. Saxton,
AuthorTitle
JSaxton®) rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

April 10, 2024

G. Brothers, Inc.
3142 Parkwood Lane
Hamilton, OH  45011

Re:     Bryant Rivera; G. Brothers, Inc. ads. Jamico Aaron; Melody Aaron (a minor); Estate of
        Destinie Stevens; ASA Logistics, LLC; Ryan Kennedy; Penske Truck Leasing Co., LPA
        Hamilton County Court of Common Pleas Case No.  A2400293
        Claim No.  Z69542
        RFKD Ref. 212-376

To Whom It May Concern:

This office has been retained by the insurance company for G. Brothers, Inc., Pekin Insurance, to
defend G. Brothers, Inc. and Bryant Rivera in a lawsuit which has been filed in the Hamilton County
Common Pleas Court by Jamico Aaron, Melody Aaron, and the Estate of Destinie Stevens.

This is the re-filing of the original lawsuit filed after the December 6, 2015 accident.

I will be the attorney representing G. Brothers, Inc. and Bryant Rivera.  Attorney Edward McHale will
assist me.

Although Pekin Insurance has retained our firm, G. Brothers, Inc. and Bryant Rivera are our clients
in this case.  Our ethics rules require that we enclose a document which more fully explains this.  If
you have any questions about the scope of our representation, please ask.

Our first step will be to file an Answer responding to Plaintiffs' allegations in the Complaint.  We have
the Court filings from the original lawsuit, and that will assist us in responding to this new Complaint.

We will need to make contact with someone from G. Brothers. Please call me upon receipt of this
letter.  When we speak, you can tell us if you would prefer to receive correspondence by regular mail
or by e-mail.  We will do whatever is easiest for you.  If you change information (address, e-mail or
phone number), please be sure to tell me.

The Court will set dates for conferences and possibly for a trial.  Usually, the conferences are just
for the attorneys.  We will let you know far in advance of any conference that you need to attend.

When the case is complete, I will write to you and provide copies of the final documents.  We will
retain a copy of your litigation file for seven years, and then it may be destroyed.

Facing a lawsuit is one of the more stressful events that people encounter. My practice is devoted
to the defense of individuals and businesses from claims brought against them. We will keep you
well informed about events in the case. While we cannot predict an outcome, we will work to bring

Exhibit J

April 10, 2024
Page 2

the case to a resolution that we hope will be satisfactory to you. For more information about me or Rendigs, please visit our website www.rendigs.com.

Please contact me.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton

JPS:jlh
Encls.

cc:     Jamie Conard, Pekin Insurance

        Edward J. McHale, Esq.

# RENDIGS
## ATTORNEYS AT LAW

www.Rendigs.com

**Rendigs, Fry, Kiely & Dennis, LLP**
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Jonathan P. Saxton
JSaxton@rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

April 10, 2024

Bryant Rivera
5416 Lofino Court
Dayton, OH 45424

**Re:** Bryant Rivera; G. Brothers, Inc. ads. Jamico Aaron; Melody Aaron (a minor); Estate of Destinie Stevens; ASA Logistics, LLC; Ryan Kennedy; Penske Truck Leasing Co., LPA
Hamilton County Court of Common Pleas Case No. A2400293
Claim No. Z69542
RFKD Ref. 212-376

Dear Mr. Rivera:

This office has been retained by the insurance company for G. Brothers, Inc., Pekin Insurance, to defend you and G. Brothers, Inc. in a lawsuit which has been filed in the Hamilton County Common Pleas Court by Jamico Aaron, Melody Aaron, and the Estate of Destinie Stevens.

This is the re-filing of a lawsuit that was earlier filed following the December 6, 2015 accident.

I will be the attorney representing you and G. Brothers, Inc. Attorney Edward McHale will assist me.

Although Pekin Insurance has retained our firm, you and G. Brothers, Inc. are our clients in this case. Our ethics rules require that we enclose a document which more fully explains this. If you have any questions about the scope of our representation, please ask.

Our first step will be to file an Answer responding to Plaintiffs' allegations in this new Complaint. We have the Court filings from the first case.

We need to discuss the lawsuit with you. Please call me upon receipt of this letter. When we speak, you can tell us if you would prefer to receive correspondence by regular mail or by e-mail. We will do whatever is easiest for you. If you change information (address, e-mail or phone number), please be sure to tell me.

The Court will set dates for conferences and possibly for a trial. Usually, the conferences are just for the attorneys. We will let you know far in advance of any conference that you need to attend.

When the case is complete, I will write to you and provide copies of the final documents. We will retain a copy of your litigation file for seven years, and then it may be destroyed.

Facing a lawsuit is one of the more stressful events that people encounter. My practice is devoted to the defense of individuals and businesses from claims brought against them. We will keep you well informed about events in the case. While we cannot predict an outcome, we will work to bring the case to a resolution that we hope will be satisfactory to you. For more information about me or Rendigs, please visit our website www.rendigs.com.

Rendigs, Fry, Kiely & Dennis, LLP
Founded in 1946

**April 10, 2024**
Page 2

We will be in contact with you shortly.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton

JPS:jlh
Encls.

cc:     Jamie Conard, Pekin Insurance

        G. Brothers, Inc.
        3142 Parkwood Lane
        Hamilton, OH  45011

        Edward J. McHale, Esq.

# R- RENDIGS
## ATTORNEYS AT LAW

🌐 www.Rendigs.com

📍 Rendigs, Fry, Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Jonathan P. Saxton
JSaxton@rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

June 27, 2024

Bryant Rivera
5416 Lofino Court
Dayton, OH 45424

G. Brothers, Inc.
3142 Parkwood Lane
Hamilton, OH 45011

**Re:** Bryant Rivera; G. Brothers, Inc. ads. Jamico Aaron; Melody Aaron (a minor); Estate of Destinie
Stevens; ASA Logistics, LLC; Ryan Kennedy; Penske Truck Leasing Co., LPA
Hamilton County Court of Common Pleas Case No. A2400293
Claim No. Z69542
RFKD Ref. 212-376

Dear Gentlemen:

The lawsuit pending against both of you is proceeding in the Hamilton County Common Pleas Court. According to the Court records, neither of you have been served with the Court documents, which means that technically you are not yet in the case. As you know, Pekin Insurance has retained our office to be your defense attorneys in the case.

We have been monitoring the Court docket. It does not appear that much activity has occurred with respect to Court filings. However, it is likely that there have been other developments with the case involving the other parties.

If you do receive a copy of the Complaint or a Summons from the Court, please advise our office immediately. That would trigger a limited time for a response to be filed with the Court on your behalf.

It would also be helpful to speak with you concerning the lawsuit, the accident, and the claims being made. We can do our best to develop a defense for you if we have more complete information.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton

JPS:jlh

cc: Jamie Conard, Pekin Insurance

Edward J. McHale, Esq.

Exhibit K

CINCINNATI | BOULDER | LOUISVILLE

# R. RENDIGS
## ATTORNEYS AT LAW

www.Rendigs.com

Rendigs, Fry, Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Jonathan P. Saxton,
JSaxton@rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

August 19, 2024

**Via Certified Mail #7021 0350 0000 6054 3008**
**And Regular U.S. Mail Service**
Luis Gonzalez
G. Brothers, Inc.
12049 Pioneers Way, No. 2444
Orlando, FL   32832

**Re:**   Bryant Rivera; G. Brothers, Inc. ads. Jamico Aaron; Melody Aaron (a minor); Estate of Destinie
Stevens; ASA Logistics, LLC; Ryan Kennedy; Penske Truck Leasing Co., LPA
Hamilton County Court of Common Pleas Case No.  A2400293
Claim No.  Z69542
RFKD Ref. 212-376

Dear Mr. Gonzalez:

Our office has been retained by your insurance company, Pekin Insurance, to represent G. Brothers and
Bryant Rivera in a lawsuit pending in Cincinnati.

In case you did not receive our original correspondence, I am enclosing a copy here.

Please call me at your earliest convenience 513-381-9288 (direct dial).  If you reach my voicemail, please
leave me a message with the best way for me to reach you, day or evening.

Thank you for your attention to this.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton

JPS:jlh
Encls.

cc:   Jamie Conard, Pekin Insurance

Edward J. McHale, Esq.

3376571

Exhibit L

CINCINNATI | BOULDER | LOUISVILLE

# RENDIGS
## ATTORNEYS AT LAW

**9** Rendigs, Fry, Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

(fg) www.Rendigs.com

Jonathan P. Saxton,
AiithorTitle
JSaxton@rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

April 1, 2025

Bryant Rivera
Bello Horizonte
1213 Calle Alumbre
Ponce, PUERTO RICO 0027

**Re:** Bryant Rivera; G. Brothers, Inc. ads. Jamico Aaron; Melody Aaron (a minor); Estate of Destinie Stevens; ASA Logistics, LLC; Ryan Kennedy; Penske Truck Leasing Co., LPA
Hamilton County Court of Common Pleas Case № A2400293
Claim No. Z69542
RFKD Ref. 212-376

Dear Mr. Rivera:

This office has been retained by the insurance company for G. Brothers, Inc., Pekin Insurance, to defend you and G. Brothers, Inc. in a lawsuit which has been filed in the Hamilton County Common Pleas Court by Jamico Aaron, Melody Aaron, and the Estate of Destinie Stevens.

This is the re-filing of a lawsuit that was earlier filed following the December 6, 2015 accident.

I will be the attorney representing you and G. Brothers, Inc. Attorneys Edward McHale and Christine Steele will assist me.

Although Pekin Insurance has retained our firm, you and G. Brothers, Inc. are our clients in this case. Our ethics rules require that we enclose a document which more fully explains this. If you have any questions about the scope of our representation, please ask.

Our first step will be to file an Answer responding to Plaintiffs' allegations in this new Complaint. We have the Court filings from the first case.

We need to discuss the lawsuit with you. Please call me upon receipt of this letter. The refiled lawsuit has been pending for some time, and our efforts to contact you have to date been apparently unsuccessful, or at least elicited no response. **It is extremely important that you get in touch with our firm at your earliest convenience to discuss this matter.** When we speak, you can tell us if you would prefer to receive correspondence by regular mail or by e-mail. We will do whatever is easiest for you. If you change information (address, e-mail or phone number), please be sure to tell me.

Exhibit M

CINCINNATI | BOULDER | LOUISVILLE

Rendigs, Fry, Kiely & Dennis, LLP
Founded in 1946

April 1, 2025
Page 2

The Court will set dates for conferences and possibly for a trial.  Usually, the conferences are just for the attorneys.  We will let you know far in advance of any conference that you need to attend.

When the case is complete, I will write to you and provide copies of the final documents.  We will retain a copy of your litigation file for seven years, and then it may be destroyed.

Facing a lawsuit is one of the more stressful events that people encounter. My practice is devoted to the defense of individuals and businesses from claims brought against them. We will keep you well informed about events in the case. While we cannot predict an outcome, we will work to bring the case to a resolution that we hope will be satisfactory to you. For more information about me or Rendigs, please visit our website www.rendigs.com.

We will be in contact with you shortly.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton


JPS:CCS:pth
Encl.

cc:     Jamie Conard, Pekin Insurance

        G. Brothers, Inc.
        3142 Parkwood Lane
        Hamilton, OH  45011

        Edward J. McHale, Esq.
        Christine Carey Steele, Esq.

3546166

## RULES FOR REPRESENTATION

Pekin Insurance Company has retained a lawyer, Jonathan P. Saxton, from Rendigs, Fry, Kiely & Dennis, LLP to defend a lawsuit or claim against you.  This Statement of Insured Client's Rights is being given to you to assure that you are aware of your rights regarding your legal representation.

1. Your Lawyer: Your lawyer has been retained by the insurance company under the terms of your policy. If you have questions about the selection of the lawyer, you should discuss the matter with the insurance company or the lawyer.

2. Directing the Lawyer: Your policy may provide that the insurance company can reasonably control the defense of the lawsuit.

3. In addition, your insurance company may establish guidelines governing how lawyers are to proceed in defending you- guidelines that you are entitled to know. However, the lawyer cannot act on the insurance company's instructions when they are contrary to your interest.

4. Communications: Your lawyer should keep you informed about your case and respond to your reasonable requests for information.

5. Confidentiality: Lawyers have a duty to keep secret the confidential information a client provides, subject to limited exceptions. However, the lawyer chosen to represent you also may have duty to share with the insurance company information relating to the defense or settlement of the claim. Whenever a waiver of lawyer-client confidentiality is needed, your lawyer has a duty to consult with you and obtain your informed consent.

6. Release of Information for Audits: Some insurance companies retain auditing companies to review the billing and files of the lawyers they hire to represent policyholders. If the lawyer believes an audit, bill review, or other action initiated by the insurance company may release confidential information in a manner that may be contrary to your interest, the lawyer must advise you regarding the matter and provide an explanation of the purpose of the audit and the procedure involved. Your written consent must be given in order for an audit to be conducted. If you withhold your consent, the audit shall not be conducted.

7. Conflicts of Interest: The lawyer is responsible for identifying conflicts of interest and advising you of them. If at any time you have a concern about a conflict of interest in your case, you should discuss your concern with the lawyer. If a conflict of interest exists that cannot be resolved, the insurance company may be required to provide you with another lawyer.

8. Settlement: Many insurance policies state that the insurance company alone may make a decision regarding settlement of a claim. Some policies, however, require your consent. You should discuss with your lawyer your rights under the policy regarding settlement. No settlement requiring you to pay money in excess of your policy limits can be reached without your agreement.

9. Fees and Costs: As provided in your insurance policy, the insurance company usually pays all of the fees and costs of defending the claim. If you are responsible for paying the lawyer any fees and costs, your lawyer must promptly inform you of that.

10. Hiring your own Lawyer: The lawyer hired by the insurance company is only representing you in defending the claim brought against you. If you desire to pursue a claim against someone, you will need to hire your own lawyer. You may also wish to hire your own lawyer if there is a risk that there might be a judgment entered against you for more than the amount of your insurance. Your lawyer has a duty to inform you of the risk and other reasonably foreseeable adverse results.



2505 Court Street • Pekin, Illinois 61558
(309)346-1161 • www.pekininsurance.com

October 14, 2025

| Pursuant to Ohio Code 3999.21, we are required to advise you: |
|---|
| **"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."** |

BRYANT RIVERA RODRÍGUEZ
URBANIZACIÓN BELLO HORIZONTE
CALLE ALUMBRE 1213
PONCE PUERTO RICO 00728

SENT CERTIFIED RETURN RECEIPT

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe ▮

## RESERVATION OF RIGHTS

Pekin Insurance Company has reviewed your claim related to the above captioned Complaint filed in Hamilton County, Ohio, case number A2400293. The Complaint alleges Bryant Rivera was operating a box truck owned by Penski and leased by ASA Logistics during the course of his employment at G Brothers Inc. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

Pekin Insurance insured G Brothers Inc. under Commercial Auto policy, policy number P706040, for the policy period of November 6, 2015, through January 20, 2016. The policy provides Bodily Injury Liability limits of $1,000,000 per person and $1,000,000 per accident.

Pekin Insurance hereby advises you that it accepts the defense of the claim pursuant to a reservation of all rights and defenses available pursuant to the terms and conditions of the policy and specifically reserves the right to deny full or partial

1

Exhibit N



indemnification, as stated herein, should judgment be entered against you on a basis for which the policy does not provide coverage. Pekin further advises that its investigation into this matter is early and ongoing, and that additional reasons for full or partial denial of the claim may arise. Pekin reserves the right to assert such additional grounds for denial should facts supporting the same be developed or become available.

**BUSINESS AUTO POLICY**

The insurance policy at issue provides, in part:[1]

### PART IV – LIABILITY INSURANCE

### A. WE WILL PAY

1. **We** will pay all sums the **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance, or use of a covered **auto**.

2. **We** have the right and duty to defend any suit asking for these damages. However, **we** have no duty to defend suits for **bodily injury** or **property damage** not covered by this policy. **We** may investigate and settle any claim or suit as **we** consider appropriate. **Our** payment of the LIABILITY INSURANCE limit ends **our** duty to defend or settle.

\* \* \*

### D. WHO IS AN INSURED

1. **You** are an **insured** for any covered **auto**.

2. Anyone else is an **insured** while using with **your** permission a covered **auto you** own, hire, or borrow except:

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

2



      **a.** The owner of a covered **auto you** hire or borrow from one of **your** employees or a member of his or her household.

      **b.** Someone using a covered **auto** while he or she is working in a business of selling, servicing, repairing, or parking **autos** unless that business is **yours.**

      **c.** Anyone other than **your** employees, a lessee or borrower or any of their employees, while moving property to or from a covered **auto.**

   **3.** Anyone liable for the conduct of an **insured** described above is an **insured** but only to the extent of that liability. However, the owner or anyone else from whom **you** hire or borrow a covered **auto** is an **insured** only if that **auto** is a **trailer** connected to a covered **auto you** own.

   \*   \*   \*

The insurance policy at issue provides the following relevant words and phrases with special meaning:

### PART I – WORDS AND PHRASES WITH SPECIAL MEANING

The following words and phrases have special meaning throughout this policy and appear in **boldface type** when used:

**A.** "**You**" and "**your**" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

**B.** "**We**", "**us**" and "**our**" mean the company providing the insurance.

**C.** "**Accident**" includes continuous or repeated exposure to the same conditions resulting in **bodily injury** or **property damage** the insured neither expected nor intended.

**D.** "**Auto**" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include **mobile equipment**.

3



E. "**Bodily injury**" means bodily injury, sickness, or disease, including death resulting from any of these.

F. **"Insured"** means any person or organization qualifying as an insured in the WHO IS INSURED section of the applicable insurance. Except with respect to **our** limit of liability, the insurance afforded applies separately to each insured who is seeking coverage or against whom a claim is made, or suit is brought.

G. "Loss" means direct and accidental damage or loss.

\* \* \*

I. "**Property damage**" means damage to or loss of use of tangible property.

The following exclusion for punitive damages applies pursuant to endorsement 1562 (05-07):

## EXCLUSION PUNITIVE DAMAGES

This endorsement modifies insurance provided under the following:

**YOUR AUTO POLICY**

1. The following exclusion is added to Paragraph **C., WE WILL NOT COVER – EXCLUSIONS** of **PART IV - LIABILITY INSURANCE**:

   This insurance does not apply to:

   Damages awarded as punitive damages, exemplary damages, or statutory multiple damages. If a lawsuit or civil proceeding is filed against the insured to which this insurance applies alleging both compensatory damages and punitive damages, exemplary damages, or statutory multiple damages, we will afford a defense against the lawsuit or civil proceeding, subject to the limitations and provisions stated in the policy. However, we will not have any obligation to pay for any costs, interest, or damages, attributable to punitive damages, exemplary damages, or statutory multiple damages.

4



Discussion of the allegations against you is not intended as an admission or suggestion that the Plaintiff's allegations are true but is only made for the purpose of analyzing insurance coverage as provided by your policy. The Complaint indicates that Bryant Rivera failed to maintain an assured clear distance and struck the vehicle that the Plaintiffs were occupying causing injuries to Jamico Aaron and fatally injuring Destinie Stevens and her unborn child, Melody Aaron. The Plaintiffs are seeking compensatory and punitive damages.

It is of note that the Complaint alleges punitive damages. The policy specifically excludes punitive damages as indicated in endorsement 1562 (05-07) referenced above. Under no circumstance will Pekin pay a judgment or settlement for punitive damages.

The degree of indemnification available under the policy will ultimately depend on the nature of the damages and theories proven during the case, if any. To the extent a judgment is awarded, or settlement is reached for both covered and non-covered damages, Pekin Insurance Company will only indemnify you to the extent of the covered damages included in the judgment or settlement. Under no circumstances will Pekin Insurance Company provide indemnification for a judgment or settlement or portion thereof consisting of non-covered damages. Pekin Insurance Company will, however, defend all pending claims and allegations so long as any potentially covered claim or allegation remains pending.

For the reasons set forth herein, Pekin Insurance Company must respectfully advise the insured that it reserves all its rights and defenses under the policy. The foregoing reference to specific defenses is not intended to limit or waive any other defenses, which are now or hereinafter may be made available to Pekin Insurance Company, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin Insurance Company policy issued to the insured. Pekin Insurance Company expressly reserves all rights and defenses under its aforesaid policy of insurance. Pekin Insurance Company reserves all rights to enforce the terms of the insurance policy, whether such grounds are currently known or detailed herein. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

Pekin Insurance will provide you with a defense of the above listed lawsuit under the Business Auto Insurance Policy, policy number P706040, pursuant to a reservation of rights and defenses available pursuant to the terms and conditions of the policy. We have asked Attorney Jon Saxton of Rendigs, Fry, Kiely & Dennis, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202; phone 513-381-9200, to defend you.



It will not be necessary for you to do anything further until you hear from either the attorneys or our office. However, in order for us to provide you with a proper defense, it is necessary that you cooperate with us, and the attorneys hired to represent you in accordance with the terms of your insurance contract.

We suggest that you do not discuss this lawsuit with anyone other than a representative of our company or an attorney representing your interests. If you receive any additional information or correspondence regarding this lawsuit, please forward it to us or the attorney assigned to represent you.

The damages in the lawsuit may result in an award to the Plaintiff against you that exceeds the policy limit. You may select counsel of your own choosing and at your own expense to participate with the attorneys noted above in your defense. This notice should not be interpreted by you to require that you hire such attorneys, but only that you have a right to do so.

If you expect to be out of town for any extended time, please let us know. In the meantime, if you have any questions, please contact us.

*Jamie Conard*

JAMIE CONARD, CPCU, AINS- Litigation Specialist
CLAIM DEPARTMENT
Phone: 740-323-3037
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
Jc
cc:   Christine C. Steele CSteele@rendigs.com
      Jonathan P. Saxton jsaxton@rendigs.com

6

9314 8699 0430 0141 2420 35

BRYANT RIVERA RODRIGUEZ
URBANIZACION BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

BRYANT RIVERA RODRIGUEZ
URBANIZACION BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

**Z69542**

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0141 2420 35
RETURN RECEIPT (ELECTRONIC)

# Please Discard

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **JAMICO AARON, et al.** | : | Case No. A2400293 |
| | : | |
| Plaintiffs, | : | (Judge Wende C. Cross) |
| | : | |
| -vs- | : | **NOTICE OF FILING AFFIDAVIT OF** |
| | : | **CHRISTINE C. STEELE** |
| **BRYANT RIVERA, et al.** | : | |
| | : | |
| Defendants. | : | |

Defendants G. Brothers, Inc. and Bryant Rivera, hereby give notice that the

Affidavit of Christine C. Steele has been filed with the Court in this matter in support of its

Memorandum in Opposition to Plaintiffs' Motion for Sanctions.

Respectfully submitted,

*/s/ Jonathan P. Saxton*_____
Jonathan P. Saxton, Esq. (0042280)
JSaxton@rendigs.com
Edward J. McHale, Esq.   (0095829)
EMcHale@rendigs.com
Christine C. Steele, Esq.   (0055288)
CSteele@rendigs.com
Parker S. Herren, Esq.     (106069)
PHerren@rendigs.com
RENDIGS, FRY, KIELY & DENNIS, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Telephone:  513 381 9200
Facsimile:  513 381 9206
*Attorneys for Defendants, G Brothers, Inc.*
*and Bryant Rivera*

Exhibit O

1

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 16th day of February 2026, a copy of the foregoing was served upon the following via E-Mail:

Brian J. Butler, Esq.
Dennis A. Gleason
The Butler Trial Firm
615 Elsinore Place, Ste. 105
Cincinnati, OH 45202
BButler@butlertrialfirm.com
DGleason@butlertrialfirm.com

**AND**

Robert Block, Esq.
Robert Block Law Firm, LLC
P.O. Box 8873
Cincinnati, OH 45208
Robert@robertblocklaw.com
*Attorneys for Plaintiffs, Jamico Aaron and Melody Aaron*

Lucas P. Baker, Esq.
Kaylin Paul, Esq.
Collins, Roche, Utley & Garner LLC
655 Metro Place South, Ste. 200
Dublin, OH  43017
lbaker@cruglaw.com
kpaul@cruglaw.com
*Attorneys for Defendants,
Penske Truck Leasing Co., LP and
ASA Logistics, LLC*

Thomas J. Gruber, Esq.
Michael P. Cussen, Esq.
McCaslin, Imbus, McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
MPCussen@mimlaw.com
*Attorney for Defendant, Ryan Kennedy*

Grant Wenstrup, Esq
Godbey Law, LLC
708 Walnut St., Ste 600
Cincinnati, OH 45202
GWenstrup@godbeylaw.com
*Attorney for Plaintiff, Mark Godbey, as
Special Administrator of the Estate of
Destinie M.L. Stevens*

      */s/ Jonathan P. Saxton*_____
      Jonathan P. Saxton

2

5085208.v1

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| **JAMICO AARON, et al.** | : | Case No. A2400293 |
| | : | |
| Plaintiffs, | : | (Judge Wende C. Cross) |
| | : | |
| -vs- | : | **AFFIDAVIT OF CHRISTINE C.** |
| | : | **STEELE** |
| **BRYANT RIVERA, et al.** | : | |
| | : | |
| Defendants. | : | |

I, Christine C. Steele, being duly cautioned and sworn, state as follows:

1.      I am an attorney in good standing licensed to practice in the State of Ohio since 1991.

2.      Together with Jonathan P. Saxton, Esq. and Parker S. Herren, Esq., I serve as counsel of record for Defendants G. Brothers, Inc. and Bryant Rivera in this litigation.

3.      Since our retention as counsel for Mr. Rivera for the 2024 suit filing, we have not had the ability to consistently maintain contact with him. At some point, since the 2015 accident, Mr. Rivera relocated to his country of origin, Puerto Rico. He has resided in Puerto Rico at least since our representation of him.

4.      We had a mailing address to which we sent communications. While our correspondence was not returned, we received no replies.

5.      In July 2025, we filed a Motion for a Protective Order as to Mr. Rivera's deposition based on the pending Motion to Dismiss. At that time, we did not raise issues with respect to Mr. Rivera's residence, his mental state or living conditions, because we were not aware of those issues or the extent of the problem, and if the Motion to Dismiss was granted those issues would have become moot.

6.      We continued our efforts to establish more direct contact with Mr. Rivera in order to make him available for the deposition should that be necessary.

7.      On October 17, 2025, I was able to establish direct contact with Mr. Rivera through a family member of his and had a telephone conference with him about this case and the request that had been made for his deposition. That call was through a relative's phone. There was a language barrier. It was clear to me that Mr. Rivera was upset, emotional, and potentially unstable.

1

8. Thereafter, we retained an attorney in San Juan, Puerto Rico, Litza J. Melendez-Reyes, to assist with this process. Ms. Melendez-Reyes, who is fluent in Spanish, was able to meet with Mr. Rivera in person on November 11, 2025, to further discuss the case and the request for his deposition. It was reported to us that Mr. Rivera appeared emotionally unstable.

9. On November 12, 2025, in a Zoom case management conference with Judge Cross and all counsel, I advised Judge Cross and all counsel about the issues that had been identified with Mr. Rivera and concerns we had whether Mr. Rivera would or could appear for deposition, as he presents as emotionally unstable, mentally unwell, and potentially violent. Additionally, I explained that Mr. Rivera housing's situation is quite sparse, with no electricity, no front door to his dwelling, no internet access, and no cell phone. Judge Cross noted that this new information as to Mr. Rivera was concerning. She instructed counsel to meet to discuss a plan for discovery.

10. On November 14, 2025, all counsel participated in a Zoom conference to discuss a plan for needed discovery, during which we again discussed the issues surrounding Mr. Rivera and our inability to guarantee his attendance at a deposition, given his mental state, as well as his lack of electricity or access to the internet. I suggested that if they were to notice his deposition, they should provide a location in Ponce, Puerto Rico (such as a court reporter's office where Mr. Rivera could access the internet with an interpreter, in order to maximize the chance that he may appear), although we could not guarantee it given his presented mental state.

11. On November 18, 2025, I sent a letter to all counsel confirming our discussions from the November 14, 2025, Zoom conference, a copy of which is attached hereto as Exhibit A.

12. On December 10, 2025, Counsel for Plaintiffs issued a Notice of Deposition of Bryant Rivera with the deposition to be taken entirely by Zoom on December 29, 2025. That Notice, along with the Zoom link, was forwarded by local counsel via Express Mail to Mr. Rivera on December 11, 2025.

13. Whether Mr. Rivera actually received the Notice and the Zoom link is not known. I knew that Mr. Rivera did not have the ability to connect to a Zoom conference, and I informed all counsel.

14. As to G. Brothers, this office advised all counsel that G. Brothers, Inc. was no longer in existence and that there would be no corporate representative to present for deposition. See Exhibits A and B attached hereto.

2

Further, affiant sayeth naught.

_____
Christine C. Steele

STATE OF OHIO          )
                               )   SS:

COUNTY OF HAMILTON   )

Sworn to and subscribed before me this 16th day of February 2026.

_____
Notary Public

PETER L. CICH, Attorney at Law
NOTARY PUBLIC, STATE OF OHIO
My Commission has no expiration
date. Section 147.03 R. C.

3



2505 Court Street • Pekin, Illinois 61558
(309) 346-1161 • www.pekininsurance.com

October 31, 2025

LITZA J. MELENDEZ REYES, ESQ.
IVÁN M. FERNÁNDEZ LAW OFFICE
PO BOX 192386
SAN JUAN, PR 00919-2386

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Case No. A2400293 - Jamico Aaron, and Jamico Aaron, on behalf of Melody
    Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of
    Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers
    Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe I

This letter will confirm that Pekin Insurance has retained your services in assisting
with facilitating the deposition of Bryant Rivera in relation to a lawsuit filed in
Hamilton County, Ohio, case number A2400293, bearing the caption referenced
above.

The insured's contact information is as follows:

Bryant Rivera Rodríguez
Urbanización Bello Horizonte
Calle Alumbre 1213
Ponce, Puerto Rico 00728

Rivera has no phone or email address. We reach him by contacting his aunt, Digna
Rodriguez, at ▮▮▮▮▮▮▮▮▮. She lives next door to Rivera and relays the message
for him to call back if he is not available.

Exhibit P

LAW OFFICES OF
**IVAN M. FERNANDEZ**
P O BOX 192386
SAN JUAN, PUERTO RICO 00919-2386

IVAN M. FERNANDEZ
LITZA J. MELENDEZ REYES
ERNESTO RODRIGUEZ LAVERGNE
VANESSA E. LUZUNARIS RODRIGUEZ

FLORAL PARK
8 BETANCES STREET
HATO REY, PUERTO RICO 00917-3706

_____

TEL (787) 753-1215
E-Mail: fernandez@lawofimf.com
melendez@lawofimf.com

November 11, 2025

BY E MAIL: csteele@rendigs.com

Christine C. Steele, Esq.
Redigs, Fry, Kiely & Dennis LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Re:  Jamico Aaron v. G Brothers
     D/A:  December 6, 2025
     Y/F:  Z69542
     O/F:  300-316

### Privileged & Confidential

Dear Ms. Steele:

As I informed you during our telephone conversation today I went to Bryant Rivera's house in Ponce. We first contacted Bryant Rivera's aunt Digna who accompanied me to his house. Bryant's house does not have a front door. There is just a curtain where the door should be. The house also does not have any electricity. The area that I was able to see, only had a chair and a table. There was no kitchen.

When Bryant walked into what should have been the kitchen, he was not wearing a shirt and kept incisively spraying the area with aerosol deodorant. He also picked up a machete and placed it next to him.

I explained who I was and my reason for the visit.  Bryant responded that the case was already closed. I explained that the civil case was still active and that the plaintiffs wanted to depose him and that you wanted to discuss the facts of the case with him prior to his deposition. He replied that he had already given a statement to the police and to another lawyer and reiterated that the case was closed.  That his uncle told him the case was closed.

I tried to explain way the case was still open and why his deposition was necessary, but Bryant became agitated. He started to insult his aunt and tell her that she was not his family. He stated that she was not going to remove him from his house. He also stated that it was her fault that "he did pornography."

Exhibit Q

Ms. Steele
November 11, 2025
Page number: 2

Bryant stated that he was not going to relive the incident which was painful for him. He stated that if anyone wanted more information from him, they would have to do it through the police. Bryant then threatened to kill his aunt and stormed out. At this point, I exited the house with his aunt.

At the exterior of the house, I asked the aunt if she was okay. She responded that she was. She then told me that his family went to the court to request a psychiatric hold, but were not successful because if the ambulance arrived and he was not there, they would have to pay for the ambulance. She also informed that Bryant harasses the neighbors, walks out of the house naked and masturbates in front of them.

My overall impression is that Bryan was not stable and is aggressive. Also, based on the interfamily dynamics I witnessed, we should not be contacting the aunt to reach Bryant. Do not hesitate to contact me if you have any questions regarding the above referenced matter.

Cordially,

Litza J. Meléndez Reyes

nrc



*Beyond the expected.*"*

2505 Court Street • Pekin, Illinois 61558
(309)346-1161 • www.pekininsurance.com

October 23, 2025

G BROTHERS INC
LUIS GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO FL 32832

---

Pursuant to Ohio Code 3999.21, we are required to advise you:

*"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."*

---

**CERTIFIED MAIL – RETURN RECEIPT**

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Case No. A2400293 - Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe ▌

Luis Gonzalez,

Pekin Insurance has not been able to contact you regarding the lawsuit noted above. In addition, please refer to the Reservation of Rights that was sent to you on April 3, 2024, and is also enclosed.

Your Business Auto policy, policy number P706040, and (Commercial Umbrella containing similar language) contains the following conditions, in part1:

### PART VIII – CONDITIONS

The insurance provided by this policy is subject to the following conditions:

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

1

Exhibit R



## A. YOUR DUTIES AFTER ACCIDENT OR LOSS

1. **You** must promptly notify **us** or **our** agent of any **accident** or **loss. You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of **any** injured persons and witnesses.

2. Additionally, **you** and other involved **insureds** must:

   a. Cooperate with **us** in the investigation, settlement or defense of any claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation, or incur any expense.

   b. Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**.

   c. Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

   d. Authorize **us** to obtain medical reports and other pertinent medical information.

As quoted above, the policy requires that you cooperate in defense against the lawsuit. Compliance with policy Conditions is a mandatory condition precedent to coverage and should the defense be prejudiced by a failure to cooperate, it will result in a forfeiture of coverage.

Attorneys Christine Steele and Jon Saxton of the law firm of Rendigs, Fry, Kiely & Dennis, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202; phone 513-381-9200, have been retained to defend you in this case. As discussed above, in order for us to provide you with a proper defense, it is necessary that you cooperate with us and the attorneys hired to represent you in accordance with the terms of your insurance contract. This includes cooperation with discovery in the case, which is a required procedure in the lawsuit. Failure to comply with discovery requirements could lead to the Court imposing sanctions or taking other action detrimental to the defense.

2



We want to make you aware that your cooperation is a mandatory prerequisite to coverage. Should the defense be prejudiced by a failure to cooperate, whether by sanctions imposed or otherwise, it will result in a forfeiture of coverage. Please contact me directly and promptly engage with defense counsel.

Neither this letter nor any other action taken in by Pekin in response to the claim or suit is intended to limit or waive any rights or defenses, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin policy issued to the insured. Pekin expressly reserves all rights and defenses under its aforesaid policy of insurance. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

*Jamie Conard*

JAMIE CONARD, CPCU AINS – Litigation Specialist
CLAIM DEPARTMENT
Phone: 800-322-0160, Ext. 3063
Cell: 740-323-6037
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
ks
enc. Reservation of Rights letter dated 4/3/24

3

G BROTHERS INC
LUIS GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO, FL 32832-2818

9314 8699 0430 0141 7947 25

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

G BROTHERS INC
LUIS GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO, FL 32832-2818

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0141 7947 25
RETURN RECEIPT (ELECTRONIC)

# Please Discard

# CASE NO. A2400293

# JAMICO AARON, ET AL.

# V.

# BRYANT RIVERA, ET AL.

# STATEMENT OF COUNSEL

# DATE:

# DECEMBER 17, 2025

Exhibit S

IN THE COURT OF COMMON PLEAS

HAMILTON COUNTY, OHIO

CIVIL DIVISION

JUDGE WENDE C.  CROSS

CASE NO.  A2400293

JAMICO AARON, ET AL.,

Plaintiffs

V.

BRYANT RIVERA, ET AL.,

Defendants

STATEMENT OF COUNSEL

DATE:    DECEMBER 17, 2025

REPORTER:  ELLINA DELILLO

APPEARANCES

ON BEHALF OF THE PLAINTIFF, JAMICO AARON, ON BEHALF OF

MELODY AARON, MINOR:

Dennis A.  Gleason, Esquire

The Butler Trial Firm

615 Elsinore Place

Suite 105

Cincinnati, Ohio 45202

Telephone No.: (513) 828-6116

E-mail: dgleason@butlertrialfirm.com

AND

Robert Block, Esquire

Robert Block Law

441 Vine Street

29th Floor

Cincinnati, Ohio 45208

Telephone No.: (513) 477-8522

E-mail: robert@robertblocklaw.com

(Appeared via videoconference)

Statement of Counsel, taken on December 19, 2025

3

APPEARANCES (CONTINUED)


ON BEHALF OF THE PLAINTIFF, MARK E. GODBEY AS SPECIAL

ADMINISTRATOR OF THE ESTATE OF DESTINIE M.L. STEVENS:

Collin Threet, Esquire

Godbey Law, LLC

708 Walnut Street

Suite 600

Cincinnati, Ohio 45202

Telephone No.: (513) 241-6650

E-mail: cthreet@godbeylaw.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANTS, BRYANT RIVERA AND G

BROTHERS, INC.:

Jonathan P. Saxton, Esquire

Rendigs, Fry, Kiely & Dennis, LLP

600 Vine Street

Suite 2650

Cincinnati, Ohio 45202

Telephone No.: (513) 381-9288

E-mail: jsaxton@rendigs.com

(Appeared via videoconference)

Statement of Counsel, taken on December 19, 2025

4

APPEARANCES (CONTINUED)


ON BEHALF OF THE DEFENDANTS, ASA LOGISTICS, LLC AND

PENSKE TRUCK LEASING, CO., LP:

Lucas P.  Baker, Esquire

Collins, Roche, Utley & Garner, LLC

655 Metro Place South

Suite 200

Dublin, Ohio 43017

Telephone No.: (614) 901-9600

E-mail: lbaker@cruglaw.com

(Appeared via videoconference)


ON BEHALF OF THE DEFENDANT, RYAN KENNEDY:

Michael P.  Cussen, Esquire

McCaslin, Imbus & McCaslin

600 Vine Street

Suite 800

Cincinnati, Ohio 45202

Telephone No.: (513) 463-2116

E-mail: mpcussen@mimlaw.com

(Appeared via videoconference)

Case: 2:26-cv-00482-EAS-SCS Doc #: 1 Filed: 04/20/26 Page: 174 of 224  PAGEID #: 174
Statement of Counsel, taken on December 19, 2025

5

INDEX

Page

PROCEEDINGS                                   7

EXHIBITS

Exhibit                          Page

1 - Notice of Deposition
   to G Brothers                      10
2 - G Brothers Agreement
   with ASA Logistics                 10
3 - G Brothers FMCSA Motor
   Carrier License History            11

STIPULATION

The STATEMENT OF COUNSEL was taken at THE OHIO REPORTING COMPANY, 312 WALNUT STREET, SUITE 1600, CINCINNATI, OHIO 45202, via videoconference in which all participants attended remotely, on WEDNESDAY the 17TH day of DECEMBER 2025 at 1:02 p.m.  (ET).

PROCEEDINGS

THE REPORTER: We are now on record. The time is 1:02 p.m. Mr. Gleason you may begin.

MR. GLEASON: Thank you. We've – We're here to a – regarding the deposition of G Brothers. We would like to simply record on the record that the G Mothers representative has not appeared for the deposition. And then we have several questions that we would like to proffer regarding G Brothers or to 3 Brothers on the record as well as approximately three exhibits that we would like to proffer briefly. I will begin with the questions and then I can provide the exhibits. I will share them via screenshare briefly then I will provide copies to everyone after we finish here.

MR. SAXTON: Dennis, before you go with your questions, let me interject my objection to proffer of the questions I don't know if that's the appropriate procedure. I represent G Brothers as well as Bryant Rivera. As I've advised council, G mothers is a corporation that has dissolved and no longer exists. Therefore, it is not able to provide a corporate representative to testify today, so that is the reason there is no representative from G

Brothers.

MR. GLEASON:  All right.  Any other objections for the record before I begin with these questions?  All right.  Hearing none.  The first question:  Was G Brothers motor carrier authorization suspended or cancelled on or about 11-10-2015?  Why was G Brothers motor carrier authorization suspended or cancelled on or about this date?  Did G Brothers have a valid motor carrier authorization on December 6th, 2015?  What liability insurance did G Brothers carry on December 6th, 2015?  Was Bryant Rivera an employee of G Brothers?  What was the employment relationship between Bryant Rivera and G Brothers?  Had Rivera carried loads for G Brothers prior to December 6th, 2015?  Did G Brothers investigate Rivera's background before hiring him to carry a load on or about December 6th, 2015?

Did G Brothers provide training to Rivera?  What were G Brothers policies for operating trucks in low visibility conditions, hazardous conditions, or conditions of fog?  Who rented the Penske truck that Rivera was driving and where did G Brothers obtain the Penske truck that Rivera was driving on or about December 6th, 2015?  Did G Brothers attach a USDOT number to the Penske truck that Rivera was

driving on or about December 6th, 2015? Who hired G Brothers to carry the load which Rivera was carrying on or about December 6th, 2015? What was the load?

Where was the load picked up from and where was the load to be dropped off? Why did G Brothers select Bryant Rivera to carry that load on December 6th, 2015? Did G Brothers select the route that Rivera was driving on December 6th, 2015? Did G Brothers know that Rivera was operating in hazardous conditions on or about December 6th, 2015? Did G Brothers know that Rivera was driving his vehicle at approximately 55 mph on December 6th, 2015? Did G Brothers know that Rivera was driving his vehicle in the left lane of the highway on December 6th, 2015?

Did G Brothers know that Rivera struck another vehicle while driving on December 6th, 2015? Did G Brothers know or learn that the occupants of the vehicle were vera struck were injured and what was its knowledge of the extent of those people's injuries? What was the cause of the collision that Bryant Rivera was involved in on or about December 6th, 2015? How long was the Mazda disabled in the roadway prior to the collision on or about December 6th, 2015? How long prior to the collision did Rivera see the Mazda in the road on or about

December 6th, 2015?  Did Rivera make any effort to avoid striking the Mazda in the road on or about December 6th, 2015?

That concludes the questions that I have to offer.  Allow me to share my screen briefly to show the exhibits.  All right.  The first exhibit that we would like to proffer for this deposition is the amended notice of deposition.  Served on 16th day of December 2025.  The second exhibit that we would like to proffer for this deposition is a vehicle authorization agreement.  According to be between G Brothers and ASA.  I'll scroll through this agreement.  It is 14 pages long.

(Exhibit 1 was marked for identification)

(Exhibit 2 was marked for identification)

MR. SAXTON:  And that includes the independent contractor agreement within it, is that right Dennis?

MR. GLEASON:  Yes, sir.

MR. SAXTON:  Thank you.

MR. GLEASON:  All right.  The final document is -- will be the FMCSA motor carrier history for G Brothers Incorporated.  This document is four pages long.  And with those three exhibits that concludes -- the proffer that plaintiff Aaron would like to

make for this deposition.

(Exhibit 3 was marked for identification)

THE REPORTER: We have any other statements for the record?

MR. GLEASON: None from us.

THE REPORTER: All right. Perfect. Before we hop off, I will ask orders for this transcript starting with Mr. Gleason. Would you like a copy?

MR. GLEASON: I believe so and then we would like to proceed with the ASA Logistics one. I know it's been noticed at 1:30 but obviously there's no reason to take 20 minutes before getting back on.

THE REPORTER: Okay. Perfect. And -- Mr. Block would you like a copy of the statement?

MR. SAXTON: You're on mute. But it looks like you are saying no.

MR. BLOCK: You know, us old lawyers we don't hit the right buttons. I don't need copy of the statement.

THE REPORTER: Okay. Mr. Threet?

MR. THREET: We do not need a copy of the statement.

THE REPORTER: Okay. Mr. Cussen?

MR. CUSSEN: No, thank you.

THE REPORTER: Mr. Saxton?

MR. SAXTON:  I'll take a copy of the statement and the exhibits to it, please.

THE REPORTER:  Okay.  And Mr. Baker?

MR. BAKER:  No, thank you.

THE REPORTER:  All right.  Perfect.  We are now off record.  The time is 1:11 p.m.

(Statement of Counsel concluded at 1:11 p.m.

ET)

CERTIFICATE OF REPORTER

STATE OF OHIO

I do hereby certify that the witness in the foregoing transcript was taken on the date, and at the time and place set out on the Title page here of by me after first being duly sworn to testify the truth, the whole truth, and nothing but the truth; and that the said matter was recorded digitally by me and then reduced to typwritten form under my direction, and constitutes a true record of the transcript as taken, all to the best of my skill and ability.  I certify that I am not a relative or employee of either counsel, and that I am in no way interested financially, directly or indirectly, in this action.

ELLINA DELILLO,

COURT REPORTER/NOTARY

COMMISSION EXPIRES:  03/21/2027

SUBMITTED ON:  12/30/2025

1

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


JAMICO AARON, et          :
al.,                      :
                          :
      Plaintiffs,         :
                          :   Case No. A2400293
**vs.**                   **:**
                          :   STATEMENT OF COUNSEL
BRYANT RIVERA, et         :
al.,                      :
                          :
      Defendants.         :


     Videoconference statement on the record taken by Counsel for Plaintiffs at the offices of Godbey Law, LLC, 708 Walnut Street, Suite 600, Cincinnati, Ohio 45202, at 10:05 a.m., Monday, December 29, 2025, before ANN BELMONT, RPR a Registered Professional Reporter and Notary Public within and for the State of Ohio.

                    - - -

Exhibit T

2

APPEARANCES:   (All via videoconference)

FOR THE PLAINTIFF,       GRANT S. WENSTRUP, ESQ.
Mark E. Godbey as              of
Special                  Godbey Law, LLC
Administrator of         708 Walnut Street
the Estate of            Suite 600
Destinie M.L.            Cincinnati,Ohio 45202
Stevens:

FOR THE PLAINTIFFS,      BRIAN J. BUTLER, ESQ.
Jamico Aaron and         DENNIS A. GLEASON, ESQ.
Melody Aaron:                  of
                         The Butler Trial Firm
                         615 Elsinore Place
                         Suite 105
                         Cincinnati, Ohio 45202

                         ROBERT BLOCK, ESQ.
                               of
                         SCHWARTZ MANES RUBY &
                         SLOVIN
                         441 Vine Street
                         Suite 2900
                         Cincinnati, Ohio 45202

FOR THE DEFENDANT,       MICHAEL P. CUSSEN, ESQ.
Ryan Kennedy:                  of
                         McCaslin, Imbus &
                         McCaslin, LPA
                         600 Vine Street
                         Suite 800
                         Cincinnati, Ohio 45202

FOR THE DEFENDANTS,      CHRISTINE C. STEELE, ESQ.
G Brothers, Inc.               of
and Bryant Rivera:       Rendigs Fry Kiely &
                         Dennis, LLP
                         600 Vine Street
                         Suite 2650
                         Cincinnati, Ohio 45202

FOR THE DEFENDANTS,      LUCAS P. BAKER, ESQ.
Penske Truck                   of
Leasing Co., L.P.        Collins Roche Utley &
and ASA Logistics,       Garner, LLC
LLC:                     255 Metro Place  South
                         Suite 200
                         Dublin, Ohio 43017

Bryant Rivera 12/29/2025

3

MR. WENSTRUP:  I just want to put on the record, it's 10:05.  Bryant Rivera is not here.  It's our understanding that he couldn't -- that there has been limited contact with him.  And it appears he's not going to appear.  That's all I want to put on the record.

I think some other people might want to put some things on as well.

MS. STEELE:  Yes, if I may.  My name's Christine Steele on behalf of Defendant Rivera and G Brothers.  And I would just point out, as discussed in open court at the December 18th final pretrial conference, there was a potential that Mr. Rivera would not connect to the Zoom link for his deposition.

We have secured local counsel located in San Juan, Puerto Rico, to assist us with communications with Mr. Rivera.  In early November, our local counsel was able to meet with Mr. Rivera in person, but came away from that meeting with an understanding that Mr. Rivera is mentally unwell and unable to provide much information.

Bryant Rivera 12/29/2025

4

Nonetheless, our local counsel, in conjunction with this office, as counsel for Mr. Rivera, provided notice to Mr. Rivera of this deposition with instructions and the Zoom link. This was sent to Mr. Rivera on December 12, 2025 through express mail to what our office understands is his current address. The letter was sent in Spanish. There was no response.

In a further effort to secure his attendance at the Zoom deposition, our office retained an attorney in Ponce, Puerto Rico, in an attempt to speak to Mr. Rivera. We were advised on December 23, 2025 that Mr. Rivera's aunt was contacted, and that she reported that Mr. Rivera has schizophrenia, that he has assaulted people, has been arrested by force, including the use of a taser. Talking about the accident causes Mr. Rivera to become agitated and aggressive.

I personally spoke with Mr. Rivera in the fall of 2025. And from that interaction, can also confirm that he appears unstable.

In addition, he does not himself

Bryant Rivera 12/29/2025

5

have electricity, any access to the Internet or even a telephone.  All of this was confirmed by local counsel in her in-person meeting with Mr. Rivera in early November.

Our office has previously advised plaintiffs' counsel, as well as the court, that it was unlikely that Mr. Rivera would or could appear for the deposition. The notice to take the deposition was nonetheless filed on December 10, 2025. 10:08

This concludes our statement for the record.

MR. GLEASON:  All right.  Dennis Gleason for Mr. Aaron.  There were questions that we would like to proffer on the record. If there are any objections, I can -- we take those now, and then I can proceed to read off the questions that we would have asked if Mr. Rivera had appeared today.  Hearing none, I will begin here. 10:09

Q.    Were you, Mr. Rivera, an employee of G Brothers?

Q.    Had you carried loads for G Brothers prior to December 6, 2015?

Q.    How many jobs had you done for G

Bryant Rivera 12/29/2025

6

Brothers, or how many loads had you carried for them?

Q.      How did G Brothers pay you for your work?

Q.      Did you have a valid operator's license on or about December 5 or 6, 2015?

Q.      Did G Brothers provide you with training?  If so, what kind of training?

Q.      What were G Brothers policies for operating trucks in low visibility conditions, hazardous conditions or in the fog?

10:09

Q.      What was your understanding of the FMCSA regulations concerning hazardous conditions?

Q.      What was your understanding of the Ohio CDL manual's regulations for driving in fog?

Q.      Who rented the Penske truck that you were driving, and how did you receive the truck?

10:10

Where did you pick up the load that you were driving on or about the morning of December 6, 2015?

Q.      When did you pick that load up?

Bryant Rivera 12/29/2025

7

Q.     What was the load that you picked up?

Q.     Where did you drop -- or where were to drop off the load that you were driving on or about December 6, 2015?

Q.     Who selected the route that you were driving along on that morning?

Q.     Had you driven along that route before?

Q.     Did you become involved in a car crash on or about December 6, 2015 while you were traveling along that route?     10:10

Q.     What were the weather conditions like that morning?

Q.     How fast were you driving on that morning?

Q.     What lane were you driving?

Q.     What kind of car did you hit?

Q.     When did you first see that car?

Q.     Where in the roadway was the car?     10:11

Q.     How far away was the car when you first observed it?

Q.     Was the car moving when you first observed it?

Bryant Rivera 12/29/2025

8

Q.   Were the car's headlights on when you first observed it?

Q.   Did you make any effort to avoid striking the car?

Q.   Did you learn that the occupants of the vehicle you struck were injured?

Q.   And what was the extent of the injuries, if you learned?

MR. GLEASON:  That concludes the questions we would like to proffer on the record.

10:11

MR. WENSTRUP:  Anything else or are we all finished?  All right.  Ann, I think that's it.

(Conclusion of statement on the record at approximately 10:11 a.m.)

Bryant Rivera 12/29/2025

9

C E R T I F I C A T E

STATE OF OHIO          :

                       SS

COUNTY OF CLERMONT :


            I, ANN BELMONT, RPR, Registered

Professional Reporter, do hereby certify that

the foregoing transcript was by me duly taken

in stenotype and thereafter transcribed into

typewriting by computer under my supervision,

and that the same is true and correct in all

respects as transcribed from my stenographic

notes.

            I further certify that I am not

counsel, attorney, relative or employee of

any of the parties hereto, or in any way

interested in the within action.

            IN WITNESS WHEREOF, I have

hereunto set my hand and Notarial seal on

this 5th of January, 2026.

                                        _____
  My Commission expires        ANN BELMONT, RPR
     December 4, 2030          Notary Public -
                               State of Ohio

# R RENDIGS
## ATTORNEYS AT LAW

www.Rendigs.com

Rendigs, Fry, Kiely & Dennis, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202

Jonathan P. Saxton
JSaxton@rendigs.com
Direct 513 381 9288
Admitted to practice in OH & KY

March 16, 2026

**VIA FEDERAL EXPRESS**
**AND REGULAR MAIL**
Bryant Rivera
Urbanizacion Bello Horizonte
Calle Alumbre 1213
Ponce, PUERTO RICO 00728

**Re:** J'amico Aaron, et al. v. Bryant Rivera, et al.
Claim No. Z69542
RFKD Ref. 212-376

Dear Mr. Rivera:

As you know, our law firm was hired by Pekin Insurance to be your defense lawyers in the lawsuit filed against you. The lawsuit was filed by the people in the car that was in the accident with you in December 2015. The case is scheduled for a jury trial beginning at 10:00 a.m. on April 27, 2026.

The trial will be held in Judge Cross' Courtroom (Room 380) at the Hamilton County Courthouse located in Cincinnati, Ohio. The street address is 1000 Main Street (Downtown).

You are required to attend your trial. If you need assistance with travel expenses and with a hotel in Cincinnati, we can arrange that and Pekin Insurance will pay for it.

Very truly yours,

RENDIGS, FRY, KIELY & DENNIS, LLP

*Jonathan P. Saxton*

Jonathan P. Saxton

JPS/jlh

cc: Jamie S. Conard, Pekin Insurance

Christine C. Steele, Esq.

Exhibit U

CINCINNATI | BOULDER | LOUISVILLE

# Your shipment was delivered.

**Delivery Date**

Thu, 03/19/2026

2:28pm

**Delivered to**

URBANIZACION BELLO HORIZO, PONCE, PR 00728

**Received by**

B.RIVERA

Exhibit V



**Beyond the expected.**™*

2505 Court Street • Pekin, Illinois 61558
(309)346-1161 • www.pekininsurance.com

March 17, 2026

G BROTHERS INC
LUIS GONZALEZ
40 PROVIDENCE DR APT 62
FAIRFIELD OH 45014

> Pursuant to Ohio Code 3999.21, we are required to advise you:
>
> *"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."*

**CERTIFIED MAIL – RETURN RECEIPT & US MAIL**

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Case No. A2400293 - Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe ▌

Luis Gonzalez,

Pekin Insurance has not been able to contact you regarding the lawsuit noted above. In addition, please refer to the Reservation of Rights that was sent to you on April 3, 2024, and is also enclosed.

Pekin seeks to notify you that trial in this matter has been set for April 27, 2026, at the Hamilton County Court of Common Pleas in Hamilton, Ohio located at 1000 Main Street, Cincinnati Ohio 45202. Your attendance at trial is required.

Your Business Auto policy, policy number P706040, and Commercial Umbrella containing similar language, contains the following Conditions, in part[1]:

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

1

Exhibit W



**PART VIII – CONDITIONS**

The insurance provided by this policy is subject to the following conditions:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS**

    **1.** **You** must promptly notify **us** or **our** agent of any **accident** or **loss. You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of **any** injured persons and witnesses.

    **2.** Additionally, **you** and other involved **insureds** must:

        **a.** Cooperate with **us** in the investigation, settlement or defense of any claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation, or incur any expense.

        **b.** Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**.

        **c.** Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

        **d.** Authorize **us** to obtain medical reports and other pertinent medical information.

As quoted above, the policy requires that you cooperate in defense against the lawsuit. Compliance with policy Conditions is a mandatory condition precedent to coverage and should the defense be prejudiced by a failure to cooperate, it will result in a forfeiture of coverage.

Attorneys Christine Steele and Jon Saxton of the law firm of Rendigs, Fry, Kiely & Dennis, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202; phone 513-381-9288, have been retained to defend you in this case. As discussed above, in order for us to provide you with a proper defense, it is necessary that you cooperate with us and the attorneys hired to represent you in accordance with the terms of your insurance contract. This includes cooperation with discovery in the case, which is a required

2



procedure in the lawsuit. Failure to comply with discovery requirements could lead to the Court imposing sanctions or taking other action detrimental to the defense.

We want to make you aware that your cooperation is a mandatory prerequisite to coverage. Should the defense be prejudiced by a failure to cooperate, including your failure to appear at trial, whether by sanctions imposed or otherwise, it will result in a forfeiture of coverage. Please contact me directly and promptly engage with defense counsel.

Neither this letter nor any other action taken in by Pekin in response to the claim or suit is intended to limit or waive any rights or defenses, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin policy issued to the insured. Pekin expressly reserves all rights and defenses under its aforesaid policy of insurance. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.


*Jamie Conard*

JAMIE CONARD, CPCU AINS – Litigation Specialist
CLAIM DEPARTMENT
Phone: 800-322-0160, Ext. 3063
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
ks
enc. Reservation of Rights letter dated April 3, 2024

3

G BROTHERS INC
LUIS GONZALEZ
40 PROVIDENCE DR APT 62
FAIRFIELD, OH 45014-6656

9314 8699 0430 0147 2686 57

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

G BROTHERS INC
LUIS GONZALEZ
40 PROVIDENCE DR APT 62
FAIRFIELD, OH 45014-6656

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0147 2686 57
RETURN RECEIPT (ELECTRONIC)

# Please Discard



2505 Court Street • Pekin, Illinois 61558
(309) 346-1161 • www.pekininsurance.com

March 17, 2026

G BROTHERS INC
LUIS GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO FL 32832

Pursuant to Ohio Code 3999.21, we are required to advise you:

*"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."*

**CERTIFIED MAIL – RETURN RECEIPT AND U.S. MAIL**

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Case No. A2400293 - Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe I

Luis Gonzalez,

Pekin Insurance has not been able to contact you regarding the lawsuit noted above. In addition, please refer to the Reservation of Rights that was sent to you on April 3, 2024, and is also enclosed.

Pekin seeks to notify you that trial in this matter has been set for April 27, 2026, at the Hamilton County Court of Common Pleas in Hamilton, Ohio located at 1000 Main Street, Cincinnati, Ohio 45202. Your attendance at trial is required.

Your Business Auto policy, policy number P706040, and Commercial Umbrella containing similar language, contains the following conditions, in part[1]:

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

1



**PART VIII – CONDITIONS**

The insurance provided by this policy is subject to the following conditions:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS**

1. **You** must promptly notify **us** or **our** agent of any **accident** or **loss. You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of **any** injured persons and witnesses.

2. Additionally, **you** and other involved **insureds** must:

   a. Cooperate with **us** in the investigation, settlement or defense of any claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation, or incur any expense.

   b. Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**.

   c. Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

   d. Authorize **us** to obtain medical reports and other pertinent medical information.

As quoted above, the policy requires that you cooperate in defense against the lawsuit. Compliance with policy Conditions is a mandatory condition precedent to coverage and should the defense be prejudiced by a failure to cooperate, it will result in a forfeiture of coverage.

Attorneys Christine Steele and Jon Saxton of the law firm of Rendigs, Fry, Kiely & Dennis, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202; phone 513-381-9288, have been retained to defend you in this case. As discussed above, in order for us to provide you with a proper defense, it is necessary that you cooperate with us and the attorneys hired to represent you in accordance with the terms of your insurance contract. This includes cooperation with discovery in the case, which is a required

2



procedure in the lawsuit. Failure to comply with discovery requirements could lead to the Court imposing sanctions or taking other action detrimental to the defense.

We want to make you aware that your cooperation is a mandatory prerequisite to coverage. Should the defense be prejudiced by a failure to cooperate, including your failure to appear at trial, whether by sanctions imposed or otherwise, it will result in a forfeiture of coverage. Please contact me directly and promptly engage with defense counsel.

Neither this letter nor any other action taken in by Pekin in response to the claim or suit is intended to limit or waive any rights or defenses, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin policy issued to the insured. Pekin expressly reserves all rights and defenses under its aforesaid policy of insurance. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.


*Jamie Conard*

JAMIE CONARD, CPCU AINS – Litigation Specialist
CLAIM DEPARTMENT
Phone: 800-322-0160, Ext. 3063
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
ks
enc. Reservation of Rights letter dated April 3, 2024

3

G BROTHERS INC
LUIZ GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO, FL 32832-2818

9314 8699 0430 0147 2685 27

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

G BROTHERS INC
LUIZ GONZALEZ
12049 PIONEERS WAY APT 2444
ORLANDO, FL 32832-2818

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0147 2685 27
RETURN RECEIPT (ELECTRONIC)

# Please Discard

*Beyond the expected.™*

**PEKIN**
INSURANCE™

2505 Court Street • Pekin, Illinois 61558
(309) 346-1161 • www.pekininsurance.com

March 17, 2026

BRYANT RIVERA
URBANIZACIÓN BELLO HORIZONTE
CALLE ALUMBRE 1213
PONCE PUERTO RICO 00728

> Pursuant to Ohio Code 3999.21, we are required to advise you:
>
> *"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."*

**CERTIFIED MAIL – RETURN RECEIPT AND U.S. MAIL**

Claim Number – Z69542
Insured – G Brothers Inc
Policy Number – P706040
Date of Loss – December 6, 2015
Insurance Company – Pekin Insurance Company

Re: Case No. A2400293 - Jamico Aaron, and Jamico Aaron, on behalf of Melody Aaron, Minor, and Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens, v. Bryant Rivera, and ASA Logistics, LLC, and G Brothers Inc, and Ryan Kennedy, and Penske Truck Leasing Co, L.P., and Doe I

Bryant Rivera,

Pekin Insurance has not been able to contact you regarding the lawsuit noted above. In addition, please refer to the Reservation of Rights that was sent to you on April 3, 2024, and is also enclosed.

Pekin seeks to notify you that trial in this matter has been set for April 27, 2026, at the Hamilton County Court of Common Pleas in Hamilton, Ohio located at 1000 Main Street, Cincinnati, Ohio 45202. Your attendance at trial is required.

Your Business Auto policy, policy number P706040, and Commercial Umbrella containing similar language, contains the following Conditions, in part[1]:

---

[1] In the interest of brevity, the policy language is not quoted in full. Your policy contains terms and conditions not specifically quoted or discussed here. Please refer to the full policy document. If you do not have a copy of the policy, you may request a copy from the undersigned.

1



**PART VIII – CONDITIONS**

The insurance provided by this policy is subject to the following conditions:

**A. YOUR DUTIES AFTER ACCIDENT OR LOSS**

**1.** **You** must promptly notify **us** or **our** agent of any **accident** or **loss. You** must tell **us** how, when and where the **accident** or **loss** happened. **You** must assist in obtaining the names and addresses of **any** injured persons and witnesses.

**2.** Additionally, **you** and other involved **insureds** must:

**a.** Cooperate with **us** in the investigation, settlement or defense of any claim or suit. No **insured** shall, except at his or her own cost, voluntarily make any payment, assume any obligation, or incur any expense.

**b.** Immediately send **us** copies of any notices or legal papers received in connection with the **accident** or **loss**.

**c.** Submit at **our** expense and as often as **we** require to physical examinations by physicians **we** select.

**d.** Authorize **us** to obtain medical reports and other pertinent medical information.

As quoted above, the policy requires that you cooperate in defense against the lawsuit. Compliance with policy Conditions is a mandatory condition precedent to coverage and should the defense be prejudiced by a failure to cooperate, it will result in a forfeiture of coverage.

Attorneys Christine Steele and Jon Saxton of the law firm of Rendigs, Fry, Kiely & Dennis, 600 Vine Street, Suite 2650, Cincinnati, Ohio 45202; phone 513-381-9288, have been retained to defend you in this case. As discussed above, in order for us to provide you with a proper defense, it is necessary that you cooperate with us and the attorneys hired to represent you in accordance with the terms of your insurance contract. This includes cooperation with discovery in the case, which is a required

2



procedure in the lawsuit. Failure to comply with discovery requirements could lead to the Court imposing sanctions or taking other action detrimental to the defense.

We want to make you aware that your cooperation is a mandatory prerequisite to coverage. Should the defense be prejudiced by a failure to cooperate, including your failure to appear at trial, whether by sanctions imposed or otherwise, it will result in a forfeiture of coverage. Please contact me directly and promptly engage with defense counsel.

Neither this letter nor any other action taken in by Pekin in response to the claim or suit is intended to limit or waive any rights or defenses, nor is it to be construed by the insured as a waiver or modification of any other terms and/or provisions of the Pekin policy issued to the insured. Pekin expressly reserves all rights and defenses under its aforesaid policy of insurance. The rights of the insured are reserved as well. No waiver or estoppel of any kind is intended, and none should be inferred.

*Jamie Conard*

JAMIE CONARD, CPCU AINS – Litigation Specialist
CLAIM DEPARTMENT
Phone: 800-322-0160, Ext. 3063
Fax: 309-346-9466 *always reference the claim number*
Email: jsconard@pekininsurance.com
ks
enc. Reservation of Rights letter dated April 3, 2024

3

**UNITED STATES POSTAL SERVICE**

March 24, 2026

Dear Covius Document Services:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9314 8699 0430 0147 2684 04.**

| Item Details | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 23, 2026, 11:39 a.m. |
| **Location:** | PONCE, PR 00728 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | BRYANT RIVERA URB BELLO HORIZONTE |

| Shipment Details | |
|---|---|
| **Weight:** | 1.0oz |

| Destination Delivery Address | |
|---|---|
| **Street Address:** | 1213 CALLE ALUMBRE |
| **City, State ZIP Code:** | PONCE, PR 00728-2530 |

**Recipient Signature**

Signature of Recipient: *Bryant R.*

Address of Recipient: *1213 Alumbre*

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

---

Information in this section provided by Covius Document Services, LLC.

**Reference Number:** Z69542
**Sender:** P & C Claims - KS

9314 8699 0430 0147 2684 04

BRYANT RIVERA
URB BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

BRYANT RIVERA
URB BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0147 2684 04
RETURN RECEIPT (ELECTRONIC)

# Please Discard

**UNITED STATES POSTAL SERVICE**

March 24, 2026

Dear Covius Document Services:

The following is in response to your request for proof of delivery on your item with the tracking number:
**9314 8699 0430 0147 2684 04.**

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Left with Individual |
| **Status Date / Time:** | March 23, 2026, 11:39 a.m. |
| **Location:** | PONCE, PR 00728 |
| **Postal Product:** | First-Class Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt Electronic |
| **Recipient Name:** | BRYANT RIVERA URB BELLO HORIZONTE |

## Shipment Details

| | |
|---|---|
| **Weight:** | 1.0oz |

## Destination Delivery Address

| | |
|---|---|
| **Street Address:** | 1213 CALLE ALUMBRE |
| **City, State ZIP Code:** | PONCE, PR 00728-2530 |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: | *Bryant R.* |
| Address of Recipient: | *1213 Alumbre* |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

# Ex U Proof & Failure of Service

Information in this section provided by Covius Document Services, LLC.

**Reference Number:** Z69542
**Sender:** P & C Claims - KS

9314 8699 0430 0147 2684 04

BRYANT RIVERA
URB BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

5.30

0.00

2.82

0.00

0.74

8.86

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

BRYANT RIVERA
URB BELLO HORIZONTE
1213 CALLE ALUMBRE
PONCE, PR 00728-2530

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558

Z69542

P & C Claims - KS

PEKIN INSURANCE COMPANY
2505 COURT ST
PEKIN , IL 61558



9314 8699 0430 0147 2684 04
RETURN RECEIPT (ELECTRONIC)

# Please Discard

**70210350000060543046**

Delivery Attempt: Action Needed

Notice Left (No Authorized Recipient Available)
FAIRFIELD, OH 45014
March 19, 2026, 2:45 pm

In Transit to Next Facility
March 18, 2026

**70210350000060543053**

Delivery Attempt: Action Needed

Notice Left (No Secure Location Available)
ORLANDO, FL 32832
March 19, 2026, 11:10 am

Departed USPS Regional Facility
ORLANDO FL DISTRIBUTION CENTER
March 18, 2026, 9:28 pm

5119459

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **JAMICO AARON, et al.** | **:** | **Case No. A2400293** |
| | **:** | |
| | **:** | **Judge Wende C. Cross** |
| **Plaintiffs,** | **:** | |
| **v.** | **:** | |
| | **:** | |
| **BRYANT RIVERA, et al.** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

_____

**PLAINTIFFS' MOTION FOR SANCTIONS**
_____

Pursuant to Civ. R. 37(D), Plaintiffs Jamico Aaron and the Estate of Jamico Aaron Jr. respectfully request that this Court issue order granting sanctions against Defendants Bryant Rivera and G Brothers, Inc. for their respective failures to attend their depositions. Plaintiffs specifically request an order rendering default judgment against Rivera and G Brothers as to the issue of their liability for Plaintiffs' injuries and denying their affirmative defenses. In the alternative, Plaintiffs request an order directing that the facts that Defendants' deposition testimony would have addressed shall be taken as established for purposes of the action; and prohibiting the Rivera and G Brothers from supporting or opposing the designated claims or defenses, or from introducing those matters in evidence. The grounds in support of this motion are described in more detail in the attached memorandum of law.

Respectfully submitted,

/s/Brian J. Butler_____
Brian J. Butler (OH No. 0082675)
Dennis A. Gleason (OH No. 0099045)
THE BUTLER TRIAL FIRM
615 Elsinore Place, Suite 105

Exhibit X

Cincinnati, OH 45202
Ph: 513.621.8800
Fax: 513.621.8833
Bbutler@butlertrialfirm.com
Dgleason@butlertrialfirm.com
*Attorneys for Plaintiff Jamico Aaron*

Of Counsel:
Robert Block, Esq.
Schwartz Manes & Ruby
P.O. Box 8873
Cincinnati, Ohio 45202
Direct Phone:  513.477.8522
Direct Fax: 513.579.1418
rblock@smrslaw.com

2

<u>**MEMORANDUM**</u>

## I.    INTRODUCTION

Plaintiffs Jamico Aaron and the Estate of Jamico Aaron Jr. seek an order imposing sanctions against Defendants Bryant Rivera and G Brothers, Inc., for failure to appear at their depositions. Though Rivera and G Brothers have, by and through counsel, answered pleadings, submitted expert witness reports, submitted responses to discovery, and engaged in vigorous motion practice, neither party appeared for deposition. This failure has denied Plaintiffs the opportunity to conduct discovery to examine the assertions and denials upon which Rivera and G Brothers have premised their defenses. It is unreasonable and prejudicial to permit Rivera and G Brothers to litigate their defenses while denying Plaintiffs the opportunity to conduct discovery on those defenses. For these reasons, Plaintiffs request an order of sanctions granting default judgment against Rivera and G Brothers as to their liability for Plaintiffs injuries, or in the alternative, an order of sanctions directing that the issues of fact about which Rivera and G Brothers would have ostensibly testified had they appeared for their depositions be established in Plaintiffs' favor.

## II.    FACTS

### A.    Background

Early on the morning of December 6, 2015, Plaintiff Jamico Aaron and his girlfriend, Destinie Stephens, were riding with Defendant Ryan Kennedy,  returning to Cincinnati from a casino in Indiana. Stephens was pregnant with Aaron's child, Jamico Junior. Kennedy drove, while Aaron rode in the front passenger seat, and Stephens was seated in the rear passenger seat on the driver's side.  The conditions were dark and foggy, and as Kennedy was traveling east on Interstate 275, he lost control of his car and struck

3

the concrete highway divider. The vehicle was disabled and came to a rest in the left lane. As the occupants of the Kennedy vehicle sat, dazed and disoriented, Defendant Bryant Rivera was approaching the disabled vehicle, driving eastward in the left lane. Rivera was operating a 22-foot freightliner box truck within the scope of his employment with Defendant G Brothers, Inc. He struck Kennedy's disabled vehicle, causing severe injuries to Aaron, and killing Stephens and her child.

Although facts are limited because of Rivera and G Brothers' failure to appear for their depositions, we do know a few key things based on expert analysis:

- Rivera was exceeding the posted speed limit;

- Rivera was driving significantly faster than conditions warranted;

- Rivera was driving in the left lane of the highway, despite no other traffic in the middle and right lanes.

### B.    Posture

This case was first filed in 2017. (Case No. A1706290). Plaintiffs named Kennedy and Rivera as Defendants as well as Rivera's employer, G Brothers, Inc, G Brothers' principal, ASA Logistics, LLC, and Penske Truck Leasing Co., from whom ASA had leased the freightliner.  In 2023, the Plaintiffs voluntarily dismissed their claims without prejudice.

In 2024, Plaintiffs timely refiled the case again naming Kennedy, Rivera, G Brothers, ASA and Penske as Defendants. Counsel for Rivera and G Brothers filed motions to dismiss challenging the sufficiency of service. On July 17, 2025, while resolution of those motions was pending, Counsel for Rivera and G Brothers also sought a protective order preventing Plaintiffs from taking Rivera and G Brothers's depositions. On or about October 2, 2025, the Court denied Defendants' motion to dismiss, and

4

determined service to have been perfected on all Defendants. On November 18, 2025, Counsel for Rivera notified the parties, for the first time, that Rivera was purportedly unreachable and residing in Ponce, Puerto Rico.

Thereafter, Counsel for Rivera and G Brothers took the deposition of Plaintiff Aaron on or about December 6, 2025. On or about December 9, 2025, Plaintiffs noticed the deposition of G Brothers pursuant to Civ. R. 30(B)(5), to be taken on December 17, 2025. (Affidavit of Dennis Gleason, attached hereto, at Exhibit 1). However, G Brothers failed to produce a corporate representative for its deposition on December 17, 2025. Counsel for G Brothers represented on the day of the deposition that G Brothers was unable to produce a representative because the company was no longer in operation. Plaintiffs' counsel proffered the topics on which it intended to examine G Brothers. (*See* Deposition of G Brothers, Inc., p. 7-12).

On or about December 10, 2025, after working with Rivera's counsel to select a date, Plaintiffs noticed Rivera's deposition to be taken on December 29, 2025. (See Gleason Aff. at Exhibit B). The parties agreed to take Rivera's deposition remotely. Rivera failed to appear for his deposition on December 29, 2025. Rivera's counsel proffered a statement on the record, stating it had retained local counsel (for itself, not Rivera) for the purpose of locating and contacting Rivera, and that, though local counsel had purportedly located Rivera, Rivera was presumed to be mentally unwell and "dangerous." (Deposition of Bryant Rivera,  p. 3). Plaintiffs' counsel proffered the topics on which it intended to examine Rivera. (*Id.* at p. 6-8).

Thereafter, on January 14, 2026, Rivera and G Brothers, by and through counsel, submitted responses to discovery. (See Gleason Aff. at Exhibit C). In response to interrogatories, both Rivera and G Brothers indicated that the responses were prepared

5

by counsel without the input of either party. Thereafter, on January 29, 2026, Rivera and G Brothers filed a motion for partial summary judgment, seeking summary judgment as to their liability for the wrongful death of Aaron and Stephens' unborn child.

## III.  LAW AND ARGUMENT

### A.  Legal Standard

Civ. R. 37(D) provides that the Court may, on motion, order sanctions if a party "fails, after being served with proper notice, to appear for that person's deposition." Civ. R. 37(D)(1)(a)(i). "Rule 37(D) makes it explicit that a party properly served has an absolute duty to respond, that is, to present himself for the taking of his deposition . . . and that the court in which the action is pending may enforce this duty by imposing sanctions for its violation." *Dafco, Inc. v. Reynolds,* 1983 WL 3353, *2 (10th Dist. Feb. 15, 1983) (dismissal awarded to defendant where plaintiff failed to appear for his deposition and failed to seek protective order). 37(D) provides for a "one-step method"; no prior court order is required to seek sanction. *Id.* "It is enough that a notice the taking of a deposition or a set of interrogatories or a request for inspection has been properly serviced on the party." *American Sales, Inc., v. Boffo,* 71 Ohio App. 3d 168, 173 (2d Dist. 1991).

The sanctions for failure to appear for deposition may include any of the orders under Civ. R. 37(B)(1), including:

> (a) Directing that the matters embraced in the order or other designated facts shall be taken as established for purposes of the action as the prevailing party claims;

> (b) Prohibiting the disobedient [non-appearing party] from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> . . .

6

(f) Rendering a default judgment against the disobedient party.

Civ. R. 37(B)(1)(a),(b),(f); Civ. R. 37(D)(3). "Trial courts have sound discretion in deciding what sanctions to impose under Civ. R. 37(B)." *Farmer v. PNC Bank, N.A.,* 92 N.E.3d 218, 2017-Ohio-4203 ¶29 (2nd Dist.). Unless there is an express finding that the defendant's failure to appear was "substantially justified," Plaintiffs are entitled to at least the minimum sanction of payment of incurred expenses. Civ. R. 37(D)(3); *Muncy v. Jones,* 1984 WL 4597, *3 (10th Dist. 1984). The sanction of default "should be reserved for cases when a party's conduct falls substantially below what is reasonable under the circumstances, evidences a complete disregard for the judicial system or the rights of the opposing party, or when the failure to comply with discovery orders is due to willfulness or bad faith." *Foley v. Nussbaum,* 2d Dist. Montgomery No. 24572, 2011-Ohio-6701, ¶20 (citing *Moore v. Emmanuel Family Training Center, Inc.,* 18 Ohio St. 3d 64, 70 (1985)).

"Pursuant to Civ.R. 37(D), a court can impose a default judgment for failure to attend a deposition." *Winkle v. Co,* 2016 WL 5375648 2016-Ohio-6957 at *16 (citing *Huntington Natl. Bank v. Zeune,* 10th Dist. Franklin No. 08AP-1020, 2009-Ohio-3482, at ¶18). This sanction has been imposed for a party's failure to attend his own deposition. *See, e.g., Kentucky-Indiana Lumber v. Grayland Pelfrey/Remodeling Concepts,* 2d. Dist. 2007-Ohio-6137 at ¶14 ("Default judgment is proper when the failure to comply with the discovery process is the fault of the party against whom it is rendered. *Toney,* supra. Pelfrey is solely to blame for his failure to attend the noticed depositions and to answer or object to discovery requests."); *American Sales, Inc.,* 71 Ohio App. 3d at 173 (trial court granted default judgment as sanction against defendants for their failure to appear for their depositions after being served with proper notice); *Norris v. Greater Cleveland*

7

*Regional Transit Authority,* 201 N.E. 3d 316, 2022-Ohio-3552 (Involuntary dismissal awarded where plaintiff failed to appear for two depositions due to incarceration); *Midwest Sportservice, Inc., v. Andreoli,* 444 N.E. 2d 1050, 10952-1053 (1st. Dist. 1981)(affirming default judgment where defendant failed to appear for deposition); Though default is a "harsh sanction," Plaintiffs submit it is a necessary and appropriate sanction here, as Defendants failed to appear for properly noticed depositions, failed to apply for a protective order, and have now delayed and .

### B. Plaintiffs Are Entitled to Default Judgment as to Rivera's Liability

Rivera's failure to appear for his deposition violated Civil Rule 30 and was substantially prejudicial to Plaintiffs. His failure to appear denied Plaintiffs the opportunity to examine or otherwise conduct discovery regarding assertions and denials upon which both Rivera and G Brothers have premised their defenses, namely, Rivera's conduct prior to the collision, his observation of the Kennedy vehicle, and his efforts, if any, to avoid striking the Kennedy vehicle.

Furthermore, a party's failure to appear is not justified simply because the information to be obtained from them can also be obtained from written discovery: "Civ.R. 37(D) makes clear that the failure of a party to appear and testify 'may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(C).'" *American Sales, Inc., v. Boffo,* 71 Ohio App. 3d 168, 173 (2d Dist. 1991) (trial court granted default judgment as sanction against defendants for their failure to appear for their depositions after being served with proper notice). Rivera's failure to appear comes on the heels of the revelation that Rivera himself is unreachable in Puerto Rico and has seemingly been so for some

8

time. In spite of this purported unavailability, Rivera's counsel has conducted a robust defense on his behalf, and, seemingly, without his input.[1] These circumstances beg the question, what exactly is the basis for Rivera's denial of liability for Aaron's injuries? Plaintiff is entitled to pose the question to him. Instead of raising the issue of Rivera's unavailability, Rivera has submitted to the Court an answer to the pleadings, briefed a motion to dismiss, motions in limine, and now seeks partial summary judgment against Plaintiffs. Rivera has also retained an expert witness to provide an opinion about the estimated circumstances of the collision, offering an opinion about what Rivera *might* have seen. All the while, Rivera himself has conspicuously failed to appear to testify to what he actually did see. Rivera even sought a protective order in July 2025, to prevent Plaintiffs from seeking his deposition, but he premised that motion on his then-pending motion for judgment on the pleadings; he failed to raise on the conditions that purportedly prevented his attendance at his deposition once that protective order was lifted.

It is unreasonable to permit a party to maintain and litigate a defense completely in absentia. If Rivera (and G Brothers) have the capacity to appear and defend Plaintiffs' claims for relief, they must afford Plaintiffs the opportunity to examine them and obtain discovery about the bases of their denials and affirmative defenses. Plaintiffs have been flatly denied this opportunity. Plaintiffs are thus entitled to sanctions against Rivera and submit that a default judgment as pursuant to Civ. R. 37(B)(1)(f) as to Rivera's liability for causing injuries to Plaintiffs is the only appropriate sanction. In the alternative,

---

[1] Indeed, the representations of counsel regarding Rivera's mental state raise significant doubt as to whether Rivera's Answer itself complies with the requirements of Civ. R. 8, that "[d]enials shall fairly meet the substance of averments denied." Civ. R. 8(B). It is not clear that Rivera has been consulted in or perhaps not even given consent to his own defense.

9

Plaintiffs submit that an order pursuant to Civ. R. 37(B)(1)(a) and (b), directing that the facts which were the anticipated subject of Rivera's deposition testimony shall be taken as established for purposes of the action, and prohibiting Rivera from supporting his defenses or opposing Plaintiffs' claims on the basis of any of those facts.

Specifically, Plaintiff has been denied the opportunity to examine the denials and averments made by Rivera, or develop testimony regarding Rivera's actual knowledge of the circumstances of the collision with Kennedy's vehicle. This includes evidence of the facts leading up to the collision: Rivera's driving history, the load that Rivera was carrying, its origin, the route he was following, his familiarity with the route, how long he had been traveling, the speed at which he was traveling, Rivera's destination, his expected time of arrival, his observations of the road and weather conditions, his communications with and instructions from his employer, the lane he was traveling in, and the speed at which he was traveling. Plaintiffs have also been denied the opportunity to develop testimony regarding Rivera's recollection of the collision, including his first observation of the Kennedy vehicle, his efforts to avoid the collision with the Kennedy vehicle, his lane of travel and his speed of travel at the time of collision, and his actions immediately following the collision.

Plaintiffs submit that default judgment as to Rivera's liability is the most appropriate sanction due to the severity and effects of Rivera's failure to appear. It was only within the past two months that his counsel notified Plaintiffs of his purported condition and whereabouts. Even then, Defendant did not seek a protective order. Throughout this time, Rivera's counsel has nonetheless engaged in extensive motion practice and discovery, and vigorously opposed Plaintiffs' claims, purportedly on his behalf, but clearly without his input or knowledge. Defendants' counsel could have, and

10

should have, candidly addressed this issue much sooner, at the very least when Rivera applied for a protective order on July 17, 2025. However, Rivera and G Brothers's counsel simply moved on the basis of the then-pending motion to dismiss and did not mention the conditions that allegedly prevent Rivera from appearing at deposition. Now, at this late hour, the prejudice caused by this strategy of delay cannot be remedied without an order of sanctions resolving these disputed questions of Rivera's liability in Plaintiffs' favor. "The inaction of a defendant is not excusable neglect if it can be labeled as a 'complete disregard for the judicial system.'" *Norris,* 2022-Ohio-3552, ¶22 (Trial court granted involuntary dismissal against plaintiff based on plaintiff's "history of nonparticipation and dilatory conduct." Even though plaintiff failed to appear for his deposition because incarceration, he "had not been an active participant in the case before his incarceration").

Also relevant here is Civ. R. 55, which provides that a party is entitled to default where its opponent has failed to "plead or *otherwise defend*" the claims against him. Civ. R. 55(A). The explanations offered for Rivera's absence raise questions as to whether Rivera can even be said to have legitimately defended the claims against him. Indeed, "Just as due process requires that defendants have notice and an opportunity to defend the claims against them, those who choose to ignore such claims are not able to prevent the individuals whom they have harmed from having their own day in court." *New v. All Transp. Solution, Inc.,* 177 Ohio App. 3d 620, 2008-Ohio-3949 at ¶16 (Default judgment proper where defendant failed to answer complaint, and subsequently failed to appear for depositions and damages meetings, of which it did not deny having notice).

Furthermore, even if the Court determines that Default is not appropriate, Plaintiffs are at the very least entitled to an order issuing sanctions pursuant to Civ. R.

11

37(B)(1)(a) and (b) and directing that facts pertaining to Rivera's conduct before, during, and immediately leading up to the collision should be construed in Plaintiffs' favor, and Rivera should be prohibited from disputing those facts. Even imposition of this lesser sanction, which is clearly warranted under the circumstances, would have the practical effect of resolving the issue of Rivera's liability in Plaintiffs' favor. For these reasons, Plaintiffs submit that default is appropriate.

### C. Plaintiffs Are Entitled to Default Judgment as to G Brothers's Liability

Plaintiffs are likewise entitled to default judgment as to G Brothers's liability. Like Rivera, G Brothers failed to appear for deposition. Counsel for G Brothers represented that its non-appearance was due to the fact that the corporation is defunct and no longer doing business. But the corporation's supposed unavailability has not prevented it from conducting a vigorous defense of Plaintiffs' claims. G Brothers's failure to appear for deposition has denied Plaintiffs the opportunity to examine the claims upon which its defenses are based, namely, Plaintiffs have been denied the opportunity to develop testimony regarding G Brother's operations, the suspended status of its motor carrier safety authorization, Rivera's employment status, driving history, safety record, training, G Brothers's training and instructions provided to Rivera, and G Brothers's knowledge of the load and the route that Rivera was traveling.

As with Rivera, if G Brothers is capable of submitting averments and denials of fact, and conducting a defense on the merits, Plaintiffs are entitled to examine the knowledge of the company, and the bases of its defenses and denials. Plaintiffs have been denied this opportunity. Plaintiffs are therefore, in the first, entitled to the benefit of the construction of those facts which G Brothers supplied as established his favor.

12

Furthermore, as with Rivera, the sanction of default judgment is appropriate under the circumstances. Not only is G Brothers's failure to appear plainly willful, as evidenced by the fact that it continues to actively defend Plaintiffs' claims, in spite of its refusal to produce its former officers for deposition, but establishment of the facts about which its testimony is sought would have the effect of conclusively establishing G Brothers's liability for Rivera's conduct. Specifically, establishment of the employment relationship between Rivera and G Brothers, and the fact that Rivera was operating within the scope of that employment relationship at the time of the collision, conclusively establishes G Brothers's liability under *respondeat superior*.  Thus, judgement against Rivera is a judgment against G Brothers.

Under the circumstances, default judgment is not an extreme or unreasonable sanction, but one which is reasonable and appropriate in late of the circumstances and G Brothers' failure to appear for deposition. For these reasons, Plaintiff requests default judgment against G Brothers for its failure to appear for its deposition, or in the alternative, an order establishing as undisputed the fact that Rivera was an employee of G Brothers and that he was acting within the scope of his employment when he struck the Kennedy vehicle.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs Jamico Aaron and the Estate of Jamico Aaron Jr. seek an order imposing sanctions in the form of Default judgment against Defendants Bryant Rivera and G Brothers, Inc., for failure to appear at their depositions.

13

Respectfully submitted,

/s/Brian J. Butler_____
Brian J. Butler (OH No. 0082675)
Dennis A. Gleason (OH No. 0099045)
THE BUTLER TRIAL FIRM
615 Elsinore Place, Suite 105
Cincinnati, OH 45202
Ph: 513.621.8800
Fax: 513.621.8833
Bbutler@butlertrialfirm.com
Dgleason@butlertrialfirm.com
*Attorneys for Plaintiff Jamico Aaron*

Of Counsel:
Robert Block, Esq.
Schwartz Manes & Ruby
P.O. Box 8873
Cincinnati, Ohio 45202
Direct Phone:  513.477.8522
Direct Fax: 513.579.1418

14

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via e-mail on this 2nd day of February, 2026 to:

Michael P. Cussen
Thomas J. Gruber
McCaslin, Imbus & McCaslin
600 Vine Street, Suite 800
Cincinnati, OH 45202
mpcussen@mimlaw.com
tjgruber@mimlaw.com
**Attorney for Defendant Ryan Kennedy**

Jonathan P. Saxton
Edward McHale
Christine Steele
Rendigs, Fry, Kiely & Dennis, LLP
600 Vine St. St 2650
Cincinnati, OH 45202
jsaxton@rendigs.com
emchale@rendigs.com
csteele@rendigs.com
**Attorney for Defendants Bryant Rivera and G Brothers, Inc.**

Lucas P. Baker
Collins, Roche, Utley & Garner, LLC
655 Metro Place South, Suite 200
Dublin, OH 43017
lbaker@cruglaw.com
**Attorney for Defendants ASA Logistics, LLC & Penske Truck Leasing, Co., LP**

Grant Wenstrup
Godbey Law, LLC
708 Walnut St. Ste 600
Cincinnati, OH 45202
gwenstrup@godbeylaw.com
**Attorney for Plaintiff Mark E. Godbey as Special Administrator of the Estate of Destinie M. L. Stevens**

s/Brian J. Butler
Brian J. Butler (OH No. 0082675)

15